# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

In re:                                                   Case No. 11-3689-SVK-13

ROGER PETER RINALDI and
DESA LILLY RINALDI,
Debtors.

---

ROGER PETER RINALDI and                    Adversary Proceeding No.
DESA LILY RINALDI,
Plaintiffs,

v.

HSBC BANK USA, NATIONAL ASSOCIATION,
as Trustee for Wells Fargo Home Equity Trust 2005-2
Attention: Irene Dorner, President and CEO
1800 Tysons Blvd.
McLean, Virginia 22101

WELLS FARGO BANK, NATIONAL ASSOCIATION
Attention: John Stumpf, President and CEO
420 Montgomery Street
San Francisco, California 94163

WELLS FARGO ASSET SECURITIES CORPORATION
c/o Corporation Service Company
2711 Centerville Road
Wilmington, Delaware 19808

WELLS FARGO BANK, NATIONAL ASSOCIATION d/b/a
AMERICA'S SERVICING COMPANY
3476 Stateview Blvd.
Fort Mill, SC 29715

LITCHFIELD CAVO, LLP
c/o Mark W. Rattan, Registered Agent
13555 Bishop's Court, #230
Brookfield, Wisconsin 53005
    an Illinois limited liability partnership

1

Attorney Brad A. Markvart, individually and in his capacity as an employee or partner of
LITCHFIELD CAVO, LLP
13555 Bishop's Court, #230
Brookfield, Wisconsin 53005

GRAY & ASSOCIATES, LLP
c/o Duncan C. Delhey
16345 W. Glendale Drive
New Berlin, Wisconsin 53151
        a Wisconsin limited liability partnership,

Attorney William N. Foshag, individually and in his capacity as an employee or partner of
GRAY & ASSOCIATES, LLP
16345 W. Glendale Drive
New Berlin, Wisconsin 53151

Attorney Duncan C. Delhey, individually and in his capacity as an employee or partner of
GRAY & ASSOCIATES, LLP
16345 W. Glendale Drive
New Berlin, Wisconsin 53151

Attorney Jay Pitner, individually and in his capacity as an employee or partner of
GRAY & ASSOCIATES, LLP
16345 W. Glendale Drive
New Berlin, Wisconsin 53151

and

Attorney Brian D. Pehach, individually and in his capacity as an employee or partner of
GRAY & ASSOCIATES, LLP
16345 W. Glendale Drive
New Berlin, Wisconsin 53151
        Defendants

---

## ABBREVIATED COMPLAINT
### (ALL RIGHTS RESERVED)

---

## NATURE OF THE PROCEEDINGS AND RELIEF REQUESTED

1. This is an action brought by the Plaintiffs (Debtors) for a Declaratory Judgment to determine the validity and enforceability of the Creditor-Defendant's lien rights, and for any other equitable relief the Court may find appropriate pursuant to Sections 105(a), 502(b)(1), 506 and 544(a) of the Bankruptcy Code and applicable Bankruptcy Rules.

2. This is a core proceeding in an action brought by Roger Peter Rinaldi and Desa Lilly Rinaldi, Debtors-Plaintiffs (hereinafter "Plaintiffs") for a Declaratory Judgment with respect to Plaintiffs' homestead located at 22311 121st Street, Bristol, Kenosha County Wisconsin 53104

    a. To determine the validity and enforceability of a claim filed in these proceedings on June 12, 2012, as Claim #6;

        (1) To determine the validity and enforceability of the mortgage note which fails for want of consideration and

        (2) For a determination that two mortgage assignments (Exhibits C and E) recorded in the Kenosha County Register of Deeds affecting Plaintiffs' homestead are null and void;

        (3) For a determination that the mortgage assignment attached as Exhibit D and upon which the false Claimant relies is a forgery;

        (4) For a determination that Exhibit D, if not a forgery, has never been recorded and was not recorded prior to the filing of the bankruptcy and is not enforceable lien against Plaintiffs' homestead.

    b. For a determination that Plaintiffs' homestead is free and clear of all liens;

    c. For a determination that none of the Defendant financial institutions have standing or the status of a real party in interest in this bankruptcy to maintain a claim or for any relief from stay.

    d. For a determination that the sworn proof of claim on file as Claim # 6 is false, fraudulent, and otherwise unlawful.

    e. For a determination that the sworn proof of claim attempts to unlawfully secure property of the estate in violation of sec. 362(a)(3) of the Bankruptcy Code by asserting invalid lien rights against property of the estate and of the Debtors.

    f. For a determination that the sworn proof of claim asserts invalid lien rights against

3

property of the estate and against the debtor in violation of secs. 362(a)(4) and 362(a)(5) of the Bankruptcy Code.

g. That the Court disallow and expunge the sworn proof of Claim # 6.

h. That the Chapter 13 Trustee be granted lien rights on the real property in order to preserve the rights of the estate and said collateral subject to the exemption of the Plaintiffs in said real estate (as amended.)

i. That the debtor have and recover reasonable legal fees in an amount to be determined by this Court.

j. In addition and in the alternative, for a determination that the Defendant banks have unclean hands and are not entitled to any relief in this Court;

k. For sanctions against the parties responsible for filing a false claim in these proceedings.

3. This is also a core proceeding for damages in the nature of the claim against the Defendants, collectively for common law fraud, abuse of legal process and violations of the Fair Debt Collection Practices Act (FDCPA) at 15 U.S.C. sec. 1692, et seq. and against Wells Fargo Bank, National Association, for breach of contract and tortious interference with prospective economic opportunity.

4. Damages to the Plaintiff for violations of 18 U.S.C. sec. 1961, et seq. against Defendants and parties yet to be joined herein are expressly reserved to be pleaded in a court of general jurisdiction.

5. Claims against Defendants not named herein for all claims enumerated in paragraphs 3 arising under state law are expressly reserved to be pleaded in a court of general jurisdiction.

## JURISDICTION AND VENUE

6. This is a core proceeding as that term is defined by Section 157(b)(2) of Title 28 of the United States Code. This proceeding concerns claims and counter-claims to Proof of Claim Number 6 ("Claim 6") filed by HSBC Bank USA, National Association as purported Trustee for Wells Fargo Home Equity Trust 2005-2, which Claimant's counsel misidentifies as "HSBC Bank USA, National Association as Trustee for Wells Fargo Home Equity Asset-Backed Securities 2005-2 Trust, Home Equity Asset-Backed Certificates, Series 2005-2."

7. Additionally, this abbreviated proceeding concerns matters arising out of the administration of the Plaintiffs' bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

4

8.   This Court has both personal and subject matter jurisdiction to hear this abbreviated case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b)(2) of Title 28 of the United States Code.

9.   Pursuant to 11 U.S.C. secs. 157(b)(2)(A), 157(b)(K) and 157(b)(2)(O) Plaintiffs  seek a declaratory judgment holding that neither Wells Fargo Bank, National Association nor HSBC Bank USA, National Association loaned the Plaintiffs any money nor did they pay value for the debt obligation which ,  through the conduct described herein, they have repeatedly sought to collect through state court foreclosure proceedings and for which purpose they have attempted to lift the automatic stay in these proceedings, prematurely objected to the confirmation of the Chapter 13 Plan and filed false Claim #6.

10.   Plaintiffs seek equitable relief the Court may find appropriate pursuant to Sections 105(a), 502(b)(1), 506 and 544(a) of the Bankruptcy Code and applicable Bankruptcy Rules in addition to the relief requested  by declaratory judgment.

11.   Plaintiffs expressly reserve their non-core claims against all Defendants, their agents, employees, servicers, subservicers, attorneys, creditors and successors in interest, as well as all non-core claims against the agents, employees, servicers, subservicers and attorneys of the successors in interest which have acted in concert to the detriment and damage of the Plaintiffs in a course of conduct which is inextricably intertwined with the fact pattern to be proved in connection with the core proceedings.

12.   To the extent that the Plaintiffs' claims arose against these Defendants prior to the filing of the bankruptcy case, the claims are an asset of the estate.  To the extent that the conduct complained of herein continued after the filing of the case, the Plaintiffs willingly submit the after-acquired claims for the determination of the Court and waive separate, non-bankruptcy administration of the claims, above and beyond the exempt amount of their claims, in the interests of judicial economy.

13.   This proceeding concerns matters arising out of the administration of the Debtor-Plaintiff's bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

14.   This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b)(2) of Title 28.

15.   The Defendants may be served by US Mail in accordance with Rule 7004 of the Federal Rules of Bankruptcy Procedure (FRBP.)

16.   In the event that the Court determines that personal service is required to obtain jurisdiction over any Defendant, Plaintiffs will amend the jurisdictional basis for those Defendants' joinder herein and will personally serve such Defendants.

5

17. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## PARTIES,  RELATIONSHIP OF THE PARTIES,
## ALLEGATIONS COMMON TO ALL CLAIMS

18.  Plaintiffs reside in the Eastern District of Wisconsin at 22311 121st Street, Bristol, Kenosha County Wisconsin 53104,  are married to each other and are Debtors in the case under which these adversary proceedings are brought.

19.  Upon information and belief,  HSBC Bank USA, National Association (hereinafter HSBC Bank) is a bank regulated by the United States Office of the Comptroller of the Currency and is the United States banking arm of  a part of an international banking consortium known as HSBC Holdings with offices in New York, London, Malaysia and other places throughout the world.  Process is served by mail upon Irene Dorner, President and CEO of HSBC Bank at 1800 Tysons Blvd. McLean, Virginia 22101.

20.  Upon information and belief, HSBC Bank (hereinafter HSBC Bank as Trustee) was purportedly the Trustee for Wells Fargo Asset Securities Corporation Home Equity Asset-backed Certificates Series 2005-2 (hereinafter "the REMIC Trust.")

21.  Upon information and belief, Wells Fargo Asset Securities Corporation Home Equity Asset-backed Certificates Series 2005-2 does not now and never has existed.

22.  Upon information and belief, Wells Fargo Home Equity Trust 2005-2 issued securities based upon a pool of bundled assets, as defined by its Pooling and Servicing Agreement (PSA),  holding itself out  as a REMIC (Real Estate Mortgage Investment Conduit) Trust in 2005.

23.   Wells Fargo Asset Securities Corporation is a Delaware Corporation which, upon information and belief, represented itself to the Securities and Exchange Commission (SEC) and to investors as the depositor of assets into the Wells Fargo Home Equity Trust 2005-2 and held itself out as being the custodian of the Wells Fargo Home Equity Trust 2005-2 documents to the SEC in the PSA.

24.   Upon information and belief, the Wells Fargo Home Equity Trust 2005-2 was terminated in 2008, was  part of the Troubled Asset Relief Program (TARP) when its assets were transferred to the Federal Reserve Bank of New York and placed in one of the Maiden Lane, LLCs funds.

25.  Upon information and belief, the reason for the termination of the trust was that a counterparty to the derivatives created on the basis of the unfunded REMIC Trust, Bear Stearns, was unable to meet its obligations as a counterparty and the trust assets were transferred in

6

exchange for TARP "bail out" funds.

26.  HSBC Bank loaned no money to the Plaintiffs.

27.  HSBC Bank as Trustee never received the mortgage note nor did it receive the assignment of mortgage.

28.  Upon information and belief,  HSBC Bank as Trustee did not pay anything of value for any loans purportedly "deposited" into the REMIC Trust by Wells Fargo Asset Securities Corporation.

29.  Upon information and belief, the Plaintiffs' mortgage note and mortgage were never delivered to the REMIC Trust.

30.  The Defendant Wells Fargo Bank, National Association (hereinafter Wells Fargo Bank) is a bank regulated by the United States Office of the Comptroller of the Currency and is a national banking association, governed by the National Bank Act , 12 U.S.C. sec. 38.  Process is served by mail upon John Stumpf, President and CEO at 420 Montgomery Street San Francisco, California 94163.

31.  Upon information and belief, on June 10, 2005, Wells Fargo Bank, acting through its subsidiary known as Wells Fargo Home Mortgage (with which is has now merged)  caused Plaintiffs to execute a mortgage on the property located at 22311 121st Street in Bristol, Wisconsin under the false pretense that a mortgage loan was being made to them by Wells Fargo Bank.  (See attached Exhibit A.)

32.  Upon information and belief, Wells Fargo Bank, acting through its subsidiary known as Wells Fargo Home Mortgage (with which is has now merged) caused Plaintiff Roger Peter Rinaldi to execute a mortgage note (attached hereto as Exhibit B) under the false pretense that a mortgage loan was being made to him by Wells Fargo Bank.

33.  Wells Fargo Bank disclosed to the SEC and the investors that it was the master servicer, servicer and subservicer of the REMIC Trust.

34.  Wells Fargo Bank, by merger is responsible for the acts of Wells Fargo Home Mortgage, Inc., which held itself out as the originator of the mortgage loans in the REMIC Trusts under the PSA.

35.  Neither the former Wells Fargo Home Mortgage, Inc. nor Wells Fargo Bank loaned the Plaintiffs any money.

36.  Upon information and belief, Wells Fargo Bank (then Wells Fargo Home Mortgage, Inc.) knew that it was not loaning the Plaintiffs any money on June 10, 2005 but knew that it was

7

procuring the signature of Plaintiff Roger Peter Rinaldi on a mortgage note and the signatures of both Plaintiffs on the mortgage for the illegal purpose of defrauding investors in the REMIC Trust by leading them to believe that the Plaintiffs were qualified borrowers under the terms of the PSA.

37. Upon information and belief, there were frauds in the origination of the purported mortgage loan, including but not limited to, falsification of the loan application, without the knowledge of the Plaintiffs by the mortgage broker for Wells Fargo Bank's subsidiary (its agent) as to the value of the real estate and falsely listed cash accounts among the Plaintiffs' disclosed assets, the latter occurring after the application was signed; the former being procured between Wells Fargo Bank's agent and the appraiser solely for the purpose of making it appear that the real estate had the necessary loan to value ratio to allow the loan to be sold to the investors in the REMIC trust.

38. Plaintiffs were never advised by the former Wells Fargo Home Mortgage, Inc. (now Wells Fargo, by merger) that their purported loan would be funded by a group of unnamed investors through a process called "securitization" and, had they known and knew what securitization meant, they would have likely declined to engage in the transaction. Rather, they were advised that the purported loan could be sold, to which they agreed.

39. Plaintiffs respectfully allege that there is a great difference between selling a loan and securitizing (bundling) a loan with other loans purportedly given to other persons. With the former, there is an understanding that another legitimate lender would purchase the purported loan obligation; with the latter, there was no possibility of the Plaintiffs' protecting themselves from the fraud which actually occurred in this case: that the loan documents were procured by false representation by the loan broker (agent of Wells Fargo Bank's former subsidiary,[1] now merged with Wells Fargo Bank) to deceive third parties as to the value of an investment in a REMIC Trust, to take the origination fees and discount points as profits, to fail to deliver the mortgage documents leaving the REMIC Trust empty of their loan and those of countless others, to manipulate the market to create circumstances under which other loans would fail to perform, to ultimately cause Plaintiffs loan to fail, all of which resulted in near collapse of the housing market, which continues to this day.

40. Plaintiffs do not allege at this time that Wells Fargo Bank (or its subsidiary with which it has now merged–fn.1--and which employed the loan broker) knew to a certainty that there would be a collapse of the housing market requiring the creation of the TARP "bailout" or the continuing quantitative easing programs under which "Too Big To Fail" banks continue to borrow at near zero percent interest rates from the Federal Reserve Bank's discount window. That could not have been predicted with certainty before the United States Congress ultimately provided for the initial "bail out" known as TARP, which lead to the purchase of the Maiden Lane, LLC collateral pool, which includes the collateral for the Plaintiffs' loan. Rather,

---

[1] The former Wells Fargo Home Mortgage, Inc.

Plaintiffs allege, upon information and belief, that the intent and purpose of the plan was to obtain as many signatures on falsely created applications leading to falsely procured loans devoid of underwriting compliance in order to feed the securitization machine, and obtain private and public guarantees should the loan pools fail and that they were designed to fail.

41.   Profits were to be made at every stage of the securitization process until the loans were actually delivered to the REMIC Trust (which never occurred in this case) and the securitization frauds are provably short-sighted profit-taking modalities.  The business model of obtaining guarantees from private insurance companies and government agencies existed in virtually all securitization schemes.

42.   The insurance against default for this REMIC Trust was the counterparty liability of Bear Stearns which collapsed under the strain of poorly underwritten and failed mortgage loans prior to the forced default of the Plaintiffs on their mortgage as a result of market conditions.

43.   Wells Fargo Bank retained the "servicing rights" for the stream of income created by the Plaintiffs' loan and others with which it was bundled.

44.   America's Servicing Company is merely an assumed name used by Wells Fargo Bank in an effort to hide its identity as servicer of the REMIC Trust  in order to avoid being held liable for its servicing violations.

45.   Wells Fargo Bank could foresee that the collection of signatures on loan documents for purported transfer to this REMIC Trust and others had features which have been described without dispute as "financial weapons of mass destruction" and was either negligent, reckless or deliberate in its handling of the Plaintiffs' purported loan obligation on behalf of the investors in the REMIC Trust, including, but not limited to, failure to deliver the loan documents to the REMIC Trust, servicing of the income stream from the loan to deprive the Plaintiffs of proper credit for payments, creating defaults by servicing errors in order to earn more for servicing a purportedly underperforming loan and thereafter engaged attorneys as debt collectors to seize real estate collateral never transferred to the REMIC Trust.

46.  LITCHFIELD CAVO, LLP is an Illinois limited liability partnership, is a professional  association of lawyers, is a debt collector as defined by the Fair Debt Collection Practices Act (FDCPA), represents Wells Fargo Bank in Plaintiffs' bankruptcy proceedings and represented HSBC Bank as Trustee in the state court proceedings entitled HSBC Bank USA vs. Roger Rinaldi, et al. in Kenosha County Case Number 09-CV-353.

47.   Attorney Brad A. Markvart, individually and in his capacity as an employee or partner of LITCHFIELD CAVO, LLP, is the attorney from LICHTFIELD CAVO, LLP, who represents Wells Fargo Bank in Plaintiffs' bankruptcy proceedings and represented HSBC Bank as Trustee in the state court proceedings entitled HSBC Bank USA vs. Roger Rinaldi, et al. in Kenosha County Case Number 09-CV-353 and is acting as a debt collector.

48.  GRAY & ASSOCIATES, LLP is a Wisconsin limited liability partnership,  is a professional  association of lawyers, is a debt collector as defined by the Fair Debt Collection Practices Act (FDCPA), represents HSBC Bank as Trustee Plaintiffs' bankruptcy proceedings and represented HSBC Bank as Trustee in the state court proceedings entitled HSBC Bank USA vs. Roger Rinaldi, et al. in Kenosha County Case Number 09-CV-353.

49.  Attorney William N. Foshag, individually and in his capacity as an employee or partner of GRAY & ASSOCIATES, LLP is the attorney from GRAY & ASSOCIATES, LLP, who is a debt collector, and signed the Complaint in  the action in state court proceedings entitled HSBC Bank USA vs. Roger Rinaldi, et al. in Kenosha County Case Number 09-CV-353.

50.  Attorney Duncan C. Delhey, individually and in his capacity as an employee or partner of GRAY & ASSOCIATES, LLP is the attorney from GRAY & ASSOCIATES, LLP, who is a debt collector,  and created the recorded assignment of mortgage for use in the state court proceedings entitled HSBC Bank USA vs. Roger Rinaldi, et al. in Kenosha County Case Number 09-CV-353, 13 months after the commencement of the state court action.  (Exhibit C.)

51.  Exhibit C was returned to GRAY & ASSOCIATES, LLP which, upon information and belief, caused it to be recorded in the Kenosha County Register of Deeds 14 months after the commencement of the state court action.

52.  Exhibit C is a forgery as defined by Wis. Stats. sec. 943.38(1).

53.  Attorney Jay Pitner, individually and in his capacity as an employee or partner of GRAY & ASSOCIATES, LLP is the attorney from GRAY & ASSOCIATES, LLP, who is a debt collector, and has appeared twice in the Plaintiffs' bankruptcy proceedings by signing pleadings[2].

54.  Attorney Brian D. Pehach, individually and in his capacity as an employee or partner of GRAY & ASSOCIATES, LLP  is the attorney from GRAY & ASSOCIATES, LLP, who is a debt collector, and has appeared once in the Plaintiffs' bankruptcy proceedings[3] and filed the false claim #6 in the bankruptcy proceedings.

---

[2]  The Motion to Lift the Automatic Stay dated November 4, 2011 and the Objection to Confirmation of Plan dated May 17, 2012

[3]  At the hearing on the Objection to Confirmation of Plan dated May 17, 2012, heard on June 5, 2012

55.   Upon information and belief, Defendant Perhach caused forged documents C,[4] D,[5] E,[6] F[7] and G[8] to be attached to Proof of Claim #6.

56.   The Defendants, with the assistance of other individuals and entities not joined in this abbreviated action,  have acted in concert to abuse legal process in an effort to seize Plaintiffs' home for payment on a debt not owed to any of them.

57.   The Defendant banks, their subsidiaries, agents (named and unnamed) employees (not named) and successors in interest are debt collectors because they are attempting to collect on a debt owed to third parties, whose identities are being concealed.

58.   The Defendant law firms and lawyers are acting as debt collectors for Defendant banks,  which are debt collectors for the concealed third parties.

59.   To effectuate the debt collection, the Defendants (and their unidentified co-conspirators) have engaged in conduct prohibited by the FDCPA.

60.   Although the FDCPA has a 1 year statute of limitations, abuse of legal process is an intentional tort with a statute of limitations of 2 years.

61.   Violations of the FDCPA when pursued by court action are abuse of legal process per se and the statute of limitations is extended to 2 years by operation of state law to cover the conduct consisting of filing and pursuing court actions to collect a debt not owed.  (See 15 USC sec. 1692e)

62.   Pursuing court action to collect a debt not owed is common law fraud and has a

---

[4] See ¶¶ 50, 51 and 52

[5] Unrecorded and, upon information and belief,  falsely created mortgage assignment to make it appear that the mortgage was assigned to the failed REMIC Trust known as Wells Fargo Home Equity Trust 2005-2

[6] Third forged mortgage assignment dated October 31, 2011 and recorded with the Kenosha County Register of Deeds on November 1, 2012, after filing of bankruptcy

[7] Copy of unendorsed mortgage note and, upon information and belief, only a computer image of this note exists (and can be printed from a proprietary data base) and attached to the foreclosure complaint in state court

[8] The robo-stamped mortgage note was created at Wells Fargo Headquarters in Minnesota no earlier than after commencement of the state court foreclosure (see fn.6, above) and was not presented until after the filing of the bankruptcy

11

statute of limitations of 6 years.

63.  By not loaning the Plaintiffs money on June 10, 2005, as promised by the contract, the Plaintiffs' obligation to pay the mortgage note fails for want of consideration and is void.

64.  By promising to loan the Plaintiffs money and deceiving them into signing a mortgage note and mortgage for the purpose of securitization, Wells Fargo Bank breached its contract with the Plaintiffs, resulting in actual damages to the Plaintiffs.

65.  The breach of contract and fraudulent collection action is further actionable against Well Fargo Bank for tortious interference with the Plaintiffs' economic advantage and prospective economic opportunity on an ongoing basis and is a continuing pattern of conduct (for which the statute of limitations) has not begun to run through the date of the filing of this pleading.

66.  Plaintiff Roger Rinaldi was solicited for a mortgage loan by the Wells Fargo Home Mortgage marketing scheme just after he had resolved an employment tax issue with the IRS.

67.  Plaintiffs had no funds on reserve in their accounts after the resolution with the IRS.

68.  Plaintiff Roger Rinaldi told the soliciting loan broker from the former Wells Fargo Home Mortgage, Inc. (now merged with its parent, Wells Fargo Bank, NA, Defendant herein) that he did not believe that the Plaintiffs would qualify for a mortgage loan so soon after resolving a matter with the IRS.

69.  Plaintiff Roger Rinaldi futher informed the soliciting loan broker that the Plaintiffs had no cash reserves and could not make a down payment for any home.

70.  The soliciting loan broker insisted that the concerns described at ¶¶ 66-69 were not a problem.

71.  Upon information and belief, Wells Fargo Home Mortgage Inc.' loan broker knew that the appraisal would be "fixed" in order to make it appear that there was equity in the property which the Plaintiffs ultimately acquired due to the Wells Fargo/HSBC securitization scheme and, therefore, no cash was required for a down payment on the property.

72.  Upon personal knowledge acquired after the fact, Plaintiff Roger Rinaldi discovered that a cash account in excess of $15,000.00 was placed on his loan application without his knowledge or approval and after he had signed the application.

73.  Plaintiffs now know that the purpose of the transaction was to procure their signatures on loan documents for securitization purposes with the intent that the loan pool would fail and that the losses would be borne and their loan would be paid by third parties not involved

12

in the contract between Wells Fargo Bank, N.A. and the Plaintiffs.

74.   Had Plaintiffs not be "marks" for a securitization fraud scheme, they would have continued to build their credit-worthiness (after the IRS resolution) and would eventually have been able to obtain a legitimate mortgage from an honest source of true mortgage funding.

75.   They would not have been dragged into a fraud perpetrated on themselves, the real party in interest which provided the loan funds, the investors in the unfunded REMIC Trust, the counterparty (Bear Stearns), the United States Treasury and the next iteration of the false securitization of the uncollateralized debt through the Federal Reserve Bank of New York into Maiden Lane, LLC, which was re-securitized and again sold to investors through, upon information and belief, the United States Treasury's servicing agent, a now bankrupt subsidiary of Ally Financial, Inc. (AFI)[9] which is approximately 74% owned by the United States Treasury.

76.   As a result of being "marks" in the securitization/guarantee scheme described above, the Plaintiffs have had their credit ruined, their health impaired, their reputations for honesty defamed, have experienced the described interference with their economic opportunity and are now proceeding in bankruptcy which interferes with their prospective economic opportunity for years to come.

77.   Plaintiffs did not need to buy a home but Wells Fargo Bank and its co-conspirator in the securitization/scheme HSBC Bank needed Plaintiffs' signatures on loan documents in order to effectuate its actual criminogenic scheme: to crash the lower tranches of the  Wells Fargo Home Equity Trust 2005-2 and collect on the counterparty's guarantee.

78.   Plaintiffs were placed in an engineered default status by fictitious calculations of late fees and other servicing errors in order to justify the foreclosure efforts undertaken to collect the debt not owed to HSBC Bank or Wells Fargo Bank (hereinafter the Fraud Parties.)

79.   After a stressful and intentionally humiliating court process before the Kenosha County Circuit Court in HSBC Bank USA vs. Roger Rinaldi, et al. in Kenosha County Case Number 09-CV-353, in which the Defendant law firms and identified attorneys made repeated misrepresentations to the Kenosha County Circuit Court Judge on behalf of the purported servicer and the purported  Trustee (Wells Fargo and HSBC Banks respectively) the Defendants ultimately extorted a purported loan modification from the Plaintiffs, which was not predicated upon a debt owed to the Defendant banks and the Plaintiffs knew that the loan was not owed to the Defendant banks.

---

[9] Residential Capital, LLC (RESCAP, LLC), GMAC Mortgage, LLC or one of the other total of 51 AFI subsidiaries now collectively in bankruptcy in the Southern District of New York entitled (as consolidated) In re RESCAP, LLC as NYSB Case No. 12-12020.

Case 12-02412-svk    Doc 1    Filed 06/17/12    Page 13 of 21

80.  Under the extreme duress of reasonably believing that their home would be illegally seized and sold by the Kenosha County Sheriff, upon a Court Order from Kenosha County's deceived circuit court judge,[10] Plaintiff Roger Rinaldi involuntarily signed the loan modification.

81.  Upon discovering further evidence of fraud, the grip of the duress created by the abuse of legal process was weakened and the Plaintiffs realized that they were not transacting business with the real party in interest.

82.  Thereafter, Plaintiffs withheld their payments from the Fraud Parties and sought court relief in the Kenosha County Circuit Court from the securitization/guarantee fraud in which they had unwittingly participated in Rinaldi, et al v. Wells Fargo Bank, N.A.et al, Kenosha County Case Number 11-CV-001477.

83.  Because Plaintiffs are not attorneys, the commencement of the action was defective because no Summons was issued by the Kenosha County Clerk of Circuit Court.

84.  Because Plaintiffs are not attorneys, the action was not properly served on the parties Defendant in that action.

85.  Because Plaintiffs are not attorneys, some of the parties Defendant were defectively identified as "doing business as" Wells Fargo Bank, N.A. without identifying their true separate corporate existences, where applicable, their competence to sue or be sued or their relationship to each other.

86.  Upon consultation with two licensed attorneys who were interested in the claims which might be properly pleaded in the case, Plaintiffs agreed with their counsel to dismiss the matter without prejudice to such claims as could properly be pleaded, against the properly identified parties, under an authenticated Summons and Complaint for proper service on the parties.

87.  Rather than merely allow the deficient pleadings in which jurisdiction was never perfected in the Kenosha County Circuit Court, Defendant Brad A. Markvart, representing HSBC Bank in the state court foreclosure and now representing Wells Fargo Bank, N.A. in the bankruptcy proceedings ,[11] sought to dismiss the Plaintiffs' claims with prejudice, asserting that

---

[10]  Judge Schroeder was led to believe that HSBC Bank was the "holder in due course" of a lawful mortgage note which had been lawfully obtained by Wells Fargo Bank for lawful consideration paid (none of which was true) by the Defendant banks through the named law firm and specific attorneys engaged in the state court proceedings.

[11]  In these proceedings, Attorney Markvart claims to represent the "Wells Defendants" without identifying which Wells Fargo entities exist and have retained his services, instead using the very same defective identification that the lay Plaintiffs misapprehended in the defective

14

the state court had already adjudicated those claims and had held them to be frivolous, when he knew that to be untrue.[12]

88.   Although the commencement of the action in <u>Rinaldi, et al v.  Wells Fargo Bank, N.A.et al</u>, Kenosha County Case Number 11-CV-1477 had jurisdictional and procedural deficiencies such that the attorneys who reviewed that case and were willing to assist the Plaintiffs with that action would only agree to move to dismiss the case without prejudice for failure to invoke the jurisdiction of the state court.

89.  As part of the pattern and practice to abuse legal process, Defendant Markvart and the attorney for GRAY & ASSOCIATES, LLP malpractice carrier sought dismissal with prejudice of <u>Rinaldi, et al v.  Wells Fargo Bank, N.A.et al</u>, Kenosha County Case Number 11-CV-1477 and again inflicted emotional harm upon the Plaintiffs through fear of sanctions for having sought be heard on certain matters in that action.

90.  Plaintiffs were already aware of the defects in their efforts to commence the case of <u>Rinaldi, et al v.  Wells Fargo Bank, N.A.et al</u>, Kenosha County Case Number 11-CV-1477 and merely wanted to dismiss the case without prejudice and seek the further advice of licensed counsel.

91.  The crimongenic enterprise[13] thrives on terrorizing citizen homeowners, misleading the courts and attempting to discourage the few attorneys who have been able to understand the complex fraud scheme and, through the Defendants and their identified law firms and attorneys joined herein, continues before this court, including, but not limited to:

a.  Fabricating and filing forged documents as described above and below;

---

Kenosha County Circuit Court filing in <u>Rinaldi, et al v.  Wells Fargo Bank, N.A.et al</u>, Kenosha County Case Number 11-CV-001477, Plaintiffs state court counsel sought to dismiss, in part, for failure properly to identify the corporate entities, which is improper practice and additionally misleading to this court, but part of the pattern and practice of the Defendant law firms and attorneys described herein.

[12]  No determination was ever made by Judge Bruce E. Schroeder of the Kenosha County Circuit Court that any claim or defense of the Plaintiffs was frivolous, but strongly encouraged the Plaintiffs to obtain legal counsel.

[13]  The criminogenic business plan involves most of the major first lien mortgage servicers and many of their lawyers, as well as certain quasi-government and privately held enterprises using taxpayer funds, and, even in this individual case, extends beyond the parties currently joined herein (for reasons stated herein and previously set forth in the Plaintiffs' Motion for Extension of the adversary proceeding deadline in this case.)

b.  Misrepresenting the facts and the law, including but not limited to, the representations in paragraph 92 below, and

(1) The statement of Defendant William N. Foshag in the Complaint in <u>HSBC Bank USA vs. Roger Rinaldi, et al.</u> in Kenosha County Case Number 09-CV-353 asserting HSBC Bank's standing to sue the Plaintiffs when he knew that the mortgage note was facially made payable to Wells Fargo Bank, N.A. and was not endorsed in favor of any other person or entity (Exhibit A)

(2) The statement of the Defendant William N. Foshag that HSBC Bank USA had standing to sue for foreclosure when there was no assignment of the mortgage recorded;

(3) The statements of Defendant Brad A. Markvart to the Kenosha County Circuit Court that the Plaintiffs admitted the standing of HSBC Bank in <u>HSBC Bank USA vs. Roger Rinaldi, et al.</u> in Kenosha County Case Number 09-CV-353 when he knew that the lay Plaintiffs were clearly, consistently and continuously contesting that allegation;

(4) The continuing  statements of Defendant Brad A. Markvart to this court that Plaintiffs claim had been valued at $1.00 after the court was informed on the record of proceedings on January 23, 2012 that prior counsel for the Plaintiffs-Debtors had not known how to enter the term "unknown" for an asset value on E-Z Filing software and that the Plaintiffs had believed that the asset value of $1.00 meant "unknown" and suggesting that the data entry error proved the Plaintiffs to be swearing falsely under oath, even after new counsel explained the data entry error and assessed the value of the claim as much higher;[14]

(5) The statements of Defendant Jay Pitner representing that final judgment had been entered in <u>HSBC Bank USA vs. Roger Rinaldi, et al.</u> in Kenosha County Case Number 09-CV-353 and that res judicata had attached to the proceedings when he knew that the foreclosure case had subsequently  been dismissed without prejudice; and

(6) The forged endorsement to the mortgage note robo-stamped bearing the signature of Joan M. Mills to mislead this court into believing that the note had been timely, properly and authentically endorsed in blank after the commencement of <u>HSBC Bank USA vs. Roger Rinaldi, et al.</u> in Kenosha County Case Number 09-CV-353 and prior to November 4, 2011;

---

[14]  That is the equivalent of calling the Plaintiffs "liars" because current counsel initially valued the claims against these Defendants at $100,000.00 and now, upon completion of the investigation required for these abbreviated proceedings, she will be amending Schedule B to value these claims in an amount of $1,000,000.00 (including punitive damages) and the jury award may be higher.  The statement made was intentionally misleading, made maliciously and constitutes abuse of legal process.

16

(7) The filing of false Claim #6 by Brian D. Perhach; and

(8) The facts set forth in the Debtors Objection to Claim #6 and Motion to Extend deadline to file the adversary proceedings filed on June 13, 2012 are incorporated by reference as if fully set forth herein.

92.   On June 15, 2012, at the hearing on the Motion to Extend the deadline for filing this adversary proceeding on the basis of a newly filed false claim (#6) which required a total rewriting of the nearly-prepared draft of the adversary Complaint and the newly discovered evidence of the implications of the RESCAP, LLC bankruptcy on the draft of these adversary proceedings which intended to join Maiden Lane, LLC and the Federal Reserve Bank of New York as real parties in interest, Defendant Markvart urged dismissal with prejudice of these proceedings as an alternative to granting a properly sought extension to rewrite an entire pleading on 3 days notice and Defendant Pitner, without having reviewed the asset list of the Maiden Lane, LLC and Exhibit B attached to the Motion for Extension, recklessly stated that he had no reason to believe that the Plaintiffs loan was collateral in the Maiden Lane, LLC TARP asset pool in order to allow the Plaintiffs' attorney to move forward to plead the servicer of the Maiden Lane, LLC TARP asset pool, the bankrupt RESCAP, LLC, as a party responsible for the Plaintiffs' damages.

93.   The tortious conduct of the Defendants, individually and collectively, and in concert with parties which cannot be joined herein, continues to cause injuries to the Plaintiffs by causing them economic and non-economic losses, including, but not limited to, pain and suffering, anxiety,  confusion and mental anguish.

94.   The Defendants have engaged in a pattern and practice of fabricating documents and filing forged documents throughout the State of Wisconsin (and the United States) in order to defraud homeowners, subordinate lienholders, courts (both state courts and bankruptcy courts) for the purpose of seizing homes through court processes and taking title thereto without having standing to do so.

95.   In order to accomplish the goal of seizing homes for profitable re-sale to which the Defendant banks and the Defendant law firms and lawyers know or should know upon even mere superficial inquiry that there is no competent evidence that the Defendant banks are entitled to payments or the remedy of foreclosure for nonpayment, forgeries and fabricated documents are transmitted to official administrative offices (the Registers of Deeds in Wisconsin) and to the courts (circuit, appellate, bankruptcy and federal district) by wire and mail.

96.   Punitive damages are necessary to deter the continuation of a criminogenic business model.

97.   As further support for the award of punitive damages in this case, the Plaintiffs show the Court that the pattern and practice is so pervasive as to constitute a business enterprise which,

despite sanctions such as the National Mortgage Settlement (Judgment in <u>United States of America, et al. v. Bank of America, et. al,</u> Case No. 12-cv-361 taken by the United States of America and 49 State Attorneys General, which was approved by the United States District Court for the District of Columbia on April 4, 2012, the sanctioned conduct continues unabated.

98.   Wells Fargo Bank was one of five mortgage servicers/lenders which entered into a Consent Judgment with the United States of America and 49 State Attorneys General, which was approved by the United States District Court for the District of Columbia in <u>United States of America, et al. v. Bank of America, et. al,</u> Case No. 12-cv-361 on April 4, 2012.  The Consent Judgment is commonly known as the "National Mortgage Settlement."

99.   Among the illegal acts to which Wells Fargo Bank admitted in that case and for which Wells Fargo Bank was sanctioned was foreclosing on homes without standing to do so, either on its own behalf or as servicer for other financial institutions.

100.   The National Mortgage Settlement covers the period of time from January 1, 2009 through <u>February 8, 2012.</u>

101.   In addition to paying civil penalties for a release from civil liability from the 49 states involved in the National Mortgage Settlement for the release covering the  period of time from January 1, 2009 through February 8, 2012, Wells Fargo Bank promised to stop committing the acts for which it was sanctioned.

102.   Upon information and belief, Wells Fargo Bank, as purported servicer for HSBC Bank, authorized the filing of the false Proof of Claim #6.

103.   Wells Fargo Bank represented  to the United States of America and the Attorney General for the State of Wisconsin in the National Mortgage Settlement that it would no longer file false claims in bankruptcy courts.

104.   In exchange for the promise of Wells Fargo Bank to stop filing false claims in bankruptcy court, the Office of the United States Trustee of the United States Department of Justice agreed to terminate its discovery process with respect to its filing of false claims in bankruptcy and proceeding to lift the automatic stay without standing to do so which were pending as of February 8, 2012.

105.   Defendants have continued the practice of filing false claims in bankruptcy proceedings by filing false Claim #6 in this case,  making an award of punitive damages necessary to punish the Defendants,  who have not been deterred by the sanctions imposed by the National Mortgage Settlement.

18

## DEMANDS FOR JUDGMENT

### FIRST CAUSE OF ACTION
#### Declaratory Judgment

106. Plaintiffs reallege paragraphs 1-12 and 15-105 and incorporate the same by reference as if fully set forth herein.

107. Plaintiffs are entitled to the equitable relief of the declaratory judgments requested in paragraph 2, above.

108. Plaintiffs are entitled to an award of their attorneys' fees and costs in these proceedings as a sanction for the filing of false Claim #6 in these proceedings pursuant to 11 USC sec. 105.

### SECOND CAUSE OF ACTION
#### Common Law Fraud

109. Plaintiffs reallege paragraphs 1-12 and 15-105 and incorporate the same by reference as if fully set forth herein.

110. Plaintiffs are entitled to damages for actual economic losses and non-economic losses, including, but not limited to, pain and suffering, anxiety, confusion and mental anguish.

111. Plaintiffs demand an award of punitive damages as a deterrent and for punishment.

112. Plaintiffs are entitled to an award of their attorneys' fees and costs in these proceedings as a consequence of the Defendants' frauds.

### THIRD CAUSE OF ACTION
#### Abuse of Legal Process

113. Plaintiffs reallege paragraphs 1-12 and 15-105 and incorporate the same by reference as if fully set forth herein.

114. Plaintiffs are entitled to damages for actual economic losses and non-economic losses, including, but not limited to, pain and suffering, anxiety, confusion and mental anguish.

115. Plaintiffs demand an award of punitive damages as a deterrent and for punishment.

116. Plaintiffs are entitled to an award of their attorneys' fees and costs of litigation in these proceedings and their costs in the dismissed state court foreclosure proceeding as a foreseeable consequence of the abuse of legal process.

19

## FOURTH CAUSE OF ACTION
### Violations of the Fair Debt Collection Practices Act (FDCPA)

117.   Plaintiffs reallege paragraphs 1-12 and 15-105 and incorporate the same by reference as if fully set forth herein.

118.  Defendants are debt collectors as defined by 15 U.S.C. sec. 1692a(6).

119. Defendants filed false, deceptive, misleading and perjured documents in connection with the collection of Plaintiff's alleged debt in violation of 15 U.S.C. sec. 1692e.

120. Plaintiff suffered actual damages from the violations of the FDCPA.

121.  Plaintiffs are entitled to statutory damages under FDCPA pursuant to 15 U.S.C. sec. 1692k.

122.   Plaintiffs are entitled to their reasonable attorney's fees and costs under 15 U.S.C. sec. 1692k.

## FIFTH CAUSE OF ACTION
### Breach of Contract (Against Defendant Wells Fargo Only)

123.   Plaintiffs reallege paragraphs 1-4, 7-12, 15-43, 61-78 and incorporate the same by reference as if fully set forth herein.

124.  Plaintiffs are entitled to damages, including, but not limited to, actual economic losses and punitive damages.

125.  Plaintiffs are entitled to an award of their attorneys' fees and costs of litigation in these proceedings and their costs in the dismissed state court foreclosure proceeding  as a foreseeable consequence of the breach of contract.

## SIXTH CAUSE OF ACTION
### Tortious Interference with Economic Opportunity
### And Prospective Economic Advantage

126.   Plaintiffs reallege paragraphs 1-12 and 15-105 and incorporate the same by reference as if fully set forth herein.

127.   Plaintiffs are entitled to damages, including, but not limited to actual economic losses, as well as non-economic losses, including, but not limited to,  pain and suffering, anxiety, confusion and mental anguish.

20

128.  Plaintiffs are entitled to an award of their attorneys' fees and costs of litigation in these proceedings and their costs in the dismissed state court foreclosure proceeding  as a foreseeable consequence of their tortious conduct.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial to all issues triable to by a jury.

Dated at Minneapolis, Minnesota this 16th  day of June, 2012.

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora
ACCESS LEGAL SERVICES
210 Second Street NE
Minneapolis, Minnesota 55413
(612) 333-4144
FAX (612) 886-2444
WI BAR #1017043
accesslegalservices@gmail.com