***The above recording information verifies this document has been electronically recorded and returned to the submitter***

Wells Fargo Bank, NA, Assignor, for a valuable consideration, assigns to HSBC Bank USA, National Association, as Trustee for Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates, Series 2005-2, the mortgage executed by Roger Rinaldi, to Wells Fargo Bank, N.A. on the 10th day of June, 2005, the aforementioned mortgage being assigned was recorded in the office of the Register of Deeds of Kenosha County, Wisconsin, on the 20th day of June, 2005, as Instrument Number 1437622. The property encumbered by said mortgage is described as follows:

THIS SPACE RESERVED FOR RECORDING DATA

NAME AND RETURN ADDRESS:
Gray & Associates, LLP
16345 West Glendale Drive
New Berlin, WI 53151

67-4-120-361-0805
PARCEL IDENTIFICATION NUMBER

Lot 2 in Block 3 of Lake Shangri-La Woodlands, being part of the West ½ of the Northeast ¼ and part of the Southeast ¼ of the Northeast ¼ of Section 36, Town 1 North, Range 20 East of the Fourth Principal Meridian, lying and being in the Town of Salem, County of Kenosha, and State of Wisconsin.

Street address: 22311 121st Street, Bristol, WI 53104

Dated this 1st day of March, 2010.

Wells Fargo Bank, NA,

_____(SEAL)
Herman John Kennerty, VP of Loan Documentation

ACKNOWLEDGMENT

State of SOUTH CAROLINA )
                        ) ss
YORK County             )

Personally came before me this 1st day of March, 2010, the above named Herman John Kennerty, to me known to be the person who executed the foregoing instrument and acknowledge the same.

_____
Wendy Albertson Al-Hammadi
Notary Public, State of South Carolina
My commission is expires 3-10-18

OFFICIAL SEAL
Notary Public
State of South Carolina
WENDY ALBERTSON AL-HAMMADI
My Commission Expires March 10, 2018

THIS INSTRUMENT WAS DRAFTED BY

Doreen C. Delke / GRAY & ASSOCIATES, L.L.P.

* Names of persons signing in any capacity should be typed or printed below their signatures

ASSIGNMENT OF REAL ESTATE MORTGAGE

STATE BAR OF WISCONSIN
Form No. 14 - 1982

*Handwritten annotations:*
Document date: 3/1/2010
Recorded: 4/5/2010

Exhibit C

Recorded 14 months after commencement of Kenosha County Foreclosure Case HSBC v. Rinaldi Case 09CV0353

This document prepared by and
when recorded, return to:
Wells Fargo Bank, N.A.
Attention: Final Documents
MAC X4701-02B
3601 Minnesota Drive Suite 200
Bloomington, MN 55435

Loan Number:
Service Number:
Chan:     MEX

## Assignment of Mortgage/Deed of Trust

For value received,
Wells Fargo Bank, N.A.
7001 Westown Parkway, West Des Moines, IA 50266
hereby sells, assigns and transfers to:
HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE ATTN: CORPORATE TRUST
452 FIFTH AVENUE
NEW YORK, NY 10018
its successors and assigns all of its right, title, and interest to a certain Mortgage / Deed of Trust as follows:
Execution Date : 06/10/2005
Legal Name : ROGER RINALDI

Beneficiary : WELLS FARGO BANK, N.A.
County : KENOSHA        State : WI
Recorded Date :      ADDRESS : 22311 121ST STREET
                              BRISTOL, WI 53104
Document Number :     BOOK :           PAGE :
Legal:

Kelly Thornton
Vice President Loan Documentation

State of Maryland ( SS
County of Frederick)

On this Wednesday, September 14, 2005 before me, the undersigned a Notary Public of the state of Maryland, personally appeared Kelly Thornton, respectively to me personally known, who being duly sworn, did say that they are Vice President(s) of Loan Documentation respectively, of Wells Fargo Bank, N.A., and that the seal affixed to the foregoing instrument is the corporate seal of said corporation by authority of its Board of Directors and the said Kelly Thornton acknowledged the execution of said instrument to be the voluntary act and deed of Wells Fargo Bank, N.A., by it voluntary done and executed. Witnessed by my hand and notarial seal the day and last year above written.

NOTARY PUBLIC

Chianh Pham
Notary Public
Frederick County, MD
My Commission Expires 08/01/2007

Exhibit D

*Handwritten note:* Document date: 9/14/2005
Recorded; never
First discovered: When filed in connection with Motion to Lift Automatic Stay by HSBC (filing data below)

| Document Number | ASSIGNMENT OF MORTGAGE |
|---|---|

Document #: **1657451**
Date: **2011-11-01** Time: **15:41:31** Pages: **3**
Fee: **$30.00** County: **Kenosha** State: **WI**
Register of Deeds : **Louise I Principe**

***The above recording information verifies this document has been electronically recorded and returned to the submitter***

THIS SPACE RESERVED FOR RECORDING DATA

NAME AND RETURN ADDRESS:

Wells Fargo Bank, N.A
3476 Stateview Boulevard
Fort Mill, SC 29715

67-4-120-351-0705
Parcel Identification Number (PIN)

This information must be completed by submitter: document title, name & return address, and PIN (if required). Other information such as the granting clauses, legal description, etc. may be placed on the first page of the document or may be placed on additional pages of the document. Note: Use of this cover pages adds one page to your document and $2.00 to the recording fee. Wisconsin Statutes, 59.43.

Document date: 10/31/2011
Recorded: 11/1/2011
Discovered by Roger Rinaldi on April 24, 2012 at Kenosha County Register of Deeds-Service Center

Exhibit E

E-1

# ASSIGNMENT

Document Number

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

Parcel ID No. 67-4-120-361-0705

THIS IS A STYLE "B" FORM UNDER WIS ACT 110 WITH 3X3 SPACE IN UPPER RIGHT CORNER
Kenosha, Wisconsin
"RINALDI"
SELLER'S LENDER ID#: M72
Date of Assignment: October 31st, 2011
Assignor: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328
Assignee: HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO HOME EQUITY ASSET-BACKED SECURITIES 2005-2 TRUST, HOME EQUITY ASSET-BACKED CERTIFICATES, SERIES 2005-2
at 636 GRAND REGENCY BLVD., BRANDON, FL 33510

Executed By: ROGER RINALDI, To: WELLS FARGO BANK, N.A.
Date of Mortgage: 06/10/2005 Recorded: 06/20/2005 as Instrument No.: 1437622 in the County of Kenosha, State of Wisconsin.

Parcel ID No. 67-4-120-361-0705

Property Address: 22311 121ST STREET, BRISTOL, WI 53104
: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $164,200.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

WELLS FARGO BANK, N.A.
On 10/31/11

By: _____
Kate Johnson
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

On 10/31/11, before me, Robert W. Caruso, a Notary Public in and for Dakota in the State of Minnesota, personally appeared Kate Johnson, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Robert W. Caruso
Notary Expires: 1/31/2014

ROBERT W. CARUSO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

Prepared By: Michael Dempsey, WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD., EAGAN, MN 55121 (651)605-3792

E-2

Exhibit "A"

Lot 2 in Block 3 of Lake Shangri-La Woodlands, being part of the West 1/2 of the Northeast 1/4 and part of the Southeast 1/4 of the Northeast 1/4 of Section 36, Town 1 North, Range 20 East of the Fourth Principal Meridian, lying and being in the Town of Salem, County of Kenosha and State of Wisconsin.

E-3

```
4/24/12                          COUNTY OF KENOSHA  ENVI R. TRACT              VIEW    RCI 2806
10:09:09                      DOCUMENT BY TRACT INDEX (PARCEL ID)                      ABSTRACT

From Date:       4/09/1850
Parcel ID:       67412036l0705
VIEW
"X" DOCUMENT#   INSTRUMENT                      DATE REC    ADD'L LEGAL DESC. COMMENTS
    1614342    ASSIGN OF MRTGAGE                4/05/2010   22311 121 ST
-   Gr 1:   WELLS FARGO BANK NA
    Ge 1:   HSBC BANK USA NA
    Parcel Id: 67412036l0705

    1636898    RELEASE OF LIS PENDENS           1/07/2011   22311 121 ST
-   Gr 1:   HSBC BANK USA NA
    Ge 1:   RINALDI, ROGER
    Parcel Id: 67412036l0705

X   1657451    ASSIGN OF MRTGAGE                11/01/2011  22311 121 ST
    Gr 1:   WELLS FARGO BANK NA
    Ge 1:   HSBC BANK USA NA
    Parcel Id: 67412036l0705

F3=Exit   Enter=Select ("X") Doc to View Help
```

```
5/22/09                          COUNTY OF KENOSHA  ENVIR. TRACT              VIEW    RCI 2806
10:06:43                      DOCUMENT # BY GRANTOR/GRANTEE NAME

                                                              From Date 1/01/1800
Select Name RINALDI, ROGER
VIEW                                   GTR/ INST                      DATE
"X" NAME                               GTE  TYPE    DOC#            RECORDED  LEGAL
    RINALDI, ROGER                     GTE  WD      1437621         6/20/2005 LAKE SHANGRI
        HOFFMAN, DANIEL, E
-   RINALDI, ROGER                     GTR  MTG     1437622         6/20/2005 LAKE SHANGRI
        WELLS FARGO BANK NA
X   RINALDI, ROGER                     GTE  LP      1578309         2/05/2009 LAKE SHANGRI
        HSBC BANK USA NA
No more records to display

F3=Exit   Enter=Select ("X") Document to View Help
```

E-4

# ADJUSTABLE RATE NOTE
**2 YEAR/6 MONTH LIBOR INDEX - RATE CAPS**
(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| JUNE 10, 2005 | TWIN LAKES | WISCONSIN |
|---|---|---|
| Date | City | State |

22311 121ST STREET, BRISTOL, WI 53104
(Property Address)

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $...164,200.00......... (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is ................................
..WELLS.FARGO.BANK..N.A.................................................................................................
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of ...5.500......%. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.
Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on ..AUGUST.1..2005............... I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on ...JULY.1..2035,.................., I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
I will make my monthly payments at ..WELLS.FARGO.BANK..N.A......................................................
..P.O..BOX.10304,.DES.MOINES,.IA..50306-0304.................................................................or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $.....1,282.58............ This amount may change.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the first day of ..JULY..2007........................, and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding .two.and.one-fourth................................percentage points (..2.250........%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTMENT RATE NOTE - 6-Month LIBOR Index
(Assumable during Life of Loan) (First Business Day Lookback) - Single Family
Freddie Mac UNIFORM INSTRUMENT WI

Form 5520 3/04

EC1XL Rev. 09/21/04

EXHIBIT A

Exhibit F

F-1

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than ....11.500...% or less than ....5.500...%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ....one............................ percentage point (....1.000....%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than ....14.500...%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index  Form 5520 3/04  ECICOL Rev. 09/07/04
(Assumable during Life of Loan) (First Business Day Lookback) - Single Family
Freddie Mac UNIFORM INSTRUMENT WI

EXHIBIT A

F-2

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the Rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ROGER RINALDI                    -Borrower

Sign Original Only

EXHIBIT A

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable during Life of Loan) (First Business Day Lookback) - Single Family
Freddie Mac UNIFORM INSTRUMENT WI

Form 5520 3/04

EC1046 Rev. 00/21/04

F-3

# ADDENDUM TO NOTE
(Prepayment)

THIS ADDENDUM is made this ...10th... day of ...JUNE... 2005... , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1. The Note is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first ...two... (..2..) year(s) after the execution of the Security Instrument, I make full prepayment within any 12-month period the total amount of which exceeds twenty percent (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of sixty (60) days' advance interest, at the interest rate provided for under the Note, on the amount by which the total of my prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount.

2. All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: 6/10/05      _____(Seal)
                    ROGER RINALDI        -Borrower

EXHIBIT A

Subprime Prepayment (1-5 yrs) Addendum
Parity Act- IL, WI

EC166L Rev. 12/26/01

F-4

## ADJUSTABLE RATE NOTE
2 YEAR/6 MONTH LIBOR INDEX - RATE CAPS
(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| JUNE 10, 2005 | TWIN LAKES | WISCONSIN |
|---|---|---|
| Date | City | State |

22311 121ST STREET, BRISTOL, WI 53104
(Property Address)

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 164,200.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on AUGUST, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at WELLS FARGO BANK, N.A.
P.O. BOX 10304, DES MOINES, IA 50306-0304 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 1,262.56. This amount may change.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the first day of JULY, 2007, and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding four and one-quarter percentage points (4.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTMENT RATE NOTE - 6-Month LIBOR Index
(Assumable during Life of Loan) (First Business Day Lookback) - Single Family
Freddie Mac UNIFORM INSTRUMENT WI

Form 5520 3/04     EC 08L Rev 09/21/04

Exhibit G

(4-1

E-2

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than ...11.500...% or less than ...5.500...%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ...one... percentage point (...1.000...%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than ...14.500...%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index    Form 5520  3/04    EC1D6L Rev. 09/07/04
(Assumable during Life of Loan) (First Business Day Lookback) - Single Family
Freddie Mac UNIFORM INSTRUMENT WI



G-4



9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the Rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____ (Seal)
ROGER RINALDI -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY _____
Joan M. Mills, Vice President

Sign Original Only

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index     Form 5520 3/04     I C105E Rev. 00/21/04
(Assumable during Life of Loan) (First Business Day Lookback) - Single Family
Freddie Mac UNIFORM INSTRUMENT WI

G-5

G-6

# ADDENDUM TO NOTE
(Prepayment)

THIS ADDENDUM is made this ...10th..... day of ..JUNE............. 2005.. , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.  The Note is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

   Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first ...two.... (..2..) year(s) after the execution of the Security Instrument, I make full prepayment within any 12-month period the total amount of which exceeds twenty percent (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of sixty (60) days' advance interest, at the interest rate provided for under the Note, on the amount by which the total of my prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount.

2.  All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: 6/10/05      _____(Seal)
                    ROGER RINALDI                    -Borrower

Subprime Prepayment (1-5 yrs) Addendum
Parity Act- IL, WI

EC166L Rev. 12/26/01