UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

In re:

ROGER PETER RINALDI and DESA LILLY
RINALDI,

               Debtors,

_____

ROGER PETER RINALDI and DESA LILLY
RINALDI,

               Plaintiffs,

vs.

HSBC BANK USA, NATIONAL
ASSOCIATION, et al.,

               Defendants.

Case No. 11-3689-SVK-13

Adversary Proceeding No: 12-02412-SVK

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6) AND FED. R. BANKR. P. 7012**

---

## <u>INTRODUCTION</u>

Plaintiffs Roger Peter Rinaldi and Desa Lily Rinaldi claim that the defendants engaged in
a "crimongenic enterprise" to seize their home in Bristol, Wisconsin.  The plaintiffs executed a
mortgage on the property in June 2005, (*see* Compl. Ex. B), but were ultimately unable to make
payments on the loan.  Defendant HSBC Bank USA, National Association (hereinafter "HSBC
Bank"), as Trustee for Wells Fargo Asset Securities Corporation Home Equity Asset-Backed
Certificates, Series 2005-2, the mortgagee, started a foreclosure action (Kenosha County Case
No. 09-CV-353) against the plaintiffs in February 2009.  The circuit court entered a judgment in
favor of HSBC Bank in February 2010.  After the judgment was entered, the parties agreed to a

16606193v1 0936857

loan modification, and the foreclosure action was dismissed. The plaintiffs started the above-referenced bankruptcy proceedings in October 2011.

Defendant Gray & Associates, LLP ("Gray"), through several of its attorneys, represented HSBC Bank in the foreclosure action and represents HSBC Bank in the bankruptcy. In June 2011, the plaintiffs filed a state court action (Kenosha County Case No. 11-CV-1477) against Gray and other defendants for relief from an alleged "securitization/guarantee fraud" with respect to the mortgage and foreclosure. (*See* Compl. ¶ 82.) The case remains open, but has been stayed since the bankruptcy filing.

The plaintiffs filed their adversary complaint in this Court on June 17, 2012. They claim that Gray and attorneys William N. Foshag, Duncan C. Delhey, Jay J. Pitner, and Brian D. Perhach (collectively "the Gray Defendants") somehow conspired with the other defendants "to abuse legal process in an effort to seize Plaintiffs' home for payment on a debt not owed to any of them." (*Id.* ¶ 56.) The sweeping allegations of the adversary complaint are difficult to summarize. Stripped of its editorial content, the complaint rests on the apparent belief that none of the defendant banks holds the plaintiffs' mortgage and that any attempt by the defendants to assert a right under the mortgage was therefore improper. (*See generally* Compl.)

The plaintiffs assert causes of action against the Gray Defendants for: (1) common law fraud; (2) abuse of legal process; (3) violations of the Fair Debt Collection Practices Act ("FDCPA"); and (4) tortious interference with economic opportunity and prospective economic advantage.[1] (*See id.* ¶¶ 109-22, 126-28.)[2] They seek various forms of damages.

---

[1] Whether the tortious interference claim is asserted against the Gray Defendants is not entirely clear. On one hand, the plaintiffs state that their complaint is directed "against the Defendants, collectively for common law fraud, abuse of legal process and violations of the [FDCPA] and against Wells Fargo Bank, National Association, for breach of contract and tortious interference with prospective economic opportunity." (*See* Compl. ¶ 3.) They further allege that "[t]he breach of contract and fraudulent collection action is further actionable against Wells Fargo Bank for

16606193v1 0936857

Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012, the Gray Defendants now move for an order dismissing the adversary complaint against them for several reasons.

First, the FDCPA and intentional tort claims are time-barred under the applicable statutes of limitations. *See* 15 U.S.C. § 1692k(d); Wis. Stat. § 893.57 (2007-08).

Second, the FDCPA does not apply to the Gray Defendants to the extent that non-deficiency mortgage foreclosure—as in this case—is not "debt collection" under the FDCPA, but rather foreclosure of a security interest. *See, e.g., **Rosado v. Taylor***, 324 F. Supp.2d 917 (N.D. Ind. 2004) (holding that the FDCPA did not apply to a summons and foreclosure complaint sent to a debtor by the creditor's attorney); ***Overton v. Foutty & Foutty, LLP***, 2007 WL 2413026 (S.D. Ind.); ***Crawford v. Countrywide Home Loans, Inc.***, 2011 WL 3875642 (N.D. Ind.) (discussing *Rosado* for the proposition that a foreclosure lawsuit undertaken only in an effort to enforce a security interest, and not to obtain a deficiency judgment, is not debt collection within the meaning of the FDCPA); ***Warren v. Countrywide Home Loans, Inc.***, 2009 WL 2477764 (11th Cir.) (citing numerous cases and holding that enforcement of a security interest through the foreclosure process is not debt collection for purposes of the FDCPA).

Third, the plaintiffs fail to plead a "definite act or threat" and "irregular steps" taken by the Gray Defendants under cover of process, after its issuance, as required to state a claim for abuse of process under Wisconsin law. *See, e.g., **Thompson v. Beechham***, 72 Wis. 2d 356, 362, 241 N.W.2d 163 (1976); ***Novick v. Becker***, 4 Wis. 2d 432, 90 N.W.2d 620 (1958); ***Kustelski v.***

---

[2] tortious interference with the Plaintiffs' economic advantage and prospective economic opportunity. . . ." (*Id.* ¶ 65.) There are no similar allegations naming the Gray Defendants. On the other hand, the plaintiffs state in the heading of their breach of contract allegations that such claim is being asserted "Against Defendant Wells Fargo Only." (*See id.* at 20.) The heading for the tortious interference allegations does not have the same disclaimer. (*See id.*) The Gray Defendants assume, for the purposes of this motion only, that the tortious interference is directed at them and have moved to dismiss the claim out of an abundance of caution.

[2] The plaintiffs also seek a declaratory judgment that the sworn proof of claim filed as Claim #6 in the bankruptcy proceedings is false. (*See* Compl. ¶ 2.) This claim does not appear to be directed at the Gray Defendants.

3

*Taylor*, 2003 WI App. 194, ¶¶ 24-31, 266 Wis. 2d 940, 669 N.W.2d 780; ***Whispering Springs Corp. v. Town of Empire***, 183 Wis. 2d 396, 515 N.W.2d 469 (Ct. App. 1994); ***Pronger v. Odell***, 127 Wis. 2d 292, 297, 379 N.W.2d 330 (Ct. App. 1985); ***Tower Special Facilities, Inc. v. Investment Club, Inc.***, 104 Wis. 2d 221, 229, 311 N.W.2d 225 (Ct. App. 1981).

Fourth, the plaintiffs have likewise failed to plead their common law fraud claim with the specificity required by Fed. R. Civ. P. 9(b), as well as the heightened pleading standards recently established by the U.S. Supreme Court. *See **Ashcroft v. Iqbal***, 556 U.S. 662, 678-80 (2009); ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 555 (2007).

Fifth, any statements made by the Gray Defendants in the context of litigation cannot serve as a basis for any of the plaintiffs' common law claims, as such statements are covered by the doctrine of immunity/absolute privilege. *See, e.g.,* ***Bernegger v. Wash. Mut., F.A.***, 2008 WL 4722392 *6 (E.D. Wis.) (applying immunity/absolute privilege doctrine to dismiss plaintiff's misrepresentation claims against foreclosure counsel arising from statements made by counsel in the context of litigation).

Finally, the plaintiffs' claims against the Gray Defendants are not "core proceedings" within the meaning of 28 U.S.C. § 157(b)(2). At most, the claims are matters "related to" the bankruptcy proceedings on which the court cannot enter final orders or judgments. In the circumstances of this case, the Court has, and should exercise, its discretion to abstain from hearing these matters. *See **In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.***, 6 F.3d 1184, 1189 (7 Cir. 1993) (describing circumstances in which a federal court may exercise discretion to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1)).

4

16606193v1 0936857

## ALLEGATIONS AGAINST THE GRAY DEFENDANTS

The plaintiffs do not make any factual allegations that are specific to any of the purported causes of action against the Gray Defendants. Instead, they state a long list of "Allegations Common to All Counts," including:

### Allegations against Gray generally

1. Gray is a "debt collector" under the FDCPA. (Compl. ¶ 48.)

2. Defendants "acted in concert to abuse legal process in an effort to seize Plaintiffs' home for payment on a debt not owed to any of them." (*Id.* ¶ 56.)

3. "Defendant law firms and lawyers are acting as debt collectors for Defendant banks, which are debt collectors for the concealed third parties." (*Id.* ¶ 58.)

4. Defendants "engaged in conduct prohibited by the FDCPA." (*Id.* ¶ 59.)

5. "Defendant law firms and identified attorneys made repeated misrepresentations to the Kenosha County Circuit Court Judge [in the foreclosure action] on behalf of the purported servicer and the purported Trustee (Wells Fargo and HSBC Banks respectively) the Defendants ultimately extorted a purported loan modification from the Plaintiffs, which was not predicated upon a debt owed to the Defendant banks. . . ." (*Id.* ¶ 79.)

6. "Defendant banks through the named law firm and specific attorneys" in the foreclosure action "deceived" the circuit court judge by representing that HSBC Bank was the "holder in due course" of the plaintiffs' mortgage. (*Id.* ¶ 80 n.10.)

7. "Defendants have engaged in a pattern and practice of fabricating documents and filing forged documents . . . in order to defraud homeowners, subordinate lienholders, courts . . . for the purpose of seizing homes through court processes and taking title thereto without having standing to do so." (*Id.* ¶ 94.)

8. "Defendants have continued the practice of filing false claims in bankruptcy proceedings by filing false Claim #6 in this case. . . ." (*Id.* ¶ 105.)

### Allegations against Mr. Foshag specifically

5

16606193v1 0936857

1. Mr. Foshag is a "debt collector" and signed the complaint in the foreclosure action.  (*Id.* ¶ 49.)

2. The foreclosure complaint signed by Mr. Foshag stated that HSBC Bank "had standing to sue the Plaintiffs when [Mr. Foshag] knew that the mortgage note was facially made payable to Wells Fargo Bank, N.A. and was not endorsed in favor of any other person or entity."  (*Id.* ¶ 91b.(1).)

3. The foreclosure complaint signed by Mr. Foshag stated that HSBC Bank "had standing to sue for foreclosure when there was no assignment of the mortgage recorded."  (*Id.* ¶ 91b.(2).)

**Allegations against Mr. Delhey specifically**

1. Mr. Delhey is a "debt collector" and "created the recorded assignment of mortgage for use in the [foreclosure action] 13 months after the commencement of the [foreclosure action]."  (*Id.* ¶ 50.)

2. The recorded assignment of mortgage is a "forgery" as defined in Wis. Stat. § 943.38(1).  (*See id.* ¶ 52.)

**Allegations against Mr. Pitner specifically**

1. Mr. Pitner is a "debt collector" who has signed two pleadings on behalf of HSBC Bank in the bankruptcy proceedings.  (*See id.* ¶ 53 n.2.)

2. Mr. Pitner represented that "final judgment had been entered in [the foreclosure action] and that res judicata had attached to the proceedings" when he knew that the case had been dismissed without prejudice.  (*Id.* ¶ 91b.(5).)

3. At the June 15, 2012 hearing on the plaintiffs' motion to extend the deadline for filing their adversary complaint, Mr. Pitner "recklessly stated that he had no reason to believe that the Plaintiffs [*sic*] loan was collateral in the Maiden Lane, LLC TARP asset pool in order to allow the Plaintiffs' attorney to move forward to plead the servicer" of the asset pool.  (*Id.* ¶ 92.)

**Allegations against Mr. Perhach specifically**

1. Mr. Perhach is a "debt collector" who appeared at the June 5, 2012 hearing on HSBC Bank's Objection to Confirmation of Plan dated May 17, 2012 and "filed the false claim#6 in the bankruptcy proceedings."  (*Id.* ¶¶ 54, 91b.(7).)

2. Mr. Perhach caused various "forged documents" to be attached to Proof of Claim #6.  (*Id.* ¶ 55.)

6

16606193v1 0936857

Because these allegations are insufficient to state a claim upon which relief can be granted, the Gray Defendants respectfully move for an order dismissing the adversary complaint against them, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012.

## STANDARD ON MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12 is applicable in bankruptcy proceedings. Fed. R. Bankr. P. 7012. In ruling on a motion to dismiss under Rule 12(b)(6), a court views all of the facts alleged in the complaint, as well as any inferences to be reasonably drawn from them, in the light most favorable to the plaintiff. *See Village of Rosemont v. Jaffe*, 482 F.3d 926, 936 (7th Cir. 2007). "Notice" pleading requires only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See* Fed. R. Bankr. P. 7008. Nonetheless, a complaint must include "enough facts to state a claim for relief that is plausible on its face" and must provide "more than labels and conclusions" because a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. THE PLAINTIFFS' CLAIMS ARE TIME-BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

The plaintiffs' FDCPA and common law tort claims should be dismissed because they are all barred by the applicable statutes of limitations. A civil action for violation of the FDCPA must be commenced within one year of the violation. *See* 15 U.S.C. § 1692k(d). The plaintiffs' FDCPA claims are based on the Gray Defendants' filing of the foreclosure action in February 2009. This case was not commenced until June 17, 2012, more than three years later. As such, the plaintiffs' tort claims, which are also based on the filing of the foreclosure action, are barred

16606193v1 0936857

under the two-year statute of limitation for intentional torts that was in effect in February 2009. *See* Wis. Stat. § 893.57 (2007-08).

## II. THE PLAINTIFFS' FDCPA CLAIM SHOULD BE DISMISSED BECAUSE NON-DEFICIENCY FORECLOSURE OF A SECURITY INTEREST IS NOT "DEBT COLLECTION" WITHIN THE MEANING OF THE STATUTE.

The Gray Defendants were not acting as "debt collectors" subject to the FDCPA in this case. Courts in the Seventh Circuit have consistently held that "[s]ecurity enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices." *See, e.g.,* ***Rosado***, 324 F. Supp.2d at 924; ***Overton***, 2007 WL 2413026 ** 3-6; ***Crawford***, 2011 WL 3875642 *8. Thus, an attorney or law firm that seeks only to foreclose a mortgage on behalf of a mortgagee is not a "debt collector" engaged in conduct covered by the statute. ***Rosado***, 324 F. Supp.2d at 925.

The ***Rosado*** plaintiff defaulted on her home mortgage, prompting the mortgage holder to hire the defendant attorney, Taylor, to start a foreclosure action. *Id.* at 921. Taylor then served the plaintiff with a summons and foreclosure complaint. *Id.* Although he later said that it was unnecessary to do so, Taylor also sent the plaintiff a document entitled "Notice Under the Fair Debt Collection Practices Act," which explained various procedural protections available to the plaintiff under the FDCPA. *See id.* at 921, 925. The plaintiff claimed that all three documents violated the FDCPA. *Id.* at 922.

The court disagreed, holding that "[w]ith regard to the summons and foreclosure complaint, Mr. Taylor wasn't acting as a debt collector." *Id.* at 924. The court cited several cases holding that "mortgage foreclosure is not a debt collection activity" and stated that "[t]hese decisions are eminently sensible, since a mortgage is used to grant a security interest in real property." *Id.* (internal quotations and citations omitted). The court then explained why security interests are treated differently than other debts:

8

The most frequently cited case attributes the different treatment of security interests and debts to the target's ability to comply with the request made of her. *Jordan v. Kent Recovery Serv., Inc.*, 731 F. Supp. 652, 656 (D. Del. 1990). One receiving debt collection letters may agonize that she cannot comply with them, hence she needs the [FDCPA's] protection. One asked to comply with a security interest enforcement request, on the other hand, has the security that she can return (unless she has been a malefactor). *Id.* This distinction may wane in the context of real property, since turning over one's house is unlikely to ever be easy. Regardless, the law is clear that enforcing a security interest is not debt collection.

*Id.* at 924-25. The court therefore held that the summons and foreclosure complaint were not controlled by the FDCPA and were not transformed into debt collection activity by Taylor's use of the FDCPA notice. *Id.* at 925. Although the notice was controlled by the statute, it was not part of the foreclosure action "which, as the enforcement of a security interest, [was], by itself, untouched by the FDCPA." *Id.*; *see also* **Overton**, 2007 WL 2413026 ** 3-6 (stating: "If a person invokes judicial remedies *only* to enforce the security interest in property, then the effort is not subject to the FDCPA . . . . But if the person is also seeking additional relief, such as a personal judgment against the borrower, then the FDCPA applies."); **Crawford**, 2011 WL 3875642 *8 (stating: "[A] foreclosure lawsuit undertaken only in an effort to enforce a security interest, and not to obtain a deficiency judgment against the borrowers, does not constitute debt collection within the meaning of the [FDCPA]"); **Warren**, 2009 WL 2477764 **460-61 (citing **Overton** and numerous other cases for proposition that enforcement of a security interest through the foreclosure process is not debt collection for purposes of the FDCPA).

In this case, the Gray Defendants have sought nothing more than the non-deficiency enforcement of the plaintiffs' mortgage on behalf of the mortgagee. The plaintiffs suggest that the Gray Defendants are "debt collectors" simply because they sought to foreclose a mortgage that they personally do not hold, (*see* Compl. ¶ 58), but the **Rosado** court did not make such a

distinction. As described above, the court clearly held that an attorney prosecuting a non-deficiency foreclosure action on behalf of mortgage holder is not engaged in debt collection activity subject to the FDCPA. The same should be true in this case. The Gray Defendants are not "debt collectors" within the meaning of the FDCPA, and their efforts to enforce the plaintiffs' mortgage therefore cannot be the basis for any claim under the statute. The FDCPA claim against each of the Gray Defendants should be dismissed.

### III. THE PLAINTIFFS' ABUSE OF PROCESS CLAIM FAILS BECAUSE THEY HAVE NOT PLEAD A "DEFINITE ACT OR THREAT" AND "IRREGULAR STEPS" TAKEN BY THE GRAY DEFENDANTS UNDER COVER OF PROCESS *AFTER* ITS ISSUANCE AS REQUIRED BY WISCONSIN LAW.

The plaintiffs have not stated a claim for abuse of process under Wisconsin law. The tort of abuse of process is a disfavored cause of action in Wisconsin and has been narrowly construed so as to place stringent burdens of pleading and proof on a party asserting such a claim. *See Schmit v. Klumpyan*, 2003 WI App. 107, ¶ 13, 264 Wis. 2d 414, 663 N.W.2d 331 (explaining that, "[b]ecause of its potential chilling effect on the right of access to the courts, the tort of abuse of process is disfavored and must be narrowly construed to insure the individual a fair opportunity to present his or her claim."). The onerous pleading and proof requirements imposed by the Supreme Court are clearly intended to dispense with claims for abuse of process except in extremely limited circumstances. It is against the disfavored status of such claims (and their judicially created exceptions to the general rule of notice pleading) that the court must consider whether the adversary complaint states a claim for relief.

The basic elements of an action for abuse of process are: (1) a purpose other than that which the process was designed to accomplish, and (2) a subsequent misuse of the process, even though the process was properly instituted. *Thompson*, 72 Wis. 2d at 362. Some "definite act or threat" not authorized by the process, or aimed at an objective not legitimate in the use of the

10

process, is required. *Id.* (quoting Prosser, *The Law of Torts* § 121, pp. 857-58 (4th ed. 1971)). There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. *Id.* While the ulterior motive or purpose may be inferred, the improper act may not. *Id.* at 362-63.

A complaint that fails to plead the "*definite act or threat*" element by asserting that the defendant has taken "*irregular steps*" under the cover of process, *after its issuance*, fails to state a claim for abuse of process. *Id.* at 363 (and further explaining that the plaintiff must allege and prove that something was done under process which was not warranted by its terms—the existence of an improper purpose alone is not enough because the improper purpose *must also culminate in an actual misuse of the process to obtain some ulterior advantage*); *Novick*, 4 Wis. 2d at 435-36 (sustaining a demurrer to a complaint for abuse of legal processes where the complaint failed to allege "irregular steps" taken under cover of process *after its issuance*); *Tower Special Facilities, Inc.*, 104 Wis. 2d at 229 (holding that a broker's complaint failed to state a claim for abuse of process absent an allegation that the defendants took any irregular steps under the cover of process after its issuance); *Pronger*, 127 Wis. 2d at 297 (the existence of an improper motive alone will not support a case of action for abuse of process – it must be alleged and proven that something was done under the process that was not warranted by its terms); *Whispering Springs Corp.*, 183 Wis. 2d at 407-08 (summary judgment was proper because the complaint failed to state a claim for abuse of process absent allegations of a subsequent misuse of process); *Kustelski*, 2003 WI App. 194 at ¶¶ 24-31 (affirming summary judgment dismissal of a claim for abuse of process where there was no evidence of a definite act or threat that was not proper to the regular conduct of the proceedings).

11

16606193v1 0936857

The inquiry is whether the process has in fact been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he would not legally be compelled to do. *Schmit*, at ¶ 9. The direct attempt to obtain a collateral advantage is crucial because the tort is characterized as an attempt to use process as a means of extortion. *Id.*

Normally the evidence of a definite act or threat takes the form of an ultimatum that unless the opposing party takes some action unrelated to the proper objectives of the lawsuit, the defendant will prosecute the suit to completion. *Thompson*, 72 Wis. 2d at 364. Examples include: (1) a minister instituting an action to enjoin church parishioners from interfering with church services and activities, followed by an overt threat to continue the suit unless the parishioners ceased their legitimate criticisms of his ministry, or (2) a statement by the minister that he was using the law suit to in order to embarrass or punish the parishioners. *Id.* at 364.

Here, however, the plaintiffs' adversary complaint is devoid of allegations concerning a definite act or threat amounting to "irregular steps" under the cover of process, after its issuance. The nearest the plaintiffs come to making such allegations is asserting that the "Defendants ultimately extorted" a loan modification agreement from them after the foreclosure judgment was entered. (*See* Compl. ¶ 79.) Even that allegation, however, lacks any suggestion of a definite act or threat by the Gray Defendants amount to "irregular steps" to accomplish such alleged extortion. The court cannot infer such steps simply because the plaintiffs claim the Gray Defendants had an ulterior purpose in filing the foreclosure action. The adversary complaint therefore fails to state a claim for abuse of process.

## IV. THE PLAINTIFFS FAIL TO PLEAD THEIR COMMON LAW FRAUD CLAIM WITH THE SPECIFICITY REQUIRED BY RULE 9 AND THE HEIGHTENED PLEADING STANDARDS ESTABLISHED BY THE U.S. SUPREME COURT.

The plaintiffs have also failed to state a claim for common law fraud. A plaintiff asserting such a cause of action must plead the claim with specificity. Fed. R. Civ. P. 9(b). To

16606193v1 0936857

state such a claim in Wisconsin, the plaintiff must allege: (1) that the defendant made a factual representation; (2) the representation was untrue; (3) the defendant either made the representation knowing that it was untrue or made it recklessly, without caring if it was true; (4) the defendant made the representation with the intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the representation to be true and relied on it to his or her detriment. *Kaloti Enterprises, Inc. v. Kellog Sales Co.*, 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205.

A plaintiff in a federal court action also must meet the heightened pleading standards set by the U.S. Supreme Court, which has explained that a plaintiff must plead more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to defeat a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555; *see also Ashcroft*, 556 U.S. at 678 (stating that a pleading also fails if it tenders only "'naked assertions'" devoid of "'further factual enhancement'"). To survive a motion to dismiss in federal court, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). A claim is facially plausible when the plaintiff pleads facts that allow a court to draw a reasonable inference that the defendant is liable as alleged. *Id.* Moreover:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . . [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief.

16606193v1 0936857

*Id.* at 678-79 (internal quotations omitted).

The allegations of common law fraud in the adversary complaint fall well short of these standards. The plaintiffs' allegations are mostly bald assertions that documents filed by the Gray Defendants in the foreclosure and bankruptcy proceedings were "forged" for the purpose of defrauding unnamed "homeowners, subordinate lienholders, [and] courts." (*See, e.g.,* Compl. ¶¶ 52, 55, 94.) Such allegations are hardly "specific" within the meaning of Rule 9.

With respect to the individual Gray attorneys,, the only specific allegations are that: (1) Mr. Foshag signed a foreclosure complaint that contained allegedly incorrect statements as to HSBC Bank's standing to foreclose the mortgage, (*id.* ¶¶ 91b.(1), (2)); (2) Mr. Delhey created an allegedly forged mortgage assignment 13 months after the commencement of the foreclosure action (*id.* ¶¶ 50, 52); (3) Mr. Pitner made allegedly incorrect statements about the nature of the of the dismissal of the foreclosure action and the subject loan's status as collateral in the Maiden Lane TARP during a hearing on June 15, 2012, (*id.* ¶¶ 91b.(5), 92); and (4) Mr. Perhach caused various "forged documents" to be attached to Proof of Claim #6 in the bankruptcy proceedings. (*Id.* ¶ 55.) Nowhere do the plaintiffs allege that they relied on these alleged false statements or forgeries to their detriment. This not a case where the Gray Defendants are alleged to have made false representations to the plaintiffs *before* they signed their mortgage in an effort to induce the plaintiffs to enter into the loan agreement in the first place. Because the plaintiffs have therefore failed to alleged facts sufficient to state a claim for common law fraud, that claim should be dismissed.

## V. ANY STATEMENTS MADE BY THE GRAY DEFENDANTS IN THE CONTEXT OF LITIGATION ARE COVERED BY ABSOLUTE PRIVILEGE/IMMUNITY AND CANNOT BE A BASIS FOR THE PLAINTIFFS' TORT CLAIMS.

Wisconsin courts have long recognized that "[s]tatements made during judicial proceedings and quasi-judicial proceedings are absolutely privileged when the statements bear a

14

16606193v1 0936857

proper relationship to the issue, i.e., are relevant to the proceeding." ***Bergman v. Hupy***, 64 Wis. 2d 747, 749-51, 221 N.W.2d 898 (1974); *see also* ***Niedert v. Rieger***, 200 F.3d 522, 525 (7th Cir. 1999) (stating that under Wisconsin law, "witnesses are immune from civil liability for damages caused by false and malicious testimony . . . [including] statements made in pleadings, in affidavits or in open court . . . so long as the statements are relevant to the litigation."). Judge Griesbach recently cited the privilege/immunity when he dismissed another debtor plaintiff's common law tort claims arising out of alleged misrepresentations during litigation by Gray and Mr. Pitner. *See* ***Bernegger. v. Wash. Mut., F.A.***, 2008 WL 4722392 \*\* 5-6 (E.D. Wis.).

In that case, defendant Washington Mutual hired Gray to bring an action in Wisconsin state court to foreclose upon a mortgage on plaintiff Bernegger's property. *Id.* at \* 1. Bernegger did not answer the complaint, and the state court entered a default judgment of foreclosure. *Id.* Washington Mutual then purchased the property at a sheriff's sale. Before the sale could be confirmed by the state court, however, Bernegger filed for bankruptcy, and the confirmation proceedings were automatically stayed pursuant to 11 U.S.C. § 362. *Id.*

Two months later, Mr. Pitner filed a motion in the bankruptcy proceedings on Washington Mutual's behalf, requesting that the court lift the stay and order the trustee to abandon the property. *Id.* at \* 2. The motion stated that the amount due to Washington Mutual substantially exceeded the property's value and that the property was therefore "burdensome or of inconsequential value and benefit to the estate." *Id.* As further cause to lift the stay, the motion stated that Bernegger's failure to make monthly mortgage payments under his proposed Chapter 13 plan resulted in a post-petition arrearage, including attorney's fees and costs. *Id.*

The stay was eventually lifted, allowing the state court to hear Washington Mutual's pending motion to confirm the sheriff's sale. *Id.* Unsure as to whether fair value had been given

15

for the property, the state court ordered that a new sheriff's sale be held. *Id.* The second sale was held and confirmed a few months later. *Id.*

Meanwhile, Bernegger commenced two federal court actions, claiming that the motions filed by Gray and Mr. Pitner on behalf of Washington Mutual in the state and bankruptcy courts were fraudulent, or at least negligent, misrepresentations as to the value of his property and violations of the U.S. Constitution, the FDCPA, and the Consumer Credit Protection Act. *Id.* The cases were consolidated before Judge Griesbach.

The court then granted a defense motion to dismiss the misrepresentation claim under Rule 12(b)(6), holding that the defendants were immune to civil liability arising from statements relevant to the foreclosure and bankruptcy proceedings. Bernegger filed a motion for reconsideration, arguing that such immunity is not available to attorneys, but the court held that his argument was "directly contradicted by Wisconsin caselaw." *Id.* at *6 (citing ***Bromund v. Holt***, 24 Wis. 2d 336, 342, 129 N.W.2d 149 (1964) (stating: "Parties *and counsel* are immune from liability for relevant statements in pleadings and otherwise in the course of judicial proceedings.") (emphasis added); ***Snow v. Koeppl***, 159 Wis. 2d 77, 80-81, 464 N.W.2d 215, 216 (Wis. App. 1990) (stating: "The rule extends to attorneys, witnesses and physicians appointed to examine a person in connection with judicial proceedings.")). Judge Griesbach explained:

> Bernegger further contends that no immunity is available to the Defendants for their misrepresentations to the state court as to the value of his property, when the Defendants' valuation was actually based on evidence concerning Bernegger's neighbor's property. He claims that evidence regarding his neighbor's property was not relevant to the proceeding, and the Defendants are therefore not entitled to immunity. **But the relevant inquiry is not whether the evidence upon which the Defendants relied in making their statements turned out to be accurate, but whether their statements themselves were relevant to the proceeding. Statements as to the value of Bernegger's property, however erroneous, were relevant to the state court foreclosure action**.

16606193v1 0936857

> Therefore, Bernegger's motion for reconsideration will be denied as to his misrepresentation claims as well.

*Id.* (emphasis added).

Like Bernegger, the plaintiffs assert common law tort claims related to allegedly fraudulent statements by counsel in the context of the foreclosure and bankruptcy proceedings. As Judge Griesbach indicated, however, such statements cannot be the basis for civil liability if they are relevant to the proceedings. Any of the Gray Defendants' statements—oral or written— as to the identity of the plaintiffs' mortgage holder were certainly relevant in either the foreclosure or bankruptcy actions, even if those statements were inaccurate (which the Gray Defendants deny). Few questions in either context could have been more relevant than the standing of the Gray Defendants' client to make claims based on the mortgage. Mr. Pitner's alleged statements regarding the judgment in the foreclosure action and the status of the plaintiffs' loan as collateral in the Maiden Lane TARP were similarly relevant as issues considered by the court in deciding whether to grant the plaintiffs' Motion to Extend the deadline for filing their adversary complaint. Following ***Bernegger***, the plaintiffs' common law tort claims must be dismissed.

## VI. THE PLAINTIFFS' FDCPA AND COMMON LAW CLAIMS ARE NON-CORE PROCEEDINGS THAT THIS COURT SHOULD ABSTAIN FROM HEARING.

District courts have original and exclusive jurisdiction of all cases under Title 11 and original jurisdiction over proceedings "arising under" a bankruptcy case, "arising in" a bankruptcy case, or "related to" a bankruptcy case. *See* 28 U.S.C. § 1334(a), (b). These cases are referred to the bankruptcy court in each district. *Id.* The congressional grant of jurisdiction to the bankruptcy courts is limited. *See **Gardner v. United States***, 913 F.2d 1515, 1517 (10 Cir. 1990) (stating that "[b]ankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress."). Thus, bankruptcy judges may hear all "core"

16606193v1 0936857

proceedings arising under Title 11, or arising in a case under Title 11, as well as "non-core" proceedings that are otherwise "related to" a case under Title 11. *See* 28 U.S.C. § 157(b), (c).

"Core" proceedings involve rights created by bankruptcy law or matters that arise in a bankruptcy case. *See Ortiz v. Aurora Health Care*, 665 F.3d 906, 911 (7th Cir. 2011) (citing *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011)); *see also In re Repository Tech., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010) (explaining that proceedings "arising under" bankruptcy "depend on a right created or determined by a statutory provision" of Title 11, while claims "arising in" bankruptcy cannot exist outside of bankruptcy). "Non-core" proceedings can exist independently from the bankruptcy case and do not invoke substantive rights created under applicable bankruptcy law. A non-core proceeding is "related to" a bankruptcy only if "the dispute affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *In re Federalpha Steel, LLC*, 341 B.R. 872, 880 (Bankr. N.D. Ill. 2006) (quoting *In re FedPak Sys., Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996)).

Applying these definitions, the plaintiffs' FDCPA and state law claims against the Gray Defendants are not core proceedings. *See Smith v. Everbank*, 2012 WL 1565454 * 3 (Bankr. S.D. Ind.) (stating: "The FDCPA claim alleged . . . is not a 'core proceeding' because it does not fit into any of the categories of enumerated 'core proceedings' set forth in 28 U.S.C. § 157(b)(2), . . . . It is not a claim that 'arises in' a bankruptcy case or 'arises under' a bankruptcy case as it is a cause of action under a federal statute that exists independently outside of the bankruptcy."); *In re Csondor*, 309 B.R. 124, 129 (Bankr. E.D. Pa. 2004) (stating: "[I]t is clear that neither the FDCPA nor the state law claims 'arise in' or 'arise under' a particular bankruptcy case. Neither cause of action represents a claim created by the Bankruptcy Code; neither type of claim arises from the administration of the bankruptcy case; and both claims exist independently of

18

16606193v1 0936857

bankruptcy cases and are frequently raised in non-bankruptcy fora. Accordingly, these claims do not give rise to core proceedings. . . ."). At most, the plaintiffs' claims in this case could be "related to" the bankruptcy proceedings, as any recovery on the claims could arguably affect the amount of property available for distribution in those proceedings.

Nevertheless, even if the claims against the Gray Defendants are "related to" the bankruptcy proceedings, this court has and should exercise its discretion not to hear them. *See* 28 U.S.C. § 1334(c)(1) (stating that a federal court can abstain from hearing a proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law.").

The Seventh Circuit has identified numerous factors to guide a bankruptcy court's decision to abstain: (1) the effect or lack thereof on the efficient administration of the estate if the court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree to which the non-core proceedings are related to or remote from the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceedings of non-debtor parties. *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d at 1189.

Courts apply these factors "flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Id.* At the

19

16606193v1 0936857

same time, however, "because section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." *Id.*; *see also **In re L&S Indus., Inc.***, 989 F.2d 929, 935 (7th Cir. 1993) (stating: "Under bankruptcy law the presence of a state law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration.").

Abstention is appropriate in this case. All of the plaintiffs' claims except the FDCPA claim are based on Wisconsin law and have little to do with any bankruptcy issues. As noted above, the plaintiffs have already asserted claims arising from the alleged "securitization/guarantee fraud" in Kenosha County Circuit Court, and that state court action remains open. Allowing these claims to be decided in state court, by a jury, is therefore entirely feasible and would not delay or otherwise disrupt the administration of the bankruptcy proceedings in any way. Moreover, the plaintiffs do not assert any jurisdictional basis for this claim other than 28 U.S.C. § 1334. In light of these factors, the court should exercise its discretion to abstain from hearing the plaintiffs' claims in the adversary complaint and allow them to be decided in the pending state court action.

## CONCLUSION

For the foregoing reasons, the Gray Defendants respectfully requests that their motion be granted and that the plaintiffs' adversary complaint against them be dismissed.

Dated this 1st day of August, 2012.

16606193v1  0936857

/s/ David J. Hanus

David J. Hanus
State Bar No. 1027901
Brett B. Larsen
State Bar No. 1064355
Attorneys for Defendants Gray & Associates, LLP,
William N. Foshag, Duncan C. Delhey, Jay J. Pitner,
and Brian P. Perhach
HINSHAW & CULBERTSON LLP
100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202
Phone No.: 414-276-6464
Fax No.: 414-276-9220
E-mail Address(es):
dhanus@hinshawlaw.com
blarsen@hinshawlaw.com

16606193v1 0936857