342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**



NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "United States Bankruptcy Appellate Panel for the Tenth Circuit Decisions Without Reported Opinions" table appearing in the Bankruptcy Reporter. Use FI CTA10 BAP Rule 8018-6 for rules regarding the citation of unpublished opinions.)

United States Bankruptcy Appellate Panel for the Tenth Circuit.
In re Redie Bell LEWIS, Debtor.
Redie Bell LEWIS, Plaintiff—Appellant,
v.
BNC MORTGAGE, INC., v. Option One Mortgage, Corp., First Union National Bank, Kozeny and Mc-Cubbin LC., Miller Enterprises, Inc., Jeffrey Miller, Adamson and Associates Inc., and Maplewood Mortgage Inc, Defendants—Appellees.

No. KS–05–022, 03–41515–13, 03–7068.
May 4, 2006.

Appeal from the United States Bankruptcy Court for the District of Kansas.

Before BOHANON, MICHAEL, and MCNIFF, Bankruptcy Judges.

ORDER AND JUDGMENT FN*

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018–6(a).

MCNIFF, Bankruptcy Judge.
**\*1** The Debtor, Redie Lewis, timely appeals the bankruptcy court's July 8, 2004 Memorandum and Order, March 11, 2005 Memorandum and Order,

and March 11, 2005 Judgment (collectively, Judgment) dismissing the Debtor's adversary proceeding with prejudice. The Debtor also timely appeals the bankruptcy court's March 11, 2005 Order Granting Motion to Withdraw by Plaintiff's Counsel (Withdrawal Order). The Debtor also contends that several other bankruptcy court's orders (entered in the adversary proceeding and the underlying bankruptcy case) should be reversed: a November 10, 2004 Stipulated Protective Order to Clerk; an October 29, 2003 minute order requiring the Debtor to make adequate protection payments to First Union National Bank in lieu of stay relief; a July 13, 2004 Order to Debtor to Pay Trustee; a December 31, 2003 Order Authorizing Disbursement to Option One Mortgage Corp.; and a February 12, 2004 Order Staying Discovery Pending Resolution of Motion to Abstain (collectively, Miscellaneous Orders).FN1

FN1. By Order dated September 30, 2005, a Motions Panel of this Court referred to this Court the issue of the unauthorized Response to Appellant's Reply Brief filed by First Union National Bank and the Reply to Response Brief and Request for Permission to Respond to the Sur–Reply Brief both filed by Appellant Redie Lewis. The pleadings are hereby stricken and the Request is denied.

I. Jurisdiction and Standard of Review
The Debtor filed a timely Notice of Appeal of the Judgment and Withdrawal Order, and no party elected to have the appeal heard by the United States District Court for the District of Kansas. Therefore, this Court has jurisdiction over the appeals of the Judgment and the Withdrawal Order. 28 U.S.C. § 158(a)(1), (b)-(c); Fed. R. Bankr.P. Rule [Interim] 8001(a) & (e); Fed. R. Bankr.P. 8002(a); 10th Cir. BAP L.R. 8001–1.

The failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Aspect*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

*Tech. v. Simpson ( In re Simpson),* 215 B.R. 885, 886 (10th Cir. BAP1998) (per curiam). Because the Debtor did not file a notice of appeal of the Miscellaneous Orders, all such appeals are dismissed.

The Court reviews *de novo* the bankruptcy court's dismissal of the Debtor's adversary proceeding for failure to state a claim and the entry of summary judgment on res judicata and statute of limitations grounds. *Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545, 1550 (10th Cir.1992). The Withdrawal Order is reviewed for abuse of discretion. *U.S. v. Johnson,* 961 F.2d 1488, 1490 (10th Cir.1992). Under the abuse of discretion standard of review:

> [A] trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

*Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (citation and quotation omitted).

## II. Background

The Debtor purchased a home constructed by Appellees Miller Enterprises, Inc. and Jeffrey Miller (collectively, Miller) at a closing held on February 18, 2000. Appellee Adamson & Associates (Adamson) appraised the home prior to the closing. Appellee BNC Mortgage, Inc. (BNC) was the original lender, assigning its mortgage rights to Appellee First Union National Bank (First Union). Appellee Option One Mortgage Corp. (Option One) was BNC's servicing agent. Appellee Maplewood Mortgage Inc. (Maplewood) was not served in the adversary proceeding and was subsequently dismissed on that basis. Appellee Kozeny and McCubbin LC (Kozeny) is the law firm that represented First Union in a foreclosure action (Foreclosure Action) filed against the Debtor based on a default in

payments. Neither Option One, Maplewood, or Kozeny responded to this appeal.

**\*2** On July 19, 2000 the Debtor filed a complaint against BNC with the United States Department of Housing and Urban Development (HUD) alleging discriminatory lending practices. HUD issued a Determination of No Reasonable Cause on February 7, 2001 from which the Debtor took no further action.

First Union commenced the Foreclosure Action against the Debtor on September 22, 2000. The District Court of Johnson County, Kansas granted First Union summary judgment and entered a judgment of foreclosure (Foreclosure Judgment) against the Debtor on November 20, 2002. The Debtor did not appeal the Foreclosure Judgment.

The Debtor filed a voluntary chapter 13 case in the United States Bankruptcy Court for the District of Kansas—Topeka Division on November 27, 2002, case no. 02–24485. The case was dismissed on May 12, 2003.

On May 30, 2003, through counsel, the Debtor filed a second chapter 13 petition for relief. The Debtor filed her *pro se* adversary proceeding (Complaint) on August 4, 2003. On September 26, 2003, Timothy A. Toth entered his appearance in the adversary proceeding on behalf of the Debtor/ Plaintiff. On November 24, 2003, Mr. Toth filed an Amended Complaint.

Count I of the Amended Complaint alleged negligence by Kozeny and First Union on the grounds that BNC had not assigned the mortgage to First Union at the time the Foreclosure Action was commenced. Count II alleged Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.,* violations stemming from the construction, marketing, financing, sale and foreclosure of real properties, including the Debtor's home. Count III alleged fraud and misrepresentations by Miller, Adamson, and Maplewood pertaining to the construction, quality and financing of her home.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Count IV alleged violations by BNC and First Union of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.,* that occurred before the closing took place. Count V alleged that BNC, First Union, Miller, and Option One discriminated against the Debtor in violation of TILA.

Each Appellee moved to dismiss the Amended Complaint under Fed. R. Bankr.P. 7012, incorporating Fed.R.Civ.P. 12(b)(6), on statute of limitations grounds and because the RICO claim failed to state a claim under Fed. R. Bankr.P. 7009, incorporating Fed.R.Civ.P. 9(b). First Union also moved for summary judgment alleging that the Foreclosure Judgment precluded the Debtor's claims on the ground of res judicata.

On July 8, 2004 the bankruptcy court entered the Memorandum and Order. The bankruptcy court dismissed with prejudice the claims for negligence (Count I), fraud (Count III), TILA violations (Count IV) and discrimination (Count V), concluding all of those claims for relief were time-barred. The bankruptcy court gave the Debtor until September 8, 2004 to file a second Amended Complaint on the remaining RICO claim (Count II) to meet the pleading requirements of RICO with particularity. The bankruptcy court also lifted its previous order staying discovery and set a 60–day discovery deadline on the RICO claim.

**\*3** On October 18, 2004 Mr. Toth filed the Debtor's Second Amended Complaint. Each remaining defendant (Miller, First Union, Kozeny, Option One, BNC and Adamson) filed a motion to dismiss the Second Amended Complaint based on a failure to plead the RICO claim with the requisite particularity. Mr. Toth filed the Debtor's Response to the motions to dismiss on November 23, 2004. At that time, the motions were fully briefed and before the bankruptcy court for a decision.

On December 17, 2004 Mr. Toth, a solo practitioner, filed an Emergency Motion to Withdraw as the Debtor's counsel due to health reasons. The motion set forth Mr. Toth's health problems in detail.

Mr. Toth alleged that the Debtor needed additional time to secure counsel prior to the pretrial conference. The Debtor did not oppose the Motion to Withdraw.

The bankruptcy court held a hearing on the Motion to Withdraw, at which the Debtor was present with Mr. Toth. The bankruptcy court took the motion under advisement with the motions to dismiss and pending the submission of the final pretrial order by Mr. Toth.

On March 11, 2005 the bankruptcy court entered its Withdrawal Order, noting that the motion was unopposed by the Debtor. The bankruptcy court found that although Mr. Toth had not submitted a proper pretrial order, the Debtor had sufficient time to have retained substitute counsel. Because the bankruptcy court simultaneously dismissed the Second Amended Complaint, no further proceedings necessitating a pretrial order were contemplated. Mr. Toth is not a named party to this appeal and did not appear.

Also on March 11, 2005 the bankruptcy court entered the Memorandum and Order, dismissing the Second Amended Complaint and the adversary proceeding under Rule 12(b)(6) on the grounds that the RICO claim did not allege facts sufficient to state a claim with the particularity required by RICO under Rule 9(b). The Memorandum and Order granted First Union's motion for summary judgment, holding that the claims were barred by the issue and claim preclusive effect of the final Foreclosure Judgment. The Debtor, acting *pro se,* filed a Notice of Appeal from the Judgment and the Withdrawal Order.

III. Discussion

The Debtor seeks a remand to the bankruptcy court to obtain counsel, conduct discovery, and prosecute the RICO claim. The Debtor did not address in her pleadings or at oral argument the legal issues or alleged errors upon which this sought remand should be predicated and failed to address the legal standards upon which the bankruptcy court's orders

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

were based.

*1. The Withdrawal Order*

An order permitting the withdrawal of counsel is reviewed for an abuse of discretion. We conclude the bankruptcy court did not abuse its discretion when it entered the Withdrawal Order.

The Debtor did not oppose the Motion to Withdraw. By the time the Motion to Withdraw was filed, the motions to dismiss were fully briefed and the Debtor had been granted 60 days to conduct discovery. Further, between the time the Motion to Withdraw was filed and the Withdrawal Order was entered, the Debtor had a three-month period to obtain substitute counsel. The only matter remaining when the Withdrawal Order was entered was for the Debtor to file a timely notice of appeal, which she did *pro se.* The record shows no prejudice to the Debtor, but rather considerable deference from the bankruptcy judge. The Withdrawal Order is affirmed.

*2. The Judgment*

**\*4** This Court concurs with the bankruptcy court's legal analysis contained in the two Memorandum and Orders. For the reasons stated in the bankruptcy court's well reasoned orders attached as Appendix A & B hereto, we AFFIRM.

APPENDIX A

MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT, IN PART, AND DENYING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT, IN PART

KARLIN, Bankruptcy Judge.

This matter is before the Court on Motion of BNC Mortgage to Dismiss Amended Complaint (Doc. 55), Motion of Option One Mortgage to Dismiss Counts I, II, III, IV and V of the Amended Complaint (Doc. 56), Motion of First Union National Bank for Summary Judgment and Motion to Dismiss (Doc. 60),FN2 Motion of Miller Enterprises and Jeffrey Miller to Dismiss Amended

Complaint (Doc. 71), and Motion of Adamson and Associates to Dismiss Counts II and III of the Amended Complaint (Doc. 72).

> FN2. Defendant First Union National Bank filed a motion that sought both an entry of summary judgment and dismissal of the Amended Complaint. The Motion for Summary Judgment is based upon res judicata and collateral estoppel, and the Motion to Dismiss is based upon plaintiff's failure to state a claim upon which relief can be granted and the applicable statute of limitations. Because the Motion for Summary Judgment involves completely different legal issues than the Motion to Dismiss, it will be dealt with separately by the Court in this Memorandum and Order.

The Court has jurisdiction to hear this case as it is related to the bankruptcy case that arises under Title 11 of the United States Code, and the parties have all consented to the Court hearing and determining the issues involved in this case and entering all appropriate orders and judgments.FN3

> FN3. 28 U.S.C. § 1334 and 28 U.S.C. § 157(c)(2).

**I. FINDINGS OF FACT**

The Court makes the following findings of fact based upon the allegations made in the Amended Complaint (Doc. 44), or upon the additional facts provided in the parties' briefs, resolving all factual disputes in favor of Plaintiff.FN4

> FN4. *See Lafay v. HMO Colo.,* 988 F.2d 97, 98 (10th Cir.1993) (holding that the Court "must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to plaintiff").

**A. Facts Concerning the Involvement of the Parties**

All of Plaintiff's claims in this case involve the construction, purchase, financing, and subsequent

Page 5

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

foreclosure of her home. Plaintiff purchased a home that was constructed by Defendant Miller Enterprises, Inc. ("Miller Enterprises"), whose president is Defendant Jeffrey Miller ("Miller"). Miller Enterprises also carried a second mortgage on the property. Defendant Adamson & Associates ("Adamson") provided an appraisal of the property. Defendant Maplewood Mortgage, Inc. ("Maplewood") apparently served as the closing agent on the property.[FN5] Defendant BNC Mortgage, Inc. ("BNC") was the underwriter for the first mortgage on the house, with Defendant Option One Mortgage Corp. ("Option One") acting as a servicing agent for BNC. The mortgage and deed rights were eventually assigned to Defendant First Union National Bank ("First Union"), who was represented by Defendant Kozeny & McCubbin, L.C. ("McCubbin"), a law firm, in a foreclosure action in state court against Plaintiff's house.

> FN5. Plaintiff has not obtained service of process on Defendant Maplewood in this proceeding, and Maplewood's exact involvement in the events surrounding the purchase of the home are not clear. The 120 day period to serve Maplewood, as well as the "John Doe" Defendants, required by Fed.R.Civ.P. 4(m), incorporated into this proceeding by Rule 7004(a), has long expired, as Plaintiff's Amended Complaint was filed November 25, 2003. In addition, Plaintiff had over 120 days to determine the identities of, and obtain service upon, the John Doe Defendants before the Court stayed discovery on February 12, 2004 (Doc. No. 86).

B. Relevant Dates

As discussed in more detail below, Defendants have moved to dismiss several of the counts in the Amended Complaint on the basis that the statute of limitations has expired. Therefore, certain dates are critical to the resolution of the motions to dismiss.

As noted above, Plaintiff purchased her home in 2000. Although the parties do not provide the exact date Plaintiff entered into the contract to purchase the home, the parties do agree that the closing date on the purchase of the home was February 18, 2000. On July 19, 2000, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that Miller Enterprises had engaged in discriminatory lending practices and failed to properly correct construction defects in the house. Although Miller Enterprises disagreed with the allegations, it nonetheless agreed to release its second mortgage on the property, and made certain repairs to the property on April 4, 2001.

**\*5** In September 2000, McCubbin filed a petition for foreclosure on behalf of First Union. In her answer to that petition, filed April 27, 2001, Plaintiff notified McCubbin and First Union that there had not been an assignment of the mortgage and deed to First Union. According to Plaintiff, BNC did not assign the mortgage and deed to First Union until July 2001.

Plaintiff filed her Chapter 13 bankruptcy proceeding on May 20, 2003. She filed this adversary proceeding on August 4, 2003, and her Amended Complaint on November 25, 2003. For purposes of this motion, the Court will use the August 4, 2003 filing date as the date all the claims were initiated against all Defendants in this case.

C. Claims Brought by Plaintiff

Plaintiff sets out five causes of action in her Amended Complaint. In Count I, Plaintiff claims that McCubbin and First Union were negligent in filing the foreclosure proceeding against Plaintiff's property because BNC had not assigned the mortgage to First Union before the foreclosure was filed. In Count II, Plaintiff claims that all Defendants have engaged in an illegal enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In Count III, Plaintiff contends that (1) Miller, and his company Miller Enterprises, committed fraud and misrepresentation concerning the quality and construction of the house; (2) Adamson and Maplewood furthered the

Case 12-02412-svk    Doc 60-2    Filed 10/01/12    Page 5 of 28

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

false representations concerning the quality and construction of the house; and (3) Miller made mis-representations concerning the financing of the purchase, and failed to disclose certain facts about the financing to Plaintiff. In Count IV, Plaintiff claims that BNC and First Union violated the Truth in Lending Act by failing to make certain disclosures prior to the closing on the property. Finally, in Count V, Plaintiff claims that BNC, First Union, Miller, Miller Enterprises and Option One discriminated against her in connection with the purchase of the house in violation of the Truth in Lending Act.

Additional facts will be discussed below, when necessary.

II. CONCLUSIONS OF LAW

A. Counts I, III, IV and V are all dismissed based upon the motions to dismiss filed by the various defendants.

1. Standards for a Motion to Dismiss

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the movant must demonstrate beyond a doubt that there is no set of facts in support of plaintiff's theory of recovery that would entitle plaintiff to relief.FN6 All well-pleaded allegations will be accepted as true and will be construed in the light most favorable to Plaintiff.FN7

> FN6. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas,* 927 F.2d 1111, 1115 (10th Cir.1991).

> FN7. *In re American Freight System, Inc.,* 179 B.R. 952, 956 (Bankr.D.Kan.1995).

2. Counts I, III, IV and V are all barred by the applicable statute of limitations.

Various defendants have moved to dismiss the claims for negligence (Count I), fraud (Count III),

TILA violations (Count IV) and discrimination (Count V) on the basis that the claims were brought outside the applicable statute of limitations. For the reasons set forth below, the Court finds that each of these claims is time-barred and must be dismissed.

a. The negligence claim contained in Count I is barred by the two-year statute of limitations.

**\*6** In Count I of her Amended Complaint, Plaintiff contends that Defendants McCubbin and First Union were negligent in filing a foreclosure proceeding against her property at a time when First Union had not yet received an assignment of the mortgage and deed rights from BNC. Plaintiff also contends that Option One was negligent because it claimed to be the servicer of the mortgage, but had failed to notify Plaintiff that there was an assignment of rights.

Defendants contend that the negligence claim is barred by the applicable statute of limitations. Because Plaintiff is a Kansas resident and thus her claim for negligence arises under Kansas law, it is governed by the Kansas statute of limitations.FN8 Pursuant to K.S.A. 60–513(a)(4), a claim based upon negligence must be commenced within two years from the date the cause of action accrues . FN9 A negligence cause of action is not deemed to have accrued "until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party...."FN10

> FN8. *See Blackwell v. Harris Chemical North America, Inc.,* 11 F.Supp.2d 1302, 1306–07 (D.Kan.1998) (applying state statute of limitations statute to state law causes of action) and *Cowdrey v. City of Eastborough, Kan.,* 730 F.2d 1376, 1379 (10th Cir.1984) (applying Kansas statute of limitations to state law claims brought in federal court).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

FN9. *Biritz v. Williams,* 262 Kan. 769, 770 (1997).

FN10. K.S.A. 60–513(b) (1994).

McCubbin filed the foreclosure petition on behalf of First Union with Johnson County District Court on September 22, 2000. According to the Amended Complaint in this proceeding, Plaintiff notified McCubbin and First Union with her answer filed April 27, 2001 that there had not been an assignment of the mortgage and deed.[FN11] Therefore, the act giving rise to the negligence cause of action took place on September 22, 2000, and Plaintiff clearly knew of the alleged wrongful act no later than April 27, 2001, when she notified Defendants of their alleged misdeed in her state court answer. Pursuant to K.S.A. 60–513, the negligence cause of action thus arose no later than April 27, 2001, and must have been filed no later than April 27, 2003, to be timely. Because this action was not brought until August 4, 2003, over three months later, it clearly falls outside the two-year statute of limitations.

> FN11. Although the Amended Complaint does not indicate the date the state court answer was filed, Plaintiff included a file stamped copy of that answer as an attachment to the Amended Complaint in this case and specifically incorporated it into her Amended Complaint. Therefore, the Court can consider this additional information without treating this Motion to Dismiss as a motion for summary judgment. *See Hill v. Bellman,* 935 F.2d 1106, 1112 (10th Cir.1991) (holding that "[a] written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal").

Plaintiff's response to Defendant's statute of limitations defense is set forth, in full, as follows:

Finally, as to the issue of the statute of limita-

tions, the continuing actions of Defendant First Union National Bank tolls the statute of limitations as indicated previously in this response.

At no point does Plaintiff provide any legal support for her contention that "the continuing actions" of this, or any other defendant, tolls the applicable statute of limitations on this negligence claim. Similarly, Plaintiff completely fails to provide any factual analysis of what acts continue, or how these alleged continuing actions would justify the tolling of the statute of limitations, even if there was some legal basis to support the tolling of the negligence claim. The Court has the authority to disregard this claim on this basis alone.[FN12] However, in an effort to protect Plaintiff from any potential harm caused by her failure to properly address this issue, the Court has reviewed applicable Kansas law to determine if there is any basis, based upon the facts contained in the pleadings, to toll the statute of limitations on the negligence claim in this case based upon any alleged continuing actions of Defendants.

> FN12. *See Smith v. Barber,* 195 F.Supp.2d 1264, 1280 n. 9 (D.Kan.2002) (declining to even address claims raised by defendants because they provided no support for their assertions).

**\*7** Kansas does recognize the theory of a continuing tort in negligence cases, which appears to be the only possible legal theory that Plaintiff is attempting to employ to survive the statute of limitations defense. "Under Kansas law, where a cause of action is predicated on numerous acts occurring over an extended period, the cause of action accrues anew with each act, at least until the injury becomes permanent."[FN13] The Court finds, however, that this theory provides no relief to Plaintiff in this case.

> FN13. *Cordon v. Trans World Airlines, Inc.,* 442 F.Supp. 1064, 1066 (D.Kan.1977) (citing *Henderson v. Talbott,* 175 Kan. 615 (1954) and *Simon v. Neises,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

193 Kan. 343 (1964)).

First, Count I of the Amended Complaint is based upon very specifically alleged actions—the filing of the foreclosure petition before the assignment of the mortgage and the deed—not upon numerous acts occurring over an extended period of time. Second, even if Count I were based upon continuing actions, Kansas law dictates that the cause of action accrues at the time of each act causing damage. In other words, the cause of action relating to the filing of the petition before the assignment accrued, at the latest, at the time Plaintiff learned of the allegedly improper actions, and any claim based upon the filing of the petition must have been brought within two years of that date. If Defendants have engaged in further acts of negligence that harmed Plaintiff, those additional acts may have created new causes of action which could have been filed at a later date, but they do not extend the time for bringing a claim based upon the filing of the foreclosure petition.

The Court finds that Count I of the Amended Complaint is barred by Kansas' two-year statute of limitations relating to negligence claims. The claim clearly arose, at the latest, on April 27, 2001, when Plaintiff demonstrated her awareness of the alleged wrongdoing. Any action on those facts had to be filed within two years from that date. Because the Complaint in this case was not filed until August 4, 2003, and there is no apparent legal basis to toll the applicable statute of limitations, the claim is untimely and will be dismissed.

b. The fraud claim contained in Count III of the Amended Complaint is barred by the two-year statute of limitations.

Count III of the Amended Complaint alleges that Defendants Miller, Miller Enterprises, Maplewood Mortgage and Adamson committed fraud against Plaintiff. Liberally construing the allegations contained in the Amended Complaint, Plaintiff appears to allege that the following fraudulent statements were made to her detriment: FN14

FN14. The Amended Complaint does not set out the alleged fraudulent statements in any sort of clear manner, and includes allegations against parties against whom no relief is sought in the prayer for relief for Count III. The Court has attempted, out of an abundance of caution, to filter out every possible allegedly fraudulent statement contained in the Amended Complaint. In doing so, the Court is in no way making a finding that any of these alleged fraudulent statements have been pled with the specificity required for a fraud claim.

1. Defendants Jeffrey Miller and Miller Enterprises represented to Plaintiff that when the house was finished, it would be built up to building code standards and would have certain qualities;

2. Defendants Adamson and Maplewood made representations about the house's quality and falsely indicated that the work was completed in a professional, workmanlike manner;

3. Jeffrey Miller instructed Plaintiff that he would tell the lender that he was going to carry a $29,000 note, but drafted and recorded a note for $59,900;

**\*8** 4. Jeffrey Miller did not disclose to Plaintiff the identity of the underwriters;

5. Plaintiff did not receive notice from Defendant BNC that it would be the primary lender on the property until the first day of closing;

6. At the time of closing, on or about February 18, 2000, Jeffrey Miller and Miller Enterprises reassured Plaintiff that the construction would be completed and up to specification and code, and promised to provide her with a fully functional and aesthetically pleasing home.

Under Kansas law, the statute of limitations for a fraud claim is two-years. FN15 "The statute of limitations for fraud begins to run when the injured party has actual knowledge of the fraud or when the

Page 9

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

fraud could have been discovered with reasonable diligence."[FN16]

> FN15. *Paulsen v. Gutierrez,* 962 F.Supp. 1367, 1369 (D.Kan.1997) (citing K.S.A. 60–513(a)(3)).

> FN16. *Andale Equipment, Inc. v. Deere & Co.,* 985 F.Supp. 1042, 1046 (D.Kan.1997) (citing *Wolf v. Brungardt,* 215 Kan. 272 (1974)).

Plaintiff does not dispute that she was aware of the alleged fraud more than two years prior to the filing of this adversary proceeding. In fact, she raised most, if not all, of these issues in her answer to the state court foreclosure proceeding as well as in and the complaint she filed with HUD against Defendants Miller and Miller Enterprises in July, 2000. Instead, Plaintiff again attempts to utilize a "continuing tort" theory to toll the statute of limitations in this case.

The first theory advanced by Plaintiff is that (1) because Miller has allegedly not complied with the contractual requirements of the HUD enforcement agreement and (2) because other Defendants are continuing to take tortious action against her, the statute of limitations has not yet been triggered. In other words, Plaintiff is claiming that the statute of limitations for bringing the fraud claim against Defendants contained in Count III should be tolled based upon an alleged subsequent breach of contract and because other Defendants in this case continue to engage in tortious conduct against Plaintiff. Once again, Plaintiff provides no legal basis for this claim. The Court has again undertaken the task of reviewing Kansas law in an effort to determine if Plaintiff's claim has any legal basis, and again the Court has found no support for Plaintiff's position.

Plaintiff also claims that when she first realized that she had been harmed, she filed an administrative complaint with HUD. Again, Plaintiff provides no legal or factual analysis to explain how this fact could possibly extend the statute of limitations in

this case, and the Court has been unable to find any legal support for Plaintiff's position.

Kansas law is clear that the statute of limitations for a fraud claim "begins to run when the injured party has actual knowledge of the fraud or when the fraud could have been discovered with reasonable diligence."[FN17] The fact that the party perpetrating the fraud may also have harmed the injured party by breaching a subsequent contract, or that other defendants in a case may continue committing torts against the injured party, is no basis for tolling the statute of limitations of the fraud claim. Similarly, the fact that a defendant may be in breach of a contract between the parties has no effect on the running of the statute of limitations for the fraud claim. Plaintiff clearly knew of the alleged fraudulent conduct more than two years prior to filing this adversary proceeding and, therefore, the fraud claims contained in Count III of her Amended Complaint are barred by the two-year statute of limitations.

> FN17. *Andale Equipment,* 985 F.Supp. at 1046 (citing *Wolf v. Brungardt,* 215 Kan. 272 (1974)).

c. The TILA claims contained in Count IV of the Amended Complaint are barred by the one-year statute of limitations.

**\*9** In Count IV of the Amended Complaint, Plaintiff seeks damages against Defendants BNC and First Union for alleged violations of the Truth in Lending Act (TILA). Plaintiff claims that BNC committed the following violations of the TILA:

> 1. BNC failed to notify Plaintiff that it was going to be the lender on the purchase agreement at least three days prior to closing in violation of 15 U.S.C. § 1638; and

> 2. BNC failed to take into consideration Plaintiff's ability to repay the indebtedness, including her current and expected income, current obligations, and employment in violation of 15 U.S.C. § 1639(h).

Page 10

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Plaintiff claims First Union is liable for the TILA violations as an assignee of BNC.

To bring an action under the TILA, Plaintiff must bring the action within one year from the date of the occurrence of the violation.[FN18] In this case, the statute of limitations began to run on the date of the closing, February 18, 2000, which is the date the alleged violations of the TILA occurred.[FN19] However, the statute of limitations is not jurisdictional, and may be subject to equitable tolling under appropriate circumstances.[FN20] Therefore, unless some legal basis exists for tolling the statute of limitations in this case, the statute of limitations expired on these TILA claims on February 18, 2001, more than two years before the filing of the Complaint in this case.

FN18. 15 U.S.C. § 1640(e).

FN19. *See Morris v. Lomas and Nettleton Co.,* 708 F.Supp. 1198, 1203 (D.Kan.1989).

FN20. *See Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703 (11th Cir.1998); *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499 (3rd Cir.1998); and *King v. State of Cal.,* 784 F.2d 910 (9th Cir.1986).

Plaintiff alleges two basis for tolling the statute of limitations on this claim. First, Plaintiff alleges "the ongoing and continuing action to pursue foreclosure through the state court action tolls the statute of limitations." Once again, Plaintiff fails to provide any legal support or factual analysis to support this claim. A review of relevant federal law revealed no legal basis for tolling the statute of limitations on a TILA claim on the basis that the offending party may have engaged in other misconduct at a later time.

Plaintiff also claims that she "preserved her answer and defenses in the state court action" and, therefore, "her claims have not expired." As with Plaintiff's other attempts to avoid the statute of lim-

itations, she fails to provide any legal support or factual analysis to support this allegation. The Court finds that even if Plaintiff did raise these TILA claims in the state court foreclosure proceeding, that act does not serve to toll the statute of limitations on a future affirmative action against Defendants.[FN21]

FN21. If anything, Plaintiff's admission that she raised these claims in the state court foreclosure proceeding only serves to strengthen Defendants' position that these claims are also barred by principles of claim preclusion. However, because the Court finds that the claims are barred by the statute of limitations, it does not reach the claim preclusion defense.

The one-year statute of limitations for TILA violations began to run in this case on February 18, 2000. Because there is no legal basis to toll the statute of limitations in this case, Plaintiff's cause of action expired on February 18, 2001, more than two years before the filing of the Complaint in this case. Therefore, the TILA claims contained in Count IV of the Amended Complaint are time-barred and will be dismissed.

d. The discrimination claims contained in Count V of the Amended Complaint are barred by the two-year statute of limitations.

**\*10** Plaintiff, in Count V of the Amended Complaint, alleges that Defendants BNC, Miller, Miller Enterprises, First Union and Option One violated the Equal Credit Opportunity Act (ECOA) by discriminating against her based on her race in violation of 15 U.S.C. § 1691. All of the alleged discriminatory conduct involves actions that she contends took place prior to the closing on her home on February 18, 2000.

Defendants also claim that any alleged violations of ECOA are barred by the statute of limitations. All claims for violations of ECOA must be brought within two years of the date of the occurrence of the violation.[FN22] Although no specific

Case 12-02412-svk    Doc 60-2    Filed 10/01/12    Page 10 of 28

Page 11

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

details or dates are provided by Plaintiff, it is clear, based upon the factual allegations contained in her Amended Complaint, that all alleged acts of discrimination took place prior to the closing of the purchase of Plaintiff's house on February 18, 2000. Therefore, the statute of limitations on these claims expired, at the latest, on February 18, 2002, which was prior to the filing of the Complaint in this case.

> FN22. 15 U.S.C. § 1691e(f).

Plaintiff alleges the same two bases for tolling the statute of limitations on this claim as she did for her TILA claim. First, Plaintiff alleges "the ongoing and continuing action to pursue foreclosure through the state court action tolls the statute of limitations." Second, Plaintiff claims that she "preserved her answer and defenses in the state court action" and, therefore, "her claims have not expired." Once again, Plaintiff fails to provide any legal support or factual analysis to support these claims, and instead relies upon the bare assertions that the statute of limitations should be tolled. A review of relevant federal law revealed no legal basis for tolling the statute of limitations on a ECOA claim on either of these bases.

The two-year statute of limitations for ECOA violations began to run in this case no later than February 18, 2000. Because Plaintiff has presented no legal or factual basis to toll the statute of limitations in this case, Plaintiff's cause of action expired no later than February 18, 2002, more than a year before she filed her Complaint in this case. Therefore, the discrimination claims under the ECOA contained in Count IV of the Amended Complaint are time-barred and will be dismissed.

B. Count II of the Amended Complaint fails to contain the specificity required to bring a RICO claim.

Count II of the Amended Complaint alleges that all the Defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO")[FN23] resulting in damages to Plaintiff. Each of the Defendants has moved to dismiss Count II pursuant to Fed.R.Civ.P. 12(b)(6),[FN24] on the

basis that it fails to plead the elements of the RICO claim with the particularity required by Fed.R.Civ.P. 9(b).[FN25]

> FN23. 18 U.S.C. § 1961, et seq.

> FN24. Fed.R.Civ.P. 12(b)(6) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7012(b).

> FN25. Fed.R.Civ.P. 9(b) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7009.

In order to survive a Rule 12(b)(6) motion, a RICO claim must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.[FN26] Plaintiff is required to allege with particularity each element of a RICO violation and its predicate acts of racketeering.[FN27] In requiring the specificity of pleading in a RICO case, the Tenth Circuit recognized the policy of notice pleadings under the Federal Rules of Civil Procedure "requires a court to read Rule 9(b)'s requirements in harmony with Rule 8's call for a 'short and plain statement of the claim' which presents 'simple, concise, and direct' allegations."[FN28] However, the Tenth Circuit found that "that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts."[FN29] To that end, courts have found that " 'the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby." ' ,[FN30]

> FN26. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

> FN27. *Hall v. Doering,* 997 F.Supp. 1445,

Page 12

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

1453 (D.Kan.1998) (citing *Farlow v. Peat, Marwick Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992)).

FN28. *Cayman Exploration,* 873 F.2d at 1362.

FN29. *Id.*

FN30. *Hall v. Doering,* 997 F.Supp. 1445, 1453 (D.Kan.1998) (quoting *Meyer v. Cloud County Bank & Trust,* 647 F.Supp. 974, 975–76 (D.Kan.1986)).

**\*11** Furthermore, as the requirements relate to corporate defendants, the rule requires that plaintiffs identify the specific individuals acting for the corporation who made the alleged misrepresentations.[FN31] Courts have also noted that "while [the] plaintiff need only give fair notice in her complaint, the list of elements is deceptively simple ... because each concept is a term of art which carries its own inherent requirements of particularity. For example, 'conduct' embodies the requirements of one or more of the four substantive violations set out in §§ 1962(a) through (d)."[FN32]

FN31. *Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d 1212, 1218 (D.Kan.1999).

FN32. *Burdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d 1109, 1120 (D.Kan., 2003) (internal quotations omitted).

The Court finds that Count II of the Amended Complaint fails to contain the specificity required of a properly pled RICO claim. The Amended Complaint contains numerous general allegations concerning the alleged roles of most, though not all, of Defendants in this alleged enterprise, but does not provide any of the specific information required by the Court of Appeals for the Tenth Circuit. The Amended Complaint lacks any specifics as to time, place, and contents of false representations and, in regard to the corporate defendants, entirely fails to identify those persons who allegedly conducted the improper activities or who made the allegedly fraudulent representations on behalf of the corporations. Similarly, the Amended Complaint fails to give Defendants clear notice of the particulars of the predicate acts that support her claim. In fact, the Amended Complaint fails to even specify which specific provisions of RICO the Defendants have allegedly violated.

Although the Court finds that the Amended Complaint fails to meet the specificity requirements for a RICO claim, the Court will not dismiss Count II at this time. Instead, the Court will grant Plaintiff another opportunity to amend her Complaint to comply with the requirements for bringing a RICO claim.[FN33] Plaintiff will be given until September 8, 2004 to file a second Amended Complaint that complies with the specificity requirements for bringing a RICO claim.[FN34] The Court has given this extended period because the Court wishes to ensure that its decision to stay discovery, entered February 12, 2004, does not deprive Plaintiff of her opportunity to discover the facts necessary to plead this RICO claim with the required particularity. The Court cautions Plaintiff's counsel to properly draft the second Amended Complaint so that it is in conformity with the specificity requirements for bringing a RICO claim, as it is unlikely the Court will grant leave for a fourth attempt to bring the pleadings within the requirements of the law.[FN35]

FN33. *See Cayman Exploration,* 873 F.2d at 1362–63 (holding that a trial court has the discretion to allow amendments to the pleadings to comply with the specificity requirements of a RICO claim).

FN34. Because the Court has found that Counts I, III, IV and V are all to be dismissed based upon the pertinent statute of limitations, Plaintiff is barred from including those counts in her second Amended Complaint. The Court orders that by doing so, Plaintiff is in no way waiving her right to appeal the Court's decision as it relates to the dismissal of those claims and is not

Case 12-02412-svk    Doc 60-2    Filed 10/01/12    Page 12 of 28

Page 13

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

deemed to have abandoned those claims. The Court simply believes it would be a waste of Defendants' time, as well as this Court's time, to prepare and review answers to the second Amended Complaint that include the four counts that are dismissed with this order.

FN35. The Court further cautions Plaintiff not to include in her Second Amended Complaint any additional claims for which the statute of limitations has expired. In a recent response to Option One and Kozeny & McCubbins Motions for Sanctions, Plaintiff threatens to file a claim for "malicious prosecution and abuse of prosecution claims against Defendants McCubbin, Option One and First Union." If these claims are based on the Johnson County foreclosure proceeding, it would seem at first blush that those claims would also be time-barred.

C. Summary Judgment is not appropriate at this time as to Count II on the grounds of res judicata and collateral estoppel.

In addition to seeking dismissal of Count II on the grounds that it fails to plead the RICO claim with the required particularity, First Union also seeks summary judgment on this claim on the basis of res judicata and issue preclusion.

1. Standard for Summary Judgment

**\*12** Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that the moving party is "entitled to a judgment as a matter of law." FN36 The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." FN37 The substantive law identifies which facts are material. FN38 A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant . FN39

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." FN40

FN36. Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed. R. Bankruptcy. Proc. 7056(c).

FN37. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).

FN38. *Id.* at 248.

FN39. *Id.*

FN40. *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. FN41 The movant may discharge its burden "by 'showing'—that is, pointing out to the ... court—that there is an absence of evidence to support the nonmoving party's case." FN42 The movant need not negate the nonmovant's claim. FN43 Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. FN44 The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. FN45 Rule 7056(c) requires the Court enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. FN46

FN41. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993).

FN42. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

FN43. *Id.* at 323.

Page 14

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

FN44. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

FN45. *Celotex,* 477 U.S. at 324.

FN46. *Id.* at 322.

2. Analysis of First Union's Summary Judgment Motion.

First Union claims that Plaintiff's RICO claim was a compulsory counterclaim to the foreclosure proceeding in state court, and that some of the issues raised by Plaintiff were already raised and decided by the state court, thus barring her from now bringing these claims. For res judicata to apply, four conditions must be met: "(1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made." FN47 A judgment issued by a court of competent jurisdiction is preclusive as to all of the matters actually raised, and those matters which should have been raised. FN48

FN47. *O'Keefe v. Merrill Lynch & Co.,* 32 Kan.App.2d 474 (2004) (citing *Jackson Trak Group, Inc. v. Mid States Port Authority,* 242 Kan. 683 (1998).

FN48. *Id.*

Plaintiff contends that res judicata or claim preclusion is inapplicable for two reasons. First, Plaintiff claims the state court did not have proper jurisdiction, thus rendering the judgment void. Second, Plaintiff claims that her RICO count includes actions by First Union that took place after the entry of the state court judgment, thus resulting in a claim that had not arisen prior to the state court judgment.

a. Plaintiff is barred from raising any claims that were previously decided by the state court in the foreclosure proceeding.

**\*13** Plaintiff claims that the state court judg-

ment is void because that court lacked jurisdiction to enter a judgment and because First Union did not have standing to bring the claim. The basis for these claims is that First Union was not the proper party to bring the foreclosure action because it was not the real party in interest. It is undisputed that Plaintiff raised this issue before the state court, which ultimately rejected Plaintiff's claims and entered a judgment in favor of First Union. Plaintiff did not appeal the state court judgment, and the time for doing so has long passed. The Court finds that Plaintiff is barred from now collaterally attacking that state court judgment in this proceeding.

The *Rooker–Feldman* doctrine, established by two Supreme Court decisions handed down 60 years apart, provides that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States [trial] court." FN49 Section 1257 of Title 28 of the United States Code provides that the proper court in which to obtain such review is the United States Supreme Court. FN50 The Tenth Circuit Bankruptcy Appellate Panel has recognized the applicability of the *Rooker–Feldman* doctrine to bankruptcy courts. FN51

FN49. *Johnson v. De Grandy,* 512 U.S. 997, 1005–1006 (1994) (citing to *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)).

FN50. *Feldman,* 460 U.S. at 476.

FN51. *In re Aboud,* 237 B.R. 777, 780 (10th Cir. B.A.P.1999). *See also Goetzman v. Agribank, FCB (In re Goetzman),* 91 F .3d 1173 (8th Cir.1996) (holding that the bankruptcy court lacked subject matter jurisdiction to determine the amount of a debt that had been previously determined in state trial court) and *In re Beardslee,* 209 B.R. 1004 (Bankr.D.Kan.1997).

The Court finds that the *Rooker–Feldman* doc-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 15

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

trine is applicable to the issue of whether First Union was the proper party in interest to bring the foreclosure action. The state court made the following specific findings in regard to the foreclosure proceeding:

1. it had jurisdiction over all of the parties;

2. it had jurisdiction over the subject matter of the case;

3. First Union was the true owner of the note and mortgage; and

4. First Union was entitled to the relief prayed for in the foreclosure petition.

As mentioned above, Plaintiff did not appeal any of these findings to a state appellate court. Instead, Plaintiff is asking this Court to, in essence, overturn the findings made by the state court and rule that it lacked jurisdiction over the parties and that First Union was in fact not the proper party. It is this type of collateral attack, which seeks reversal of a state court judgment by a federal trial court, that the *Rooker–Feldman* doctrine prohibits. Plaintiff's relief from any incorrect or improper rulings by the state trial court was to the Kansas Court of Appeals, and this Court will not, and in fact cannot, sit in the place of those appellate courts.

Alternatively, rules of preclusion apply in bankruptcy actions.[FN52] As the Supreme Court noted in *Marrese v. American Academy of Orthopaedic Surgeons*,[FN53] the preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."[FN54] This statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered.

FN52. *Cf. Grogan v. Garner,* 498 U.S. 279, 284–85, n. 11 (1991) (stating that col-

lateral estoppel principles apply in discharge proceedings).

FN53. 470 U.S. 373, 380 (1985).

FN54. 28 U.S.C. § 1738.

**\*14** The threshold constitutional question, whether Plaintiff had a full and fair opportunity to be heard, is easily determined in the affirmative. Under the principles of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action.[FN55] Plaintiff clearly raised the issues concerning First Union's standing to bring the claim in state court and contested the issue of whether First Union was the proper party in interest.

FN55. *See Grimmett v. S & W Auto Sales Co., Inc.,* 26 Kan.App.2d 482, 487 (1999).

The full faith and credit statute requires this Court to analyze state law to determine whether that judgment has preclusive effect. In *Indiana University Foundation v. Reed (In re Estate of Reed),*[FN56] the Court held:

FN56. 236 Kan. 514 (1985).

The doctrine of res judicata is a bar to a second action upon the same claim, demand or cause of action. It is founded upon the principle that the party, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction.... [R]es judicata forbids a suitor from twice litigating a claim for relief against the same party. The rule is binding, not only as to every question actually presented, considered and decided, but also to every question which might have been presented and decided.... [Res judicata] requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action.... This rule is one of public

Case 12-02412-svk    Doc 60-2    Filed 10/01/12    Page 15 of 28

Page 16

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

policy. It is to the interest of the state that there be an end to litigation and an end to the hardship on a party being vexed more than once for the same cause.[FN57]

> FN57. *Id.* at 519 (citations omitted and emphasis added).

Contrary to Plaintiff's position, claim preclusion applies to issues of jurisdiction, both personal and subject matter.[FN58] Because the state court heard and decided the issues concerning First Union's standing to bring the claim, the rules of preclusion bar Plaintiff from relitigating those issues in this action.

> FN58. *See Insurance Corp. Of Ireland, Ltd. V. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982) (holding "It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal.").

b. Summary judgment in favor of First Union on the RICO claim is premature.

Although the Court finds that any RICO claim based upon actions that arose prior to the filing of the foreclosure action are barred, summary judgment is not appropriate at this time. Plaintiff alleges in her response to the summary judgment motion that First Union took actions in furtherance of the alleged illegal scheme by the defendants after the entry of the state court judgment. If the RICO claim is based, at least in part, on actions by First Union that took place following the judgment in the state court proceeding, *res judicata* and issue preclusion would not operate to bar the RICO claim.[FN59]

> FN59. *See Waddell & Reed Financial, Inc. v. Torchmark Corp.,* 292 F.Supp.2d 1270 (D.Kan.2003).

As noted above, the Amended Complaint lacks the required specificity for a RICO claim. The use of broad allegations and lack of necessary information makes it impossible for the Court to determine

at this time if Plaintiff's claim is valid that First Union engaged in illegal conduct after the conclusion of the state court proceeding, which could create a RICO cause of action that is not barred by rules of preclusion. Therefore, First Union's summary judgment motion must be denied without prejudice, pending the filing of a second Amended Complaint by Plaintiff.

**\*15** The Court cautions Plaintiff to carefully examine the law concerning *res judicata* and issue preclusion in determining whether to continue pursuing a RICO claim against First Union. It appears to the Court, based upon the information that has been presented to this point, that any RICO claim against First Union is likely to be barred based upon the prior lawsuit involving these two parties. However, without the benefit of a properly drafted Complaint, the Court is unable to make that determination. Given the benefit of the Court's analysis in this order, combined with the arguments raised by First Union in its motion for summary judgment, the Court will not look favorably upon any further attempt to include First Union in a RICO claim that is barred by the rules of preclusion. The Court is not, in any way, attempting to dissuade plaintiff from bringing a valid, timely claim against First Union in her Second Amended Complaint, but will not hesitate to provide appropriate remedies to First Union should plaintiff's second Amended Complaint contain a claim against First Union that plaintiff should have known was barred by *res judicata* or other similar rules of preclusion. The Court's decision to allow Plaintiff to amend her complaint should not be viewed as an opportunity to continue pursuing an invalid RICO claim against First Union, or any other party.

III. SCHEDULING ORDER

The Court lifts the stay of discovery as to the only remaining claim—the RICO claim. Any party may conduct discovery on this claim, even before the Second Amended Complaint is filed, until November 3, 2004. This allows, after amendment, eight additional weeks to conclude discovery. A fi-

Page 17

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

nal pretrial conference will be held December 8, 2004 at 1:40 P.M. at the United States Bankruptcy Court, 444 S.E. Quincy, Room 215, Topeka, Kansas 66683. Plaintiff shall be responsible for submitting one agreed pretrial order, covering all parties and all claims, after consultation with Debtors' counsel, no later than December 3, 2004. The pretrial order form can be accessed on the Court's website at www.ksb.uscourts.gov under "Judges' Corners."

IV. CONCLUSION

The Court finds that Counts I, III, IV and V of the Amended Complaint are all barred by the applicable statute of limitations and are dismissed. Plaintiff's reliance on a continuing tort theory to toll the statute of limitations in each of those counts is without merit. In addition, the Court finds that Plaintiff has failed to provide the required specificity for a RICO claim in Count II, but will give Plaintiff another opportunity to amend her complaint to bring it into compliance with the pleading requirements for a RICO claim in the Tenth Circuit.

The Court denies First Union's Motion for Summary Judgment, without prejudice. Summary judgment is not appropriate at this time because plaintiff has alleged that the RICO claim against First Union involves activity that occurred following the state court judgment in the foreclosure proceeding. First Union is free to raise these issues again in the event Plaintiff's second Amended Complaint contains a claim against First Union that is barred by *res judicata* or other rules of preclusion.

**\*16** The Court also requires Plaintiff to show cause within ten (10) days why Defendant Maplewood Mortgage, Inc. and John Does 1–100 should not be dismissed from this proceeding based upon her failure to properly serve those Defendants within the 120 day period required by Fed. R. Bankr.P. 7004(a), which incorporates Fed. R. Civ. Proc. 4(m). Failure to show cause will result in the dismissal of all claims against those Defendants.

IT IS, THEREFORE, BY THIS COURT ORDERED that the Motion of BNC Mortgage to Dismiss Amended Complaint (Doc. 55), Motion of Option One Mortgage to Dismiss Counts I, II, III, IV and V of the Amended Complaint (Doc. 56), Motion of First Union National Bank to Dismiss (Doc. 60), Motion of Miller Enterprises and Jeffrey Miller to Dismiss Amended Complaint (Doc. 71), and Motion of Adamson and Associates to Dismiss Counts II and III of the Amended Complaint (Doc. 72) are granted in part and denied in part. Counts I, III, IV and V are barred by the statute of limitations and are dismissed, with prejudice. Plaintiff shall have until September 8, 2004 to file a second Amended Complaint, containing only the RICO Count from the First Amended Complaint, and it must meet the pleading requirements for bringing a RICO claim. First Union National Bank's Motion for Summary Judgment (Doc. 60) is denied, without prejudice.

IT IS FURTHER ORDERED that Plaintiff shall show cause within ten (10) days why Defendants Maplewood Mortgage, Inc. and John Does 1–100 should not be dismissed from this proceeding based upon lack of service of process.

IT IS SO ORDERED.

APPENDIX B
MEMORANDUM AND ORDER

This matter is before the Court on Motions to Dismiss Plaintiff's Second Amended Complaint filed by the following Defendants: (1) Miller Enterprises, Inc. and Jeffrey Miller; (2) First Union National Bank; (3) Kozeny & McCubbin, L.C.; (4) Option One; (5) BNC Mortgage, Inc.; and (6) Adamson and Associates, Inc.[FN60] The Court has jurisdiction to hear this case as it is related to the bankruptcy case that arises under Title 11 of the United States Code, and the parties have all consented to the Court hearing and determining the issues involved in this case and entering all appropriate orders and judgments.[FN61]

FN60. Docs. 131, 132, 144, 145, 146 and 149.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 18

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

FN61. 28 U.S.C. § 1334 and 28 U.S.C. § 157(c)(2). *See also* Doc. No. 117, an order entered June 16, 2004, confirming that all parties have provided written consent to allow this Court to hear and determine this case and enter all appropriate orders and judgments pursuant to 28 U.S.C. § 157(c)(2), subject to review under 28 U.S.C. § 158.

As a preliminary matter, the only Defendants who have not filed a Motion to Dismiss are Maplewood Mortgage, Inc. and "Does 1–100." [FN62] These Defendants have never been served with process, and on July 8, 2004, after this case had been pending almost a year, this Court gave Plaintiff ten days to show cause why each of these Defendants should not be dismissed as a result of her failure to serve them within the time allowed by Fed. R. Bankr.P. 7004(a), which incorporates Fed.R.Civ.P. 4(m). [FN63] Plaintiff filed nothing in response, and so the Court did dismiss each of these parties on July 28, 2004. [FN64]

FN62. The Court assumes Plaintiff is trying to name entities or persons, the identities of whom are unknown to her, which many plaintiffs commonly call "John Doe." In addition, in paragraphs 2–9 of Plaintiff's Second Amended Complaint, which section she entitled "PARTIES," she outlines each of the defendants are. "Does 1–100" are never mentioned, and at no other point are they mentioned in the Complaint (including in the prayer for relief), except in the caption.

FN63. *Lewis v. BNC Mortgage, Inc. (In re Lewis),* 2004 WL 2191602, *11 (Bankr.D.Kan. July 8, 2004),* which is Doc. No. 120, herein.

FN64. Doc. No. 121.

When Plaintiff filed her Second Amended Complaint on September 9, 2004, she once again named these once-dismissed parties as Defendants. Yet another 120 days have expired, and she still has not served any of these Defendants with this Second Amended Complaint. For the same reason these Defendants were originally dismissed, the Court will again dismiss Defendants Maplewood Mortgage, Inc. and "Does 1–100." "Does 1–100" are also dismissed because Plaintiff's Second Amended Complaint never mentions them except in the caption, and thus by definition, Plaintiff has failed to state a claim against them upon which relief can be granted under Fed. R. Bankr.P. 7012(b)(6).

I. FINDINGS OF FACT

**\*17** Plaintiff initially filed this adversary proceeding on August 4, 2003, pro se. Several Defendants filed Motions to Dismiss her original Complaint. Thereafter, she hired counsel and he filed, on her behalf, a First Amended Complaint on November 25, 2003. On July 8, 2004, this Court granted motions to dismiss filed by all Defendants (except for those who had never been served) on all counts contained in Plaintiff's First Amended Complaint, except for one count. The only count not dismissed was one brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). [FN65] Out of an abundance of caution, the Court granted Plaintiff one last opportunity to amend her complaint to properly allege a RICO cause of action.

FN65. 18 U.S.C. § 1961, *et seq.*

The Court's July 8, 2004 order provided Plaintiff a road map with the requirements for properly pleading a RICO action, since her first two Complaints had been blatantly deficient in pleading a RICO claim. The Court also allowed Plaintiff two months after the date of the Court's opinion to file the Second Amended Complaint so that if she needed to conduct additional discovery in order to plead her RICO complaint with the requisite detail, she would have adequate time to do that discovery.

Plaintiff's Second Amended Complaint, just

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 19

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

like the former two, involves the construction, purchase, financing, and subsequent foreclosure of her home. Plaintiff purchased a home that was constructed by Defendant Miller Enterprises, Inc. ("Miller Enterprises"), whose president is Defendant Jeffrey Miller ("Miller"). Miller Enterprises also carried a second mortgage on the property. Defendant Adamson & Associates ("Adamson") provided an appraisal of the property. Defendant Maplewood Mortgage, Inc. ("Maplewood") apparently served as the closing agent on the property. Defendant BNC Mortgage, Inc. ("BNC") was the underwriter for the first mortgage on the house, with Defendant Option One Mortgage Corp. ("Option One") acting as a servicing agent for BNC. The mortgage and deed rights were eventually assigned to Defendant First Union National Bank ("First Union"), who was represented by Defendant Kozeny & McCubbin, L.C. ("McCubbin"), a law firm, in a state court foreclosure action against Plaintiff, seeking foreclosure of her home.

Although the specific factual allegations contained in Plaintiff's Second Amended Complaint will be discussed in more detail below as they relate to each element of her claim, the Court finds a brief overview of the Plaintiff's claim will be helpful. Plaintiff claims that each of the Defendants jointly engaged in an illegal enterprise wherein they sought out high risk buyers, required high down payments because those buyers were, by definition, unable to meet the requirements for a smaller down payment provided to more credit-worthy borrowers, doctored loan amounts so that a high rate of interest could be justified, reduced the amount of carrybacks so that the buyers could close on the property, inflated the value of poorly constructed homes and then pursued foreclosure on the mortgage and note, at which time they would bid in the property for an amount less than the house was worth, and resell it at an inflated value. Plaintiff contends that in perpetuating this scheme, Defendants' conduct violated RICO and mail fraud statutes.[FN66]

> FN66. Although Plaintiff cited to 18

U.S.C. § 1343 (relating to wire fraud), the Court assumes she intended to cite 18 U.S.C. § 1341, which relates to mail fraud, since there is no allegation that Defendants used wire, radio or television transactions to conduct the alleged scheme.

## II. STANDARDS FOR EVALUATING MOTIONS TO DISMISS

**\*18** Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the movant must demonstrate beyond a doubt that there is no set of facts in support of plaintiff's theory of recovery that would entitle plaintiff to relief.[FN67] All well-pleaded allegations will be accepted as true and will be construed in the light most favorable to plaintiff.[FN68]

> FN67. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas,* 927 F.2d 1111, 1115 (10th Cir.1991).

> FN68. *In re American Freight System, Inc.,* 179 B.R. 952, 956 (Bankr.D.Kan.1995).

## III. ANALYSIS

Plaintiff's Second Amended Complaint alleges that all Defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") resulting in damages to Plaintiff. Each of the Defendants who has received service of process has moved to dismiss this Complaint pursuant to Fed.R.Civ.P. 12(b)(6),[FN69] on the basis that it fails to plead the elements of a RICO claim with the particularity required by Fed.R.Civ.P. 9(b).[FN70]

> FN69. Fed.R.Civ.P. 12(b)(6) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7012(b).

> FN70. Fed.R.Civ.P. 9(b) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7009.

As this Court previously set out in great detail

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 20

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

in its July 8, 2004 order, in order to survive a Rule 12(b)(6) motion, a RICO claim must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.[FN71] Plaintiff is required to allege with particularity each element of a RICO violation and its predicate acts of racketeering.[FN72] In requiring the specificity of pleading in a RICO case, the Tenth Circuit recognized the policy of notice pleadings under the Federal Rules of Civil Procedure "requires a court to read Rule 9(b)'s requirements in harmony with Rule 8's call for a 'short and plain statement of the claim' which presents 'simple, concise, and direct' allegations."[FN73] However, the Tenth Circuit found "that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts."[FN74] To that end, courts have found that " 'the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby." ,[FN75]

FN71. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

FN72. *Hall v. Doering,* 997 F.Supp. 1445, 1453 (D.Kan.1998) (citing *Farlow v. Peat, Marwick Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992)).

FN73. *Cayman Exploration,* 873 F.2d at 1362.

FN74. *Id.*

FN75. *Hall v. Doering,* 997 F.Supp. at 1453 (quoting *Meyer v. Cloud County Bank & Trust,* 647 F.Supp. 974, 975–76 (D.Kan.1986)).

Furthermore, as the requirements relate to corporate defendants, the rule requires that plaintiffs identify the specific individuals acting for the corporation who made the alleged misrepresentations.[FN76] Courts have also noted that "while [the] plaintiff need only give fair notice in her complaint, the list of elements is deceptively simple ... because each concept is a term of art which carries its own inherent requirements of particularity. For example, 'conduct' embodies the requirements of one or more of the four substantive violations set out in §§ 1962(a) through (d)."[FN77]

FN76. *Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d 1212, 1218 (D.Kan.1999) (holding "the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby," and "[in] the context of corporate defendants, plaintiffs must identify the specific individuals who made the alleged misrepresentations).

FN77. *Burdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d 1109, 1120 (D.Kan.2003) (internal quotations omitted).

Although each Defendant has filed a separate motion to dismiss the Second Amended Complaint, each of the motions raise essentially the same arguments for dismissal. To the extent the motions raise the same legal and factual issues, the Court will jointly address them for simplicity.

A. Plaintiff's claims against First Union are barred by *res judicata* and issue preclusion.

*19 First Union's Motion to Dismiss contains a defense not shared by the other Defendants, and therefore the Court will address its motion independently. Defendant First Union brought a state court foreclosure action against Plaintiff in September 22, 2000, seeking to foreclose its mortgage on

Case 12-02412-svk   Doc 60-2   Filed 10/01/12   Page 20 of 28

Page 21

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

the subject real estate. Plaintiff had the opportunity in that proceeding to raise, as a defense to the foreclosure, and by way of affirmative counterclaims, any claim or cause of action she had against First Union.

Plaintiff failed to plead a RICO claim against First Union in the state court proceeding. This Court has already held that the final state court judgment between First Union and Plaintiff precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. Thus, to the extent Plaintiff's RICO claim against First Union existed before the completion of the foreclosure proceeding commenced, or at least by the last date for filing counterclaims, she was required to file a compulsory counterclaim against First Union in that proceeding. This she failed to do.

In the Court's July 8, 2004 Memorandum and Order, it noted that to the extent First Union had engaged in RICO acts *after* the conclusion of the state court proceeding that had damaged Plaintiff, she might be able to pursue an action against it. The court noted, as follows:

Although the Court finds that any RICO claim based upon actions that arose prior to the filing of the foreclosure action are barred, summary judgment is not appropriate at this time. Plaintiff alleges in her response to the summary judgment motion that First Union took actions in furtherance of the alleged illegal scheme by the defendants after the entry of the state court judgment. If the RICO claim is based, at least in part, on actions by First Union that took place following the judgment in the state court proceeding, *res judicata* and issue preclusion would not operate to bar the RICO claim.[FN78]

FN78. *Lewis v. BNC Mortgage, Inc. (In re Lewis),* 2004 WL 2191602 at *11.

The Court thus granted Plaintiff leave to amend her petition to specifically plead that First Union had committed RICO violations after the conclusion of the state court action.

In her Second Amended Complaint, Plaintiff alleges First Union committed one post-state court act in violation of RICO. That purported RICO violation was First Union's filing of a proof of claim in the underlying bankruptcy case; she contends this act was done in furtherance of the alleged RICO enterprise. Although the Court has serious doubts whether filing a proof of claim in a bankruptcy case could be viewed as conduct that could support a RICO claim, the Court need not decide that issue because Plaintiff's allegation is simply untrue. Had Plaintiff reviewed the Claims Register in the Plaintiff's Chapter 13 bankruptcy case,[FN79] she would easily note that First Union never filed a proof of claim. Accordingly, the single post-state court action that Plaintiff contends First Union committed, which purportedly serves to keep that Defendant in the case, simply did not occur.

FN79. This Court takes judicial notice of the proofs of claim filed in Plaintiff's Chapter 13 case. *See In re Applin,* 108 B.R. 253, 257 (Bankr.E.D.Cal.1989) (holding that the judicial notice of basic filings in the bankruptcy case is permissible to fill in gaps in the evidentiary record of a specific adversary proceeding or contested matter).

**\*20** In her response to First Union's motion to dismiss, Plaintiff simply ignores First Union's argument that it did not commit the one and only post-foreclosure act Plaintiff has claimed it did file a proof of claim. Plaintiff also ignores the findings contained in this Court's July 8, 2004 Order concerning the issues of *res judicata* and claim preclusion as they applied to First Union.

Plaintiff has not plead that First Union engaged in any conduct that forms a basis for the RICO claim following the entry of judgment in the state

Case 12-02412-svk    Doc 60-2    Filed 10/01/12    Page 21 of 28

Page 22

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

court foreclosure proceeding, notwithstanding being given months to do so. For the reasons set forth in the Court's Memorandum and Order dated July 8, 2004, the Court finds that the Plaintiff's RICO claim against First Union is barred by *res judicata* and issue preclusion.[FN80] Therefore, First Union's Motion to Dismiss is granted, with prejudice.

> FN80. Although she did not bother to make this argument in opposition to First Union's Motion to Dismiss, Plaintiff has argued, in response to First Union's motion for sanctions, that the state court proceeding cannot be a basis for *res judicata* because the state court order is not a final judgment, as the appeal time had not run on that judgment when she filed this Chapter 13 proceeding. Plaintiff claims that the filing of her bankruptcy petition stayed the state court proceeding and that her deadline for filing an appeal was tolled by the automatic stay. This argument is completely without merit, as it is well established in the Tenth Circuit that the automatic stay provision of 11 U.S.C. § 362(a)(1) "does not prevent a debtor from commencing or continuing [her] own appeal." *Mason v. Oklahoma Turnpike Authority,* 115 F.3d 1442, 1450 (10th Cir.1997) (citing *Chaussee v. Lyngholm (In re Lyngholm),* 24 F.3d 89, 91–92 (10th Cir.1994)).

B. Plaintiff's Second Amended Complaint is insufficient to state a claim for relief under RICO against the remaining movants.

Each Defendant has raised numerous issues concerning deficiencies in Plaintiff's Second Amended Complaint. Defendants contend, *inter alia,* that Plaintiff has failed to plead facts that could prove an enterprise existed, including the identity of corporate officers who were acting on behalf of the corporate defendants, that she has failed to establish a pattern of racketeering activity, and that she has failed to even identify what sections of the RICO statute Defendants have allegedly violated.

As noted above, in order to properly plead a claim under RICO, Plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.[FN81] Plaintiff is required to allege with particularity each element of a RICO violation and its predicate acts of racketeering. "If plaintiff does not allege facts sufficient to establish any one of these elements, the complaint must be dismissed."[FN82]

> FN81. *Cayman Exploration,* 873 F.2d at 1362 (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

> FN82. *Burdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d at 1121.

1. Plaintiff has failed to properly plead an enterprise within the meaning of RICO.

The Court finds that Plaintiff's Second Amended Complaint does not contain sufficient facts to allege an enterprise within the meaning of RICO. According to Congress, an "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[FN83] To plead the existence of an enterprise, Plaintiff must allege facts sufficient to show "(1) 'an ongoing organization with a decision-making framework or mechanism for controlling the group;' (2) 'various associates function as a continuing unit;' and (3) 'that the enterprise is separate from the pattern of racketeering activity.' "[FN84] " 'A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." '[FN85]

> FN83. 18 U.S.C. § 1961(4).

> FN84. *Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d at 1219 (quoting *United States v. Sanders,* 928 F.2d 940,

Case 12-02412-svk    Doc 60-2    Filed 10/01/12    Page 22 of 28

Page 23

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

943–44 (10th Cir.1991)).

FN85. *Id.* (quoting *States v. Rogers,* 89 F.3d 1326, 1337 (7th Cir.1996)).

Although Plaintiff added a substantial number of new paragraphs to the "facts" included in her Second Amended Complaint, in an attempt to establish that the various Defendants were somehow functioning as a continuing unit, the Court finds the Second Amended Complaint is devoid of factual allegations that could establish that Defendants had any sort of "decision-making framework or mechanism for controlling the group." There are no allegations that a singular organization existed "in a manner amenable to hierarchical or consensual decision-making." In addition, it appears the entire enterprise alleged by Plaintiff consists of the parties' alleged racketeering activity.[FN86] There is no allegation by the Plaintiff that "the enterprise is separate from the pattern of racketeering activity."

> FN86. The Court further notes that when Plaintiff defines the "enterprise" in her Second Amended Complaint, conspicuously absent as members of the "enterprise" are Defendants Kozeny & McCubbin and Jeffrey Miller. *See* Plaintiff's Second Amended Complaint, paragraph 12. Since Plaintiff thus tacitly admits they are not part of the "enterprise," by definition Plaintiff has failed to state a claim against those two Defendants for a RICO violation. This failure continues in Plaintiff's prayer for relief. Again, conspicuously absent is any request for damages against Kozeny & McCubbin, L.C.

**\*21** Plaintiff also variously claims different entities constitute the leadership of the purported "enterprise." First, she claims that First Union National Bank, Option One and/or Bank "at the top of the heirarchy." [FN87] Then she claims that "Miller Enterprises, Inc., Maplewood Real Estate, Inc. (not a party defendant), and Maplewood Mortgage, Inc. were at the core of the "enterprise...." "

[FN88] Although there are additional inconsistent factual allegations, this example serves to point out the stark deficiency in the Second Amended Complaint, and the unfairness such pleading poses to the named Defendants. A plaintiff alleging a RICO claim must know what her claim is when she files it. She cannot sue now and discover later what her claim is.[FN89]

> FN87. *See* Plaintiff's Second Amended Complaint. Doc. No. 130, ¶ 14.

> FN88. *Id.* at ¶ 13.

> FN89. *Cf. Farrow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d at 989. Ironically, this Court has, out of an abundance of caution, tacitly allowed Plaintiff to violate this rule by allowing her two separate opportunities to amend her Complaint and do discovery before each amendment so she in fact was allowed to "discover" her claim after she filed the Complaint.

Plaintiff has also wholly failed, at least as to Defendants First Union National Bank, Option One, BNC Mortgage, Adamson & Adamson, Miller Enterprises, Inc. and Maplewood Mortgage, to plead which corporate employee or officer acted on their behalf in conducting or directing this "enterprise."[FN90] This is yet another example of a deficiency contained in Plaintiff's First Amended Complaint, and which this Court specifically coached Plaintiff to correct in her Second Amended Complaint.[FN91] She has chosen not to identify which individuals did which *illegal* acts on behalf of any of the Defendant corporations, and this is also fatal to her claim against the corporate Defendants.

> FN90. Plaintiff's Second Amended Complaint indicates that Shirley Wheeler is one agent of Maplewood Mortgage (¶ 22), but never indicates that Shirley Wheeler was the Maplewood representative who engaged in the purportedly illegal RICO acts. Similarly, Plaintiff indicates that Jeffrey

Page 24

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Miller "was employed by" Miller Enterprises but "also acted independently of Miller Enterprises." (¶ 7) Plaintiff also indicated that Ronda Van Quaethem is an agent of Adamson & Associates, but never indicates she engaged in purportedly illegal acts. In fact, all she is alleged to have done on behalf of Adamson & Associates was to use two Miller Enterprise houses for "comparables" on an appraisal. (¶ 32). These paragraphs constitute the only attempts by Plaintiff to plead illegal acts by employees of the corporate members of the "enterprise." These allegations are insufficient to meet the requirement that corporate fraud allegations be accompanied by the identity of the corporate officials who actually conducted the fraud.

FN91. *Lewis v. BNC Mortgage, Inc,* 2004 WL 2191602 at *16 (wherein this Court noted that "the rule requires that plaintiffs must identify the specific individuals who made the alleged misrepresentations," and provided citation to additional authority).

The Court finds that Plaintiff has also failed to properly plead that the Defendants constituted an enterprise in the context of a RICO case. Plaintiff has certainly attempted to weave Defendants into a collective group that acted in a manner she contends harmed her, but that is insufficient to bring a claim under RICO. Instead, what Plaintiff has plead is that each Defendant acted individually (if at all), and not as a cog in the enterprise wheel. She doesn't even indicate who had an ownership in the alleged enterprise. RICO has very specific statutory requirements and is aimed at a particular type of enterprise. Plaintiff has wholly failed to plead facts that could show that these Defendants fit within the framework of a RICO enterprise.

2. Plaintiff has failed to plead, with the required specificity, that Defendants engaged in conduct sufficient to establish a RICO violation.

Each Defendant has noted that Plaintiff has

failed to plead what section of the RICO statute they violated by their purported actions. This Court apprised Plaintiff in its July 8, 2004 order that this failure was one of the many deficiencies of her First Amended Complaint. In her response to the various Motions to Dismiss, Plaintiff summarily dismisses this deficiency. This Court, again, disagrees. Plaintiff's failure to identify which provision of RICO each Defendant is alleged to have violated is sufficient to sustain the Defendants' motions to dismiss. As noted by the Court, above, "conduct," which is a specific element of a RICO claim, "embodies the requirements of one or more of the four substantive violations set out in §§ 1962(a) through (d)." FN92

FN92. *Burdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d at 1120 (internal quotations omitted).

**\*22** Section 1962 contains four distinct subsections, each of which creates civil liability based upon different actions and different legal bases than the other subsections. For example, § 1962(a) makes it illegal for racketeers to use profits from illegal activities to invest in or purchase controlling interests in legitimate businesses that are engaged in, or whose activities affect, interstate commerce. Section 1962(b) prohibits the takeover of a legitimate business that is engaged in, or whose activities affect, interstate commerce through a pattern of racketeering activity. Section 1962(c) prohibits the operation of a legitimate business or association that is engaged in, or whose activities affect, interstate commerce through a pattern of racketeering activity. Section 1962(d) makes it illegal for anyone to conspire to violate subsections (a) through (c).

Because each of the potential violations of RICO require Defendants to have committed different acts, it is imperative that Plaintiff provide Defendants with notice of which provisions of 18 U .S.C. § 1962 each Defendant has allegedly violated. For example, if Plaintiff intended to rely on § 1962(b), she is required to plead that the purported enterprise affected interstate or foreign commerce.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 25

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Neither these words—nor even the concept ever appear in her Second Amended Complaint. This Court will not require Defendants to proceed with this case, defending against any and all of the provisions of § 1962, with its prejudicial title and its potential for treble damages, in hope that Plaintiff, some day, will decide (and inform Defendants) which provision she believes each has violated.

This Court pointed out this deficiency in its July 8, 2004 Memorandum and Order, believing Plaintiff would heed the Court's advice in properly drafting her Second Amended Complaint. For reasons unknown to the Court, Plaintiff has decided not to identify what provisions of § 1962 she contends each Defendant has allegedly violated. In so doing, Plaintiff has again clearly failed to allege what "conduct" forms a basis for her RICO claim. Defendants' motions to dismiss are also granted on that basis.

3. Plaintiff fails to identify, with sufficient particularity, the alleged racketeering activity of each Defendant.

The Court also finds that Plaintiff has failed to plead, with sufficient particularity, in what alleged racketeering activity each Defendant has purportedly engaged. "Racketeering activity," for purposes of RICO litigation, is defined in 18 U.S.C. § 1961(1). Among the extensive list of actions that can constitute "racketeering activity" are any actions that are indictable under federal mail fraud statutes [FN93] and federal wire fraud statutes. [FN94] Although Plaintiff generically alleges that Defendants committed mail fraud, [FN95] Plaintiff neglected to provide sufficient facts to comply with the heightened pleading requirements of a RICO claim.

FN93. 18 U.S.C. § 1341. This 21 page, 75 paragraph complaint mentions "mail fraud" twice. First, in paragraph 17, it states that "[t]hese entities consistently utilized the U.S. mails and wires to accomplish the goals of their schemes in violation of 18 U.S.C. § 1343 and the Racketering (sic) Influenced and Corrupt organiza-

tions Act, 18 U.S.C. §§ 1961 et. seq. Second, in paragraph 75, it states that there was a "purpose of executing such scheme in violation of the RICO statutes 18 U.S.C. §§ 1961 et seq. and Mail Fraud Statutes 18 U.S.C. § 1343(sic)."

FN94. 18 U.S.C. § 1343.

FN95. Plaintiff alleges that Defendants committed mail fraud, but cites to the federal wire fraud statute in so doing. The Court will assume that the Plaintiff intended to rely on the mail fraud statutes for purposes of this motion, but notes that the result would be the same if Plaintiff in fact intended to cite and rely on the wire fraud statute to establish racketeering activity. That is because she has similarly failed to properly plead any concrete examples of wire fraud.

In the context of a RICO claim based upon mail or wire fraud, "[a] complaint must delineate the specifics of each purported use of the mail and wires, including the time, place, speaker, and content of the alleged fraudulent misrepresentations, as well as the manner in which the misrepresentations were fraudulent." [FN96] "The elements of the offense of mail fraud are: '(1) the devising of a scheme or artifice to defraud or take money or property by false pretenses, representations or promises; (2) the specific intent to defraud; and (3) the use of the United States Mails for the purpose of executing the scheme." ' [FN97] Plaintiff is also required to describe how the particular mailing or transaction furthered the fraudulent scheme. [FN98]

FN96. *Scheiner v. Wallace,* 832 F.Supp. 687, 699–700 (D.S.D.N.Y.1993) (citing *Luce v. Edelstein,* 802 F.2d 49, 54 (2nd Cir.1986); *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2nd Cir.1987)).

FN97. *Kaplan v. Reed,* 28 F.Supp.2d 1191,

1206 (D.Colo.1998) (quoting *United States v. Kennedy,* 64 F.3d 1465, 1475 (10th Cir.1995)).

FN98. *Id. See also Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d at 1218–19 (dismissing RICO claim, holding that bare allegation that a defendant "used mails to defraud customers," without specific references to time and content of such representations, is insufficient).

**\*23** Plaintiff's bare, conclusory allegations that Defendants have violated federal mail fraud statutes, without sufficiently detailing the facts to support the alleged violations, are insufficient to satisfy the pleading requirements of a RICO claim. Simply stating, generically, that Defendants violated 18 U.S.C. § 1343, without providing detailed factual allegations as to which of them used the mails for what purpose at what time, is no more proper in pleading a RICO claim than if Plaintiff had simply plead that Defendants violated RICO without the conclusory "mail" allegation. Plaintiff has failed to plead, with sufficient particularity, that Defendants engaged in "racketeering activity" as defined by Congress in 18 U.S.C. § 1961.

4. Plaintiff has failed to properly plead that Defendants engaged in a pattern of racketeering activity.

Congress has defined a "pattern of racketeering activity" as "at least two acts of racketeering activity...." FN99 Because Plaintiff has failed to properly plead that Defendants engaged in *any* alleged racketeering activity, the Court must, by definition, find that Plaintiff has failed to plead a pattern of such activity. Although Plaintiff has developed fairly lengthy and detailed facts showing various actions by the Defendants as they relate to Plaintiff, the Court finds those facts do not establish a pattern of racketeering activity for purposes of a RICO claim.

FN99. 18 U.S.C. § 1961(5).

C. Plaintiff's RICO complaint should be dismissed

with prejudice.

Certain factors must be considered before dismissing a complaint with prejudice, including (1) the degree of actual prejudice to the defendants, (2) the amount of interference with the judicial process; (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions. FN100 A court must provide its reasoning for dismissing an action. FN101

FN100. *Krueger v. I.R.S.,* 2001 WL 1572322, \*1 (D.N.M.2001) (citing *Jones v. Thompson,* 996 F.2d 261, 264 (10th Cir.1993); *Ehrenhaus v. Reynolds,* 965 F.2d 916, 921 (10th Cir.1992)).

FN101. *Id.* (citing *Dimond v. Allsup's Convenience Stores, Inc.,* 182 F.3d 931 (10th Cir.1999)).

This adversary proceeding has been pending for over 19 months, and its pendency has delayed confirmation of Debtor/Plaintiff's Chapter 13 Plan. All her creditors have been stayed from pursuing collection against her—while they received no disbursement FN102 from the Chapter 13 Trustee—for over 19 months while she failed to plead with specificity. This is prejudicial to the system, and to those creditors who have been stayed while she pursues this action.

FN102. The Court did condition Plaintiff's continued occupancy of the subject real estate, and continued existence of the Chapter 13 proceeding, on making a payment to the Trustee in an amount equal to her mortgage payment. No other creditor is receiving anything while this bankruptcy pends, awaiting the resolution of these claims.

In addition, and probably most importantly, Plaintiff was specifically warned by the Court in its July 2004 order dismissing her first amended com-

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

plaint that her seconded amended complaint had to conform to certain pleading requirements for RICO claims. The Court gave her considerable additional time to discover, then plead, her RICO claims. In addition, this Court carefully outlined what she had to do to successfully plead a RICO claim, yet she knowingly filed a Second Amended Complaint that failed to conform. Most of the defendants in this case have expended extensive litigation resources, because most have had to file three separate motions to dismiss, one after each successive complaint filed. They have had to appear numerous times for hearings in Topeka, where Plaintiff chose to file, notwithstanding that she resides in Kansas City, the real estate that is the subject of the adversary is in the Kansas City area, and most counsel are from the Kansas City area.

**\*24** Although Plaintiff amended her complaint and added certain facts, the Second Amended Complaint is still plagued with the same generalities that the Court previously noted, and that would make defending against that complaint completely unfair to Defendants. Due to the substantially unimproved nature of plaintiff's Second Amended Complaint, the Court has no reason to believe that allowing Plaintiff an additional opportunity to amend the complaint would cure the numerous defects that permeate her pleading. Plaintiff has had months to conduct discovery so that she might have the necessary details to properly plead a RICO cause of action, including two months after the Court denied her First Amended Complaint. The Court can only conclude that the requisite detail does not exist, or Plaintiff would have plead it, since she was fairly warned she would likely not be given another opportunity.

The Court finds if Plaintiff was unable, even after the road map provided by the Court, and after well over a year of discovery, to properly plead a RICO claim in her third attempt in doing so, that it is not fair to Defendants to provide yet another opportunity under the circumstances of this case. In light of the additional resources that would have to

be expended by Defendants, as well as by this Court, in any attempt to decipher the purported wrongs complained of, the Court is simply unwilling to afford Plaintiff a fourth chance to finally articulate a viable theory. Accordingly, after a full review of the *Ehrenhaus* [FN103] factors, the Court concludes that, at this juncture, granting Plaintiff leave to amend yet again would be futile and prejudicial to Defendants.[FN104]

> [FN103]. *Ehrenhaus v. Reynolds,* 965 F.2d at 921.

> [FN104]. Another example of the prejudice that continuing delay will cause specifically relates to Defendant First Union. It brought a foreclosure action as a result of Debtor's non-payment in 2000, and received a judgment of foreclosure. It has been prevented from conducting a judicial sale of the property, and realizing the value of the pledged collateral, because Debtor filed two successive bankruptcy cases (the first of which was previously rather summarily dismissed by another court), and thus the automatic stay has prevented the foreclosure sale. Plaintiff continues to live in the real property. The Court cannot reward Debtor for her failures to properly plead her RICO case by granting yet another opportunity for an amended complaint in light of the five years of delay, and likely thousands of dollars of attorney fees, that she has already caused to First Union. If she had a RICO complaint against First Union, she was compelled to bring it years ago, within the confines of the state court foreclosure proceeding.

**IV. CONCLUSION**

The Court finds that Plaintiff's Second Amended Complaint fails to state a claim for relief under RICO, and should be dismissed. Although the failure to plead any one of the four elements of a RICO claim with the required specificity would have been fatal to Plaintiff's claim, the Court finds

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

that Plaintiff failed to properly plead any of the four elements. In addition, Plaintiff's claim against First Union is also dismissed because it is barred by the principles of issue preclusion and *res judicata*.

Plaintiff has now had three opportunities to file a RICO claim with sufficient particularity to withstand a motion to dismiss. The last of those opportunities occurred after this Court directed her counsel to the pertinent case law and statutory law that governed RICO claims. Furthermore, the Court fairly warned Plaintiff that it was unlikely the Court would allow yet another attempt to amend, given the length of time that has passed since the original Complaint was filed, and given the information provided by the Court, itself, to educate Plaintiff's counsel on the required elements.

Therefore, the Court hereby dismisses Plaintiff's Second Amended Complaint, without leave to amend, and thus with prejudice, rather than allowing an additional opportunity to amend her pleadings. Defendants have been required to defend against three deficient complaints over an extended length of time, and Plaintiff has shown an inability to properly plead.

**\*25** IT IS, THEREFORE, BY THIS COURT ORDERED that Miller Enterprises, Inc. and Jeffrey Miller's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 131), First Union National Bank's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 132), Kozeny & Mc-Cubbin, L.C.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 144), Option One's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 145), BNC Mortgage, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 146), and Adamson and Associates, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 149) are all granted, with prejudice to Plaintiff filing yet another amended complaint. The Court once again dismisses Plaintiff's Second Amended Complaint against Defendant Maplewood Mortgage, Inc. and "Does 1–100" as a result of Plaintiff's failure to serve the Second Amended Complaint on them within the 120 day period allowed by Fed.R.Civ.P. 4(m), which is incorporated into this proceeding by Rule 7004(a), and by her total failure to allege any illegal acts by the "Does 1–100."

IT IS FURTHER ORDERED that this adversary proceeding is dismissed, with prejudice, in its entirety except for the pending motions for sanctions brought by each of the Defendants, which will be decided by later order.

IT IS FURTHER ORDERED the foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed.R.Civ.P. 58 after the Court enters a ruling on the pending motions for sanctions against Plaintiff and her counsel.

10th Cir.BAP (Kan.),2006.
In re Lewis
342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.