# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re                              Chapter 13
Roger Peter Rinaldi and            Case No.  11-35689-svk
Desa Lilly Rinaldi,
               Debtors.

---

Roger Peter Rinaldi, et al.,

               Plaintiffs,

v.                                  Adversary No. 12-2412

HSBC Bank USA, N.A., as Trustee, et al.,

               Defendants.

---

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO DISMISS COMPLAINT AND AMENDED COMPLAINT

Roger Rinaldi ("Mr. Rinaldi") and Desa Rinaldi (with Mr. Rinaldi, the "Debtors") filed this adversary proceeding contending that certain mortgage lenders and their lawyers engaged in a "criminogenic scheme" to defraud investors in a securitized trust and seize the Debtors' residence.  (Complaint, ¶ 77).  The defendants moved to dismiss the Debtors' complaint and amended complaint, and the parties filed briefs.  After considering the arguments presented, the motions to dismiss are granted.  This Memorandum Decision constitutes the Court's findings of fact and conclusions of law.  The Court lacks authority to enter a final order on some of the claims, and, accordingly, this decision constitutes proposed findings and conclusions for consideration by the district court on those claims.

## I.    THE LOAN TRANSACTION AND STATE COURT LITIGATION

Mr. Rinaldi signed an Adjustable Rate Note dated June 10, 2005 (the "Note") in favor of Wells Fargo Bank, N.A. (*Id.*, Exhibit A).  Mr. Rinaldi acknowledged that Wells Fargo could transfer the Note, and he agreed to pay the Note Holder.  (*Id.*).  To secure the Note, the Debtors executed a mortgage dated June 10, 2005 (the "Mortgage"), on their residence located in Bristol, Wisconsin (the "property").  (*Id.*, Exhibit B).  The mortgagee is Wells Fargo Bank, N.A.  The copy of the Note filed in the bankruptcy case is stamped with an undated endorsement signed by Joan M. Mills, as Vice President of Wells Fargo Bank, N.A.:  "Without Recourse Pay to the Order of (blank)." (*Id.*, Exhibit G).

The Debtors defaulted on the Note, and on February 3, 2009, HSBC Bank USA, National Association ("HSBC"), as Trustee for Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates, Series 2005-2, started an action against the Debtors in the Circuit Court for Kenosha County to foreclose the property.  (Affidavit of Stephanie L. Dykeman in support of HSBC's motion to dismiss, Docket No. 41 ("Dykeman Aff."), Exhibit J).  In their answer to the foreclosure complaint, among other defenses, the Debtors disputed HSBC's standing to enforce or collect on the Note, "unless it can be proved that the proper assignments and allonges are present with the original note . . . ." (*Id.*, Exhibit E, ¶ 1).  The Debtors also claimed that there were irregularities in the initiation of the Mortgage transaction, including alteration of the Debtors' loan application.  (*Id.*, Exhibit E, ¶¶ 17-20).  After considering the Debtors' claims and defenses, the state court granted HSBC's motion for summary judgment and entered a foreclosure judgment in HSBC's favor on January 26, 2010.  (*Id.*, Exhibit B).  The Debtors did not appeal the judgment of foreclosure.  On November 12, 2010, the Debtors filed a motion to obtain relief from the foreclosure judgment, and on November 22, 2010, they filed a

2

brief in support of their motion to vacate the judgment. (*Id.*, Exhibit G). On January 6, 2011, the Circuit Court for Kenosha County denied the Debtors' motion to vacate the foreclosure judgment, specifically finding that the affidavits in support of summary judgment were not fraudulent. (*Id.*, Exhibit D).

Despite the contentious proceedings in the Kenosha County Circuit Court, HSBC and the Debtors negotiated and agreed upon a loan modification. As a result, on January 18, 2011, the state court granted HSBC's petition for dismissal of the foreclosure action and vacated the foreclosure judgment. (*Id.*, Exhibit G). The litigation honeymoon was short-lived. On June 10, 2011, the Debtors filed suit in the Circuit Court for Kenosha County against Wells Fargo Bank, HSBC and their lawyers, Gray & Associates, LLP. The Debtors' claims mirrored the claims and counterclaims that the Circuit Court had dismissed in the foreclosure action. (*Id.*, Exhibit H.)

## II.     BANKRUPTCY PROCEEDINGS

On October 14, 2011, the Debtors filed a Chapter 7 petition in this Court. On March 21, 2012, on the Debtors' motion, the Court converted the Debtors' case to Chapter 13. On June 14, 2012, the Debtors filed an objection to HSBC's proof of claim, and on June 17, 2012, the Debtors filed this adversary proceeding against HSBC, as Trustee, Wells Fargo Bank, N.A., Wells Fargo Asset Securities Corporation, Wells Fargo Bank, N.A. d/b/a America's Servicing Company, Litchfield Cavo, LLP, Brad A. Markvart (collectively the "Wells Defendants"), Gray & Associates, LLP, William N. Foshag, Duncan C. Delhey, Jay Pitner and Brian D. Perhach (collectively, the "Gray Defendants").

On June 28, 2012, HSBC filed a motion for relief from stay, and on August 9, 2012, HSBC filed an objection to confirmation of the Debtors' Chapter 13 plan, which proposed to treat HSBC's claim as unsecured. On July 12, 2012, the Debtors filed a motion to disqualify

3

Gray & Associates, LLP and Litchfield Cavo, LLP and any of their attorneys from representing their clients in the bankruptcy proceeding. The Court denied the motion as to Litchfield Cavo, but reserved ruling on the motion as to Gray & Associates.

For purposes of scheduling and disposition, given the identity of the disputes, the Court combined the proof of claim objection, HSBC's motion for relief from stay and objection to confirmation, this adversary proceeding, and all related motions involving the Debtors, the Wells Defendants and the Gray Defendants. As a result, this Memorandum Decision will resolve all disputes among these parties pending in the bankruptcy court.

On August 1, 2012, the Gray Defendants filed a motion to dismiss the complaint. On August 21, 2012, the Wells Defendants filed a motion to dismiss the complaint. On August 23, 2012, the Debtors filed a motion to amend the complaint. The Court denied the motion as untimely as to the Gray Defendants, but granted it as to the Wells Defendants. After two unsuccessful motions for reconsideration of the denial of the motion to amend the complaint, the Debtors appealed. The Gray Defendants filed a motion to dismiss the appeal, but the district court has not issued a decision. No stay pending appeal has been sought, and Bankruptcy Rule 8005 permits this Court to proceed with the merits of this this adversary proceeding.

On October 1, 2012, the Wells Defendants filed a supplemental motion to dismiss the amended complaint. The Debtors responded to the motions to dismiss, and the defendants replied. The Debtors also filed motions to strike certain exhibits attached to the defendants' briefs. The defendants replied to those motions. One of the cases cited by the Gray Defendants was reversed on appeal after the Gray Defendants' brief was filed, and the Court has considered the parties' arguments regarding that case.

4

III.     RELIEF SOUGHT IN THE COMPLAINT AND AMENDED COMPLAINT

Initially, the Debtors ask the Court to determine the validity and enforceability of HSBC's proof of claim. The Debtors' objections to the claim include that the Note lacks consideration; two mortgage assignments are null and void; another mortgage assignment is a forgery or unenforceable because it was not recorded or perfected prior to bankruptcy; HSBC is not the owner or holder of the Note; and the Note image attached to the claim was fabricated to deceive the Court. Along with disallowance of the claim and the security represented by the Mortgage, the Debtors seek a determination that the proof of claim is false, fraudulent and unlawful. The Debtors ask the Court to determine that none of the Wells Defendants has standing or the status of real party in interest to maintain a claim for relief from stay.

The Debtors also accuse the Gray Defendants of common law fraud, abuse of legal process and violations of the Fair Debt Collections Practices Act ("FDCPA"). The Debtors accuse the Wells Defendants of the same, and the amended complaint added a claim for damages for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Specifically against Wells Fargo Bank, N. A., the Debtors assert claims for breach of contract and tortious interference with prospective economic opportunity.

IV.     JURISDICTION

A. General Bankruptcy Jurisdiction

Jurisdiction over bankruptcy cases as well as proceedings arising under the Bankruptcy Code and arising in or related to bankruptcy cases resides in the district court. 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), the district court may refer these cases and proceedings to the bankruptcy judges for the district, and the District Court for Eastern District Wisconsin entered a standing order of reference dated July 10, 1984 to accomplish this referral. Under 28

5

U.S.C. § 157(b)(1), bankruptcy judges may hear, determine and enter final orders in all "core proceedings" arising in a bankruptcy case or arising under the Bankruptcy Code. If a matter is not a core proceeding, but is related to a bankruptcy case, the bankruptcy judge may hear the proceeding, but must submit proposed findings of fact and conclusions of law to the district court for entry of the final order. 28 U.S.C. § 157(c)(1). A list of core proceedings is found in 28 U.S.C. § 157(b)(2). In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court held that even though a proceeding (a counterclaim to a proof of claim) appeared on the list of core proceedings, the bankruptcy judge lacked constitutional authority to enter a final order.

Allowance of proofs of claim falls within the core matters that the bankruptcy court may hear and determine under 28 U.S.C. § 157(b)(2)(B). Unlike the entry of a final order on a state law counterclaim, allowance of claims was not deemed unconstitutional in *Stern*. 131 S. Ct. at 2614. *Stern* reaffirmed that bankruptcy courts have the authority to restructure the debtor-creditor relationship and determine "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id*.; *see also In re Salander O'Reilly Galleries*, 453 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (application of state law to allow claims properly rests in the bankruptcy court). Thus, the Court has authority to finally determine the validity of HSBC's claim.

Similarly, under 28 U.S.C. § 157(b)(2)(G) the Court can hear and determine whether HSBC has standing to seek relief from the automatic stay, a creature of the Bankruptcy Code and fundamental pillar of bankruptcy law. *Stern*, 131 S. Ct. at 2618 (bankruptcy court has constitutional authority over claims when "the action at issue stems from the bankruptcy itself"). And, the Court can determine the validity of HSBC's mortgage lien on the Debtors' residence as property of the bankruptcy estate and as part of the claims allowance process. *See Pulaski v. Dakota Fin., LLC (In re Pulaski),* 475 B.R. 681, 687 (Bankr. W.D. Wis. 2012) ("In the present

6

case, the defendant filed a proof of claim in which it alleges that its claim is secured by an interest in the debtors' homestead pursuant to Wisconsin law. The question of the secured nature of that claim is now 'part of the claims allowance process' and subject to resolution by the bankruptcy court.").

The remaining claims do not fall within the core authority of this Court to hear and determine. Although not couched as counterclaims to HSBC's proof of claim, the Debtors' common law fraud and federal FDCPA and RICO claims are analogous to the claims made in *Stern*. They are not claims arising under the Bankruptcy Code and could be brought (and in fact some were brought) outside the bankruptcy court.

The Debtors contend that all of their claims are core as defined in 28 U.S.C. § 157(b), but they fail to explain how. For example, the Debtors contend that the Gray Defendants filed a fraudulent mortgage assignment in the state court foreclosure case, and allege that this is a core proceeding because it involves the administration of the bankruptcy case. But this claim does not stem from the bankruptcy itself nor will it necessarily be resolved in the claims allowance process. *See Burns v. Dennis (In re Southeastern Materials, Inc.)*, 467 B.R. 337 (Bankr. M.D.N.C. 2012) (adopting two-prong test for determination of whether bankruptcy judge can enter final order). The only relationship the allegedly fraudulent assignment bears to the Debtors' bankruptcy case is that the Debtors have filed bankruptcy, and presumably, any money damages awarded would increase the funds in the Debtors' estate. This is not sufficient to confer core status on this claim. *See Stern*, 131 S. Ct. at 2618 (proceedings to "augment the bankruptcy estate" are not necessarily core). To the extent that the Debtors argue that the attachment of the allegedly false assignment to HSBC's proof of claim converts this claim into a core proceeding over which this Court can issue a final order, they are mistaken. *See Ortiz v. Aurora Health*

7

*Care, Inc.*, 665 F.3d 906, 912 (7th Cir. 2011) (absent consent of the parties, bankruptcy court could not enter final order on debtors' complaint that attachments to proof of claim violated medical privacy statute).

As noted above, bankruptcy judges can hear non-core proceedings that are "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). In such instances, "any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." *Id.* Notwithstanding this provision, the parties can consent to the bankruptcy judge's authority to enter a final order in a non-core proceeding. *See Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*, 702 F.3d 553 (9th Cir. 2012) (implying consent to bankruptcy court's authority to issue final order in fraudulent transfer proceeding). While they have not expressly objected to this Court's entry of a final order, the defendants have argued that the claims against them are not core proceedings and have suggested that the Court should abstain. This posture shows that the defendants do not consent to this Court's entry of a final order on the non-core proceedings. *See Ortiz*, 665 F.3d at 915 (debtors' request for abstention in favor of state court proceeding indicated they did not consent the bankruptcy court's entry of final order).

When faced with a combination of core and non-core claims, "the better approach in a mixed core and non-core proceeding is for the bankruptcy court to determine the extent of its jurisdiction with respect to each claim. It should then enter a final judgment with respect to only those claims that are truly core matters and should forward a report and recommendation to the district court on the non-core but 'related to' claims." *Massey v. Baker O'Neal Holdings, Inc.*, 2004 U.S. Dist. LEXIS 2003,*11 (S.D. Ind. Jan. 28, 2004) (citing *Halper v. Halper*, 164 F.3d

8

830, 839 (3d Cir. 1999)).  *See also O'Toole v. McTaggart (In re Trinsum Group, Inc.)*, 467 B.R.

734 (Bankr. S.D.N.Y. 2012) (addressing the procedure when some, but not all, defendants

consent to bankruptcy court's entry of final order).  Consistent with this approach, this Court will

endeavor to separate the core and non-core claims, entering a final order only on the core claims,

and making recommendations to the district court on the non-core claims.

B.  Jurisdictional Issues Created by *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine prohibits "state-court losers complaining of injuries caused

by state-court judgments" from inviting federal court review and rejection of such judgments.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The *Rooker-Feldman*

doctrine is jurisdictional in nature; its applicability must be determined before any other

affirmative defense, including claim preclusion.  *Long v. Shorebank Dev. Corp.*, 182 F.3d 548,

554-55 (7th Cir. 1999) (citing *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)).  "In certain

circumstances, where a federal suit follows a state suit, the *Rooker-Feldman* doctrine prohibits

the district court from exercising jurisdiction."  *Great Western Mining & Mineral Co. v. Fox

Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010).

The *Rooker-Feldman* analysis applies in bankruptcy court adversary proceedings.

*Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573, 581 (3d Cir. 2005) (citing *Baldino

v. Wilson (In re Wilson)*, 116 F.3d 87 (3d Cir. 1997)).  Courts have applied the doctrine to bar

collateral attacks on state court foreclosure judgments.  *Kline v. Deutsche Bank Nat'l Trust Co.

(In re Kline)*, 472 B.R. 98, 105 (B.A.P. 10th Cir. 2012).  And some courts have dismissed claims

similar to the Debtors' claims, based in part on the *Rooker-Feldman* doctrine.  *See Washington v.

Saxon Mortg. Servs. (In re Washington)*, 469 B.R. 587, 590 (Bankr. W.D. Pa. 2012) (holding that

debtor did not have standing to challenge mortgage based on pooling and servicing agreement,

9

and, if debtor did have standing, claims should have been raised in foreclosure case and were barred by *Rooker-Feldman*); *Mayeres v. BAC Home Loans*, 2011 Bankr. LEXIS 2793 (Bankr. D.N.J. July 21, 2011) (abstaining based on *Rooker-Feldman* from debtor's complaint seeking invalidation of mortgage and disallowance of mortgage claim).

In assessing the applicability of the *Rooker-Feldman* doctrine, the fundamental question is "'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002) (citing *Rizzo v. Sheahan*, 266 F.3d 705, 713 (7th Cir. 2001)). "[I]f the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker-Feldman* doctrine does not apply, although the doctrines of claim and issue preclusion may be applicable." *Long*, 182 F.3d at 555 (quotations and citations omitted).

The Debtors' claims in this adversary proceeding are virtually the same claims they advanced in the state court foreclosure action. To the extent the claims are not the same, they appear to be "inextricably intertwined" with those claims. However, after the state court rejected the Debtors' claims and entered a judgment of foreclosure, the Debtors and HSBC entered into a loan modification agreement, and the foreclosure judgment was vacated.

The defendants argue that the judgment remains viable for preclusion purposes, citing *Kowske v. Ameriquest Mortg. Co.*, 2009 WI App 45, 317 Wis. 2d 500, 767 N.W.2d 309. In *Kowske*, a mortgage creditor obtained a default judgment of foreclosure. During the redemption period, the debtor sold the property and paid the mortgage, "without ever challenging or moving to set aside the default judgment." *Id.* at ¶ 22. Upon payment of the mortgage, the mortgage creditor sought and obtained an order vacating the judgment of foreclosure and dismissing the case. Two years later, the debtor sued the mortgage creditor for unfair trade practices and

10

alleged misrepresentations during the mortgage application process. The court of appeals upheld

the dismissal of the debtor's suit on claim preclusion grounds, holding:

> [T]he order dismissing the action based on Kowske's payment of the mortgage
> was a final judgment on the merits in the foreclosure action. Ameriquest's actions
> to clear the title were based on Kowske's acceptance of the rights Ameriquest
> established in the foreclosure action. The order dismissing the judgment of
> foreclosure was not based on an error in the original judgment of foreclosure, but
> rather on the successful attainment of the judgment of foreclosure and the
> subsequent payment of the mortgage by Kowske. That trial court order ended
> litigation between the parties concerning the mortgage and foreclosure, and
> neither party appealed from that order.

*Id.* at ¶ 24.

This case is different. Rather than a payment and satisfaction of the mortgage, the

Debtors and HSBC entered into a loan modification agreement, effectuating a settlement of the

claims and counterclaims raised in the foreclosure case. The foreclosure judgment was not

vacated because the Debtors had paid and satisfied the mortgage, but rather because HSBC

agreed to reinstate the mortgage debt and accept modified payment terms. The Debtors had

moved for relief from the foreclosure judgment, and the appeal period on the denial of that

motion had not expired when the parties entered into the loan modification agreement. The order

dismissing the foreclosure action thus did not represent the "successful attainment of the

judgment of foreclosure," but rather a settlement under which that judgment was vacated.

Although it is arguable that the foreclosure judgment that was later settled and vacated is a final

judgment for claim preclusion purposes, this Court will assume that the *Rooker-Feldman*

doctrine does not apply to bar the Court's exercise of jurisdiction under these unique

circumstances.

11

C.  Standard on Motion to Dismiss

Motions to dismiss bankruptcy adversary proceedings are governed by Bankruptcy Rule 7012, incorporating Federal Rule of Civil Procedure 12.  Federal courts are familiar with Rule 12(b)(6) motions for failure to state a claim upon which relief can be granted.  In *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009), the court of appeals summarized the applicable legal standards to judge whether a complaint should be dismissed under Rule 12(b)(6):  "First, a plaintiff must provide notice to defendants of her claims.  Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim.  Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."

Additionally, since the Debtors allege that the defendants committed fraud, Bankruptcy Rule 7009, incorporating Federal Rule of Civil Procedure 9(b) requires the Debtors to "state with particularity the circumstances" constituting the fraud.  And, in *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010), the court of appeals noted:  "[A] plaintiff must plead actual damages arising from her reliance on a fraudulent statement."  After applying these standards, the Debtors have failed to state a claim upon which relief can be granted, and their adversary proceeding should be dismissed.

V.      ANALYSIS

A.  The Proof of Claim and Standing of the Wells Defendants to Seek Relief From Stay

The Debtors' amended complaint seeks disallowance of HSBC's proof of claim on various theories that can be crystallized as (1) the Note is invalid; and (2) various assignments of

the Mortgage are invalid.  Starting with the Note, some of the Debtors' arguments border on frivolous, others have more substance, but, in the end, they all fail.

    1.   <u>The Note is Valid and Enforceable by HSBC</u>.

In the frivolous category, the Debtors contend that neither Wells Fargo nor HSBC loaned the Debtors any money, but rather that the Debtors' mortgage transaction was part of an elaborate scheme to defraud investors in a securitized trust.  Due to this duplicitous design, the Debtors conclude that the Note fails for lack of consideration.  But Mr. Rinaldi executed the Note under seal, which is conclusive proof of consideration.  *See Edwards v. Petrone*, 160 Wis. 2d 255, 258, 465 N.W.2d 847 (Ct. App. 1990) (presence of a seal establishes consideration for executed contracts).

Claiming that the Note's endorsement is either invalid or fraudulent, the Debtors also argue that HSBC is neither an owner nor holder of the Note.  Similar defects in a promissory note were alleged in *Edwards v. Deutsche Bank Nat'l Trust Co. (In re Edwards)*, 2011 Bankr. LEXIS 5065 (Bankr. E.D. Wis. Dec. 23, 2011).  The *Edwards* court first analyzed whether the promissory note was a negotiable instrument governed by Article 3 of the Uniform Commercial Code.  *See* Wis. Stat. §§ 403.102-.403.605.  The court concluded that under the definition of negotiable instrument in Wis. Stat. § 403.104(1), there was "no question of negotiability" under Wisconsin law.  *Id.* at *16.  The note "contains the debtor's written promise to pay a fixed amount of money; it is payable at a definite time, that is on a monthly schedule; and the Note does not state any other undertaking."  *Id.*  The Note signed by Mr. Rinaldi also meets these requirements.

In *Edwards*, the debtor argued that the pre-payment provisions rendered the note non-negotiable, but the court rejected the argument.  In the end, the court authorized the creditor, as a

13

holder of the note, to enforce it, despite the debtor's challenges to the creditor's signature and endorsements. Apparently the promissory note in *Edwards* had a fixed interest rate, while the Note in this case has an adjustable interest rate. But Wis. Stat. § 403.112 provides that interest may be stated as a fixed or variable rate, and that determination of the interest rate may include reference to information not contained in the instrument. Accordingly, the adjustable interest rate does not prevent the Note from qualifying as a negotiable instrument. The other requirements of negotiability are met, and, like in *Edwards*, the Note is a negotiable instrument, entitled to all the benefits of that status under Wisconsin law.

The Debtors accuse the defendants of producing "the forged endorsement to the mortgage note robo-stamped bearing the signature of Joan M. Mills to mislead this court into believing that the note had been timely, properly and authentically endorsed in blank after the commencement of [the foreclosure action]." (Complaint, ¶ 91(b)(6)). First, Mr. Rinaldi executed the Note, and he does not dispute that his signature on the Note is genuine. Ms. Mills' signature on the endorsement is deemed authentic and not subject to challenge by the Debtors. *Edwards*, at * 21, citing Wis. Stat. § 403.308(1).

Second, the Debtors' insinuation that Wells Fargo endorsed the Note after the foreclosure proceeding is irrelevant to the determination of the validity of the proof of claim. The copy of the Note attached to the proof of claim contains the endorsement in blank. There is no requirement that an endorsement be dated. *Edwards*, at *21-22, citing Wis. Stat. § 403.204(1). As the bearer of a note endorsed in blank, HSBC is a holder of the Note, and HSBC is entitled to enforce the Note against Mr. Rinaldi. *See* Wis. Stat. §§ 403.205; 403.301. The Debtors complain about the apparent lack of the endorsement in the state court foreclosure; but the state court was the forum to raise that argument. The issue in this adversary proceeding is the validity

14

of the proof of claim. The Note attached to the claim is endorsed in blank and the Debtors lack

standing to challenge the validity or timing of the endorsement. Therefore HSBC has standing to

file the claim to enforce the Note.

Since Mr. Rinaldi executed the Note, a negotiable instrument under Wisconsin law, and

the Note was endorsed in blank, HSBC, as bearer of the Note, is entitled to enforce it against Mr.

Rinaldi. The Court rejects the Debtors' arguments about the invalidity of the Note, and will not

disallow, deem fraudulent or otherwise invalidate HSBC's proof of claim based on those

arguments.

> 2. The Mortgage Assignments do not Invalidate the Proof of Claim.

The Debtors also attack the mortgage based on faulty assignments and invalid and

incomplete transfers to a securitized trust. Arguments based on questionable mortgage

assignments also were considered and rejected in *Edwards*, based on the doctrine of "equitable

assignment." Under this common law doctrine, the holder of the Note is entitled to enforce the

mortgage. As the *Edwards* court explained:

> This doctrine recognizes that "[t]he note and mortgage are inseparable; the former
> as essential, the latter as an incident. An assignment of the note carries the
> mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter
> v. Longan*, 83 U.S. 271, 274 (1873). The debt is the principal thing, to which the
> security instrument is an incident thereof. *Cf. Doyon & Rayne Lumber Co. v.
> Nichols*, 196 Wis. 387, 390, 220 N.W. 181 (1928); *Mitchell Bank v. Schanke,*
> 2004 WI 13, 268 Wis. 2d 571, 597, 676 N.W.2d 849, 858. Under this view, long
> established in Wisconsin law, the Mortgage is equitably assigned when the Note
> is endorsed and negotiated to its current holder.

*Edwards*, at *22-23.

Quoting *Tidioute Savings Bank v. Libbey*, 101 Wis. 193, 77 N.W. 182, 183 (1898), the

court noted that the debtor is not prejudiced by this doctrine because, "He has agreed that the

15

security shall stand for the payment of the debt, and it is of no consequence to him to whom it is paid. He has to pay it but once." *Edwards*, at *24. Under this doctrine, HSBC, as transferee of the Note, is entitled to enforce the Mortgage.

Wells Fargo assigned the Mortgage to HSBC. Three assignment documents exist: September 14, 2005 (unrecorded); March 1, 2010 (recorded April 5, 2010); and October 31, 2011 (recorded November 1, 2011) (Complaint, Exhibits C, D, E). The Debtors vehemently protest the fact that no assignment was recorded until after the foreclosure proceeding commenced. First, the timing with respect to the foreclosure case is irrelevant to the validity of HSBC's proof of claim in this bankruptcy case. The assignment was executed prior to the bankruptcy petition, and one of the assignments was recorded prior to the petition. The Debtors had the opportunity and indeed raised HSBC's standing in the foreclosure action. If the state court had agreed with the Debtors on this issue, the result might have been different and the Debtors could have questioned the proof of claim. But the state court entered a judgment of foreclosure in favor of HSBC, and now HSBC has filed a proof of claim asserting its rights to a security interest in the property. HSBC is the holder of the Note, and is the named assignee of the Mortgage according to an attachment to the proof of claim. As holder of the Note, HSBC is entitled to enforce the Mortgage. The Court rejects the Debtors' arguments that the claim is fraudulent or should be disallowed based on the assignments.

Moreover, defects in the transfer of the Note to the Wells Fargo Asset Securities Corporation Home Equity Asset-backed Certificates Series 2005-2 Trust (or any similarly named entity) (the "Trust") do not render the Mortgage unenforceable, the Note invalid or the proof of claim fraudulent. It is well-settled that a borrower lacks standing to challenge the validity of a loan assignment based on issues related to a Pooling and Servicing Agreement ("PSA"), because

16

a borrower is neither a party to the PSA nor a third party beneficiary. *See, e.g., In re Sandford*, 2012 Bankr. LEXIS 5609, *9-10 (Bankr. D.N.M. Dec. 3, 2012) (citing numerous cases, including *Edwards*).

Whether due to HSBC's status of holder of the Note, the doctrine of equitable merger, or the Debtors' lack of standing to challenge the Mortgage due to alleged irregularities in the PSA, the Court concludes that the Mortgage is valid and enforceable by HSBC. The Court rejects all of the Debtors' arguments challenging the proof of claim due to alleged deficiencies in the assignments or breaches of or other matters concerning the PSA or the Trust.

        3.    <u>HSBC has Standing to Seek Relief from Stay</u>.

The threshold for standing to seek relief from stay is that the moving creditor has a "colorable claim" to property of the estate. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33-34 (1st Cir. 1994) (citing *In re Vitreous Steel Products Co.*, 911 F.2d 1223 (7th Cir. 1990)). Hearings on motions for relief from stay are intended to be summary proceedings in which the bankruptcy court decides only a limited set of issues: whether the creditor is adequately protected; equity in the property; and necessity of the property for reorganization. *See* 11 U.S.C. § 362(d). Given these parameters, a bankruptcy court's decision to modify the stay "is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere." *Grella*, 42 F.3d at 34. Having determined that HSBC is the holder of the Note, and that the holder is entitled to enforce the security for the Note, in this case, the Mortgage, it follows that HSBC has a colorable claim and may seek relief from the stay. *See In re Vogler*, 2009 Bankr. LEXIS 3859, *9 (Bankr. M.D.N.C. Nov. 25, 2009) (transferee of promissory note secured by deed of trust had colorable claim to the note and standing to seek enforcement of the note and deed of trust). The Court

rejects the Debtors' arguments that due to its alleged faulty mortgage assignments and invalid Note, HSBC lacks standing to seek relief from stay.

The Debtors' requests for relief in paragraph 2a, 2b, 2d, 2e, 2f, 2g, 2h, 2i, 2j, and 2k of the amended complaint all seek disallowance of HSBC's proof of claim under various theories, and damages and sanctions for perceived injuries arising from the allegedly false proof of claim. Paragraph 2c seeks a determination that none of the financial institution defendants have standing or status as a real party in interest to seek relief from stay. For the reasons stated, the Debtors' requests for disallowance, determinations of fraud, damages and other relief related to the proof of claim are denied. The Court accepts the defendants' arguments that the Debtors' allegations related to the proof of claim and standing of HSBC to obtain relief from stay fail to state claims upon which relief may be granted. The Court will enter a final order allowing HSBC's claim and confirming HSBC's standing to file a motion for relief from stay.

### B. Violation of RICO

The amended complaint seeks damages against the Wells Defendants for violation of 18 U.S.C. §§ 1961-1968, the Racketeer Influenced and Corrupt Organizations (RICO) act. (The Court did not allow the amendment of the complaint to raise these allegations against the Gray Defendants, but given the deficiencies in the Debtors' RICO claims, in all likelihood those claims would not have survived the Gray Defendants' motion to dismiss.) "RICO makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . . In addition to an impact on interstate or foreign commerce, a civil RICO claim is required to set forth the four requirements of 18 U.S.C. § 1962(c) and the two requirements of 18 U.S.C. §

18

1964(c). Additionally, the statute of limitations for a RICO claim is four years from the date the plaintiff knew it was injured." *Cowan v. MTGLQ Investors, L.P.*, 2010 U.S. Dist. LEXIS 95970, *6-7 (M.D. Fla. Sept. 14, 2010) (internal quotations and citations omitted). The four requirements of § 1962(c) are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity; and the two requirements of § 1964(c) are (1) the requisite injury in plaintiff's business or property, and (2) that such injury was "by reason of" the substantive RICO violation. *Id.*

The Debtors do not cite a single case in which a residential mortgage lender or its attorneys have been found to have violated RICO by engaging in the lending and enforcement actions that occurred here. On the other hand, the Wells Defendants point to several cases in which courts rejected RICO claims by homeowners facing foreclosure.

The Debtors' first alleged racketeering enterprise is detailed in paragraph 65 of the amended complaint: "Wells Fargo Bank, N.A. acted in concert with its alter-ego Wells Fargo Asset Securities Corporation and under the name of HSBC Bank USA, N.A. to defraud homeowners into signing documents which were the basis for obtaining financing from the sale of certificates of beneficial interest in the purported REMIC Trust under false pretenses to both the investors and the homeowners." But Mr. Rinaldi signed the Note in 2005, and if the racketeering enterprise consisted of enticing him to sign a Note to defraud investors in the Trust, the statute of limitations has expired.

Even assuming that the claim is timely, there are other considerable flaws in the Debtors' claim. The Debtors and the defendants were involved in only one loan transaction; a single transaction does not constitute a pattern and cannot constitute a violation of RICO. *Tucker v. Bank One, N.A.*, 265 F. Supp. 2d 923 (N.D. Ill. 2003). The Debtors have not definitively

19

identified specific individuals who orchestrated this alleged fraudulent scheme and have not identified with particularity the predicate acts constituting the racketeering activity. "In RICO, the plaintiff must go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communication perpetrating the fraud." *United States Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1268 n.6 (7th Cir. 1990) (quoting *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 291 (1st Cir. 1987)); *see also Freedom Mortg. Corp. v. Burnham Mortg*., Inc., 720 F. Supp. 2d 978, 994 (N.D. Ill. 2010) (in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud). The Debtors' allegations, although lengthy, are too vague and opaque to meet the pleading standards for a RICO claim. The alleged invalidity of the Trust and breaches of the PSA in fraud of the investors in the Trust cannot form the basis of the Debtors' fraud claims. As noted above, the Debtors were neither parties to nor third-party beneficiaries of the PSA and certainly were not beneficiaries of or investors in the Trust.

The Debtors' other RICO claims fail for similar reasons. These include that the defendant financial institutions and their attorneys conspired to create forged documents and transmit them through the mail and by wire for the purpose of seizing the Debtors' home. (Amended Complaint, ¶ 94). The Debtors allege that "forged and fabricated documents" were filed by mail and wire in state and federal courts. (*Id*., ¶ 95). Even if the Debtors identified with particularity which defendants performed the particular acts of alleged forgery, the Court has previously addressed the Debtors' lack of standing to challenge the endorsement on the Note. The signature on the endorsement is presumed genuine, and, since the Debtors do not dispute the validity of Mr. Rinaldi's signature, the Note is valid and effective. Under the doctrine of equitable assignment, the Mortgage follows the Note, and is equally enforceable by HSBC, the

holder of the Note. The filing of HSBC's proof of claim was not a false or fraudulent act as detailed above. The claim is a legitimate, allowable proof of claim for the Mortgage debt in this Chapter 13 case.

In, paragraph 96 of their amended complaint, the Debtors attempt to detail the elements of their RICO claim. In paragraph 96(a)(1), the Debtors contend that the Note filed in the state court foreclosure was not endorsed. But the Debtors expressly challenged HSBC's standing in the foreclosure case, and the state court rebuffed their challenge. After losing the standing argument in state court, it is beyond frivolous for the Debtors to file bankruptcy, reiterate the same losing arguments and now claim, not only that the Note is invalid, but that the foreclosing creditor and its attorneys are liable for RICO violations for filing the Note as an exhibit to the foreclosure complaint.

Paragraph 96(a)(2) alleges that the defendants violated RICO by filing a copy of the endorsed Note in the bankruptcy case after filing a copy without the endorsement in the state foreclosure case. In the context of this adversary proceeding, the argument is nonsensical. Under Wisconsin law, an endorsement can be undated. Since the dating of the endorsement is not required, it does not matter for purposes of this bankruptcy case when Wells Fargo endorsed the Note. And it apparently did not matter for purposes of the state court foreclosure, because that court entered a judgment against the Debtors, and refused to modify that judgment, even after the Debtors claimed that the Wells Defendants used fraudulent affidavits.

In paragraph 96(b), the Debtors allege that the Wells Defendants used forged and fabricated mortgage assignments "to make it appear that mortgage had been assigned to HSBC." The Debtors' claims are groundless. As the holder of the Note, HSBC could enforce the Mortgage. Moreover, all three assignments assign the Mortgage from Wells Fargo to HSBC.

21

There is nothing fabricated or fraudulent about them.  Mr. Rinaldi agreed to pay the Note, and acknowledged that Wells Fargo could transfer the Note.  The Debtors are not prejudiced by the transfer of the Note or assignment of the Mortgage, and it is not a violation of RICO for Wells Fargo to assign the Mortgage to HSBC.

In paragraph 96(c), the Debtors turn their attention to the lawyers.  The Debtors claim that the attorneys who signed pleadings on behalf of HSBC violated RICO, because the Note was not endorsed and the Mortgage assignment was not recorded.  An attorney allegedly violated RICO by telling the state court that the Debtors admitted that HSBC had standing.  The same attorney violated RICO by arguing to this Court that the Debtors valued their claim against the defendants at $1.00 in their Chapter 7 bankruptcy schedules.  (The utter senselessness of this accusation is borne out by the facts that (1) the Debtors indeed used this value in their sworn bankruptcy schedules; and (2) the Chapter 7 trustee filed a report stating that there were no assets available in this case for creditors, evidencing that the trustee agreed with the valuation of the Debtors' claims.)  Another attorney "implied" that res judicata applied to the state court's foreclosure judgment, even though the underlying foreclosure case was dismissed.  The attorneys who prepared HSBC's proof of claim violated RICO by attaching the Note with the "robo-stamped" signature of Joan M. Mills on the endorsement.  The Debtors' claims against the attorneys are completely and utterly meritless.  Mr. Rinaldi signed the Note and agreed that Wells Fargo could transfer it.  HSBC has now produced a copy of the Note with an endorsement in blank.  The Debtors still own the property; HSBC was willing to modify the payment terms of the Debtors' Mortgage to permit them to retain it.  Under these circumstances, the attorneys' statements made in pleadings and open court do not violate RICO.

In summary, to the extent the alleged RICO enterprise is the enticement of Mr. Rinaldi into a loan transaction in order to defraud investors in the securitized trust, the statute of limitations may well have expired. Even assuming the RICO claim is timely, the Debtors have failed to specifically identify the individuals who orchestrated this alleged fraudulent scheme and have not identified with particularity the predicate acts constituting the racketeering activity. There is only one mortgage transaction leading to one foreclosure case and one proof of claim. Thus the Debtors have failed to allege a pattern that could constitute a RICO violation. The allegedly fraudulent Note is valid and enforceable, and the Mortgage assignments are legally sufficient. The statements of attorneys in representing their clients in enforcing the Note and Mortgage, including by attaching the Note, Mortgage and Assignments to the foreclosure complaint and proof of claim, do not violate RICO. The allegedly fraudulent scheme has not caused the Debtors any damages: they are still living in their residence. The Court concludes that all of the Debtors' RICO claims should be dismissed, and recommends that the district court enter a final order dismissing those claims.

C. Abuse of Process

Related to their RICO claims, the Debtors contend that the defendants abused legal process in creating and using forged documents to further the fraudulent securitization scheme. Abuse of process occurs when a person "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." *Brownsell v. Klawitter*, 102 Wis. 2d 108, 114, 306 N.W.2d 41 (1981) (quoting Restatement (Second) of Torts § 682 (1977)). A plaintiff may not recover for abuse of process unless he shows "some definite act or threat not authorized by the process; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad

23

intentions." *Tower Special Facilities, Inc. v. Investment Club, Inc.*, 104 Wis. 2d 221, 229, 311 N.W.2d 225 (Ct. App. 1981) (quoting *Thompson v. Beecham*, 72 Wis. 2d 356, 362, 241 N.W.2d 163 (1976)). The Restatement notes that "the usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or take some other action or refrain from it." Restatement, *supra*, § 682 cmt. b.

The Debtors have failed to allege any "definite act or threat" not authorized by the process. For example, the Debtors accuse one of the attorneys of stating that the Debtors did not contest HSBC's standing in the foreclosure action, and they accuse the defendants of "ultimately extort[ing]" a loan modification agreement after the entry of the foreclosure judgment. (Complaint, ¶ 79; Amended Complaint, ¶ 88). Those allegations lack any suggestion of a definite act or threat to accomplish the alleged extortion.

Moreover, the statements made by the attorneys and the parties in the foreclosure action and in the bankruptcy case are protected by the litigation privilege. As explained by the Wisconsin Supreme Court in *Bergman v. Hupy*,

> [P]arties and counsel are immune from liability for relevant statements in pleadings and otherwise in the course of judicial proceedings. This absolute privilege as to statements made during judicial proceedings has been summarized to be: Parties to judicial proceedings are absolutely exempt from responsibility for libel on the ground of privilege for any defamatory matter published in the course of judicial proceedings, subject to the possible qualification that such defamatory matter is pertinent or relevant to the case.

64 Wis. 2d 747, 750, 221 N.W.2d 898 (1974) (internal quotations and citations omitted). "This does not mean, of course, that parties or their counsel can use judicial proceedings as a shield to recklessly and wantonly besmirch the character of third parties or opposing parties by oral or written statements having no relation to the issues involved." *Bussewitz v. Wisconsin Teachers'*

24

*Ass'n,* 188 Wis. 121, 124, 205 N.W. 808 (1925) (general rule that parties are not, in all cases, absolutely exempted from liability; rather, must be "pertinent and relevant" to the issues to qualify); *see also Rady v. Lutz,* 150 Wis. 2d 643, 444 N.W.2d 58 (Ct. App. 1989) (statements that are plainly irrelevant and impertinent and voluntarily made not privileged). The statements made by counsel (the Debtors did not challenge standing; the Debtors valued the claim at $1; HSBC has standing to sue for foreclosure) and the parties (in exhibits attached to the foreclosure complaint and proof of claim) all were pertinent and relevant to the collection of the Note and enforcement of the Mortgage. These statements and others claimed by the Debtors to exemplify abuse of process are protected by the absolute litigation privilege.

In short, whether for their failure to identify a definite act or threat constituting abuse of process or because any statements that allegedly constituted such a threat would be protected by the litigation privilege, the Debtors' complaint and amended complaint fail to state a claim for abuse of process. The Court recommends that the district court enter a final order dismissing the Debtors' claims.

D.  Violation of FDCPA

The purpose of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 – 1692p, is to protect debtors from certain abusive debt collection practices. The Debtors claim that the defendant law firms and attorneys are debt collectors as defined by 15 U.S.C. § 1692a(6), and that they filed false, deceptive, misleading and perjured documents in connection with the collection of the Debtors' debt in violation of 15 U.S.C. § 1692e. The defendants contend that they are not "debt collectors" for purposes of the FDCPA. This Court agrees.

Section 1692a(6) defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection

25

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." Courts have interpreted the latter sentence to mean that a person enforcing security interests is not bound by the FDCPA except as described in § 1692f(6). That section prohibits a debt collector from taking or threatening nonjudicial action to repossess property if there is no present right or intent to take the property or the property is exempt from repossession.

In *Kaltenbach v. Richards*, 464 F.3d 524, 527 n.3 (5th Cir. 2006), the Fifth Circuit recognized the "distinction between general debt collection and enforcement of a security interest," and observed: "By the plain language of [§ 1692(a)(6)], . . . a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6)." *See also Montgomery v. Huntington Bank*, 346 F.3d 693, 699-700 (6th Cir. 2003) (repossession agency that was not otherwise a debt collector was subject only to § 1692f(6)); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices."); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1210 (D. Or. 2002) (actions taken by attorneys as part of foreclosure of trust deed "may not be challenged as FDCPA violations").

In this case there are no allegations that the law firms or individual attorneys engaged in any debt collection activities other than non-deficiency foreclosure of the Debtors' residence, and therefore they do not qualify as debt collectors under the FDCPA. Since they are not debt collectors, they are not liable for any alleged breaches of the FDCPA. The Court recommends

26

that the district court enter a final order dismissing the Debtors' claims against the defendants for violations of the FDCPA.

    E.  <u>Common Law Fraud</u>

The Debtors accuse the defendants of fraud. While the complaint and amended complaint are difficult to follow, the Court has identified four potential fraud claims. First, a loan broker connected to Wells Fargo fraudulently induced Mr. Rinaldi to enter the loan transaction using an inflated appraisal and adding a bank account to the loan application after Mr. Rinaldi signed it. Second, the purpose of the loan transaction was to defraud the investors in the Trust. Third, HSBC filed its foreclosure complaint when it lacked standing to do so. And fourth, the law firm and attorney defendants filed false pleadings in the foreclosure action (the Note that lacked the endorsement) and bankruptcy case (the proof of claim alleging HSBC's standing and the Mortgage assignments).

The fraud claims against the law firm and attorney defendants should be dismissed for reasons already discussed. The litigation privilege protects pertinent, relevant statements made by counsel in the course of litigation, and all of the statements alleged to have been made by these attorneys were pertinent and relevant. For example, it is not fraud for an attorney to state on the record in open court that the Debtors have valued an asset at $1 in their bankruptcy schedules, even if the attorney knows that the Debtors allegedly made a mistake in that valuation and meant to say "unknown." Similarly, an attorney reported to the Court that he did not believe the bankruptcy of Residential Capital, LLC and its affiliates acted to stay the Debtors' claims against the defendants. This is not fraud. Moreover, the Debtors have not stated that they relied on any of the attorneys' statements to their detriment. Whether because they have not shown facts sufficient to state a claim for fraud or because all of the statements made by the lawyers in

27

the context of litigation are absolutely privileged, the fraud claims against the law firm and attorney defendants should be dismissed.

The claims for fraudulent inducement into the loan transaction also fail. The Debtors must allege fraud with particularity. Fed. R. Bankr. P. 7009(b). The Debtors have not done so, and in fact a critical allegation is made "on information and belief." Paragraph 80 of the amended complaint states: "Upon information and belief, the Wells Fargo Home Mortgage Inc. loan broker knew that the appraisal would be 'fixed' in order to make it appear that there was equity in the property which the Plaintiffs ultimately acquired due to the Wells Fargo/HSBC securitization scheme and, therefore, no cash was required for a down payment on the property." In *Capital One Bank v. Bungert (In re Bungert)*, 315 B.R. 735, 740 (Bankr. E.D. Wis. 2004), this Court analyzed a credit card provider's complaint that the debtors committed fraud prior to bankruptcy and noted:

> Moreover, Capital One has pled certain allegations, including that the debtors purchased luxury goods with the credit card and knew that their representations were false, "upon information and belief." Such statements are totally insufficient to sustain a *prima facie* case of fraud. Judge Posner called such allegations "clearly improper locution under the current federal rules, which impose (in the amended Rule 11) a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch . . . [T]he duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on 'information and belief' unless they were facts inaccessible to the plaintiff in which event he had to plead the grounds for his suspicions." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992) (citations omitted).

Just as the creditor in *Bungert* was required to plead more than a hunch that the debtors had fraudulently purchased items on credit, the Debtors here must provide more than speculation that the mortgage broker (or someone else) inflated the appraisal. The Debtors do not specify who made a false representation with the intent to defraud them. They allege that when Mr. Rinaldi said that he did not have funds available for a down payment and had just completed a

28

settlement with the IRS, "the soliciting loan broker insisted that the concerns . . . were not a problem." (Amended Complaint, ¶ 79). Apparently, this representation was true, because the Debtors received the loan. The Debtors fail to explain or detail the alleged fraudulent statement on which they relied to their detriment.

After proclaiming fraud because Wells Fargo made the Debtors a mortgage loan with no down payment, the Debtors leap to the conclusion that the Wells Defendants designed the entire transaction so that the loan pool would fail and the "losses would be borne and their loan would be paid by third parties not involved in the contract between Wells Fargo Bank, N.A. and the Plaintiffs." (*Id.*, ¶ 82). The Debtors' preposterous claims are not supported by detailed allegations, nor could they be. The simple facts are that Mr. Rinaldi signed a Note that expressly stated it could be transferred. He agreed to pay the transferee. The Note is valid and legally enforceable by HSBC, its holder. Under Wisconsin law, the Mortgage follows the Note, and it too, is enforceable by HSBC.

Another defect with the Debtors' fraud claim is that the Debtors made the same allegations in the state court, where they were soundly rejected. In their answer and counterclaim in the foreclosure proceeding, the Debtors' allegations included: "fraudulent documents were discovered in the 'closing documents' supplied to defendant at closing" (¶ 3); "the loan in question has had payments made by overcollateralization, Credit Default Swaps, credit enhancements, and redirection of other borrowers payments, and TARP money disbursed by the United States Government" (¶ 4); "an extraordinary level of 'predatory lending' actions" (¶ 23); and more. The Debtors' counterclaims for relief in the foreclosure action included fraud, fraud in the inducement, fraud in the factum, negligent misrepresentation and concealment. HSBC moved for summary judgment, and on September 4, 2009, the motion was granted. The

Debtors filed a motion for reconsideration. The court denied the Debtors' motion to reconsider and dismiss the foreclosure at a hearing held on December 18, 2009. On January 26, 2010, the court signed the order for foreclosure and entered the foreclosure judgment. The Debtors did not appeal. On November 12, 2010, the Debtors moved to vacate the judgment and order of foreclosure. On December 14, 2012, the court held a hearing and denied the Debtors' motion for relief from the judgment of foreclosure; the order was entered on January 6, 2011. On January 18, 2011, due to the successful negotiation of a loan modification, HSBC filed a motion to dismiss the foreclosure proceeding without prejudice.

Under Wisconsin law, the judgment of foreclosure and sale determines the parties' legal rights in the mortgaged property. *Shuput v. Lauer*, 109 Wis. 2d 164, 325 N.W.2d 321 (1982). The doctrine of claim preclusion provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981). When the doctrine is applied, it will bar all matters that either were litigated or that might have been litigated in a former proceeding. *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 19, 279 Wis. 2d 520, 694 N.W.2d 879. In Wisconsin, claim preclusion has three elements: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." *Id.* at ¶ 21 (quotations and citations omitted).

In this case, the parties (or their privies) to the foreclosure case and this adversary proceeding are the same. After considering both the Debtors' challenges to HSBCs' standing to foreclose and the Debtors' fraud claims concerning the inception of the loan and the transfer of the Note to the Trust, the Circuit Court for Kenosha County dismissed the Debtors'

30

counterclaims and entered a judgment of foreclosure in favor of HSBC. The Debtors did not appeal that judgment, and it became final for purposes of claim preclusion. The later dismissal of the foreclosure case, without prejudice, did not invalidate the judgment or resuscitate the Debtors' fraud claims. *See Kowske v. Ameriquest Mortg. Co.*, *supra*, (claim preclusion applied notwithstanding that foreclosure case dismissed when mortgage was paid). The fraud causes of action are virtually identical.

In summary, the Debtors' fraud claims are not pled with sufficient particularity; arise from privileged statements in litigation; lack allegations of an intentional misrepresentation that the Debtors relied on to their detriment; and were considered and rejected in a final state court judgment. These claims should be dismissed, and the Court recommends that the district court enter a final order dismissing them.

F. Tortious Interference and Breach of Contract

The Debtors' final two claims allege tortious interference with economic opportunity and prospective economic advantage and breach of contract. These claims are easily disposed of as time-barred.

According to paragraph 83 of their amended complaint, "Had Plaintiffs not been 'marks' for a securitization fraud scheme, they would have continued to build their credit-worthiness (after the IRS resolution) and would eventually have been able to obtain a legitimate mortgage from an honest source of true mortgage funding." Even assuming this allegation states a claim for tortious interference, the statute of limitations applicable to this intentional tort is two years. *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000 (E.D. Wis. 2010) (tortious interference claim is governed by Wis. Stat. § 893.57; for injuries occurring prior to February 25, 2010, the limitations period is two years). Whether the tortious interference claim

31

arose when the loan was made in 2005, when it was transferred to the Trust, or even when the foreclosure complaint was filed in February 2009, the statute of limitations had run by the time the Debtors filed their bankruptcy petition in October 2011.

The Debtors advanced a claim against Wells Fargo for breach of contract. The statute of limitations for breach of contract is six years from the date the cause of action accrues. Wis. Stat. § 893.43. The allegations concerning Wells Fargo stem from the time of the origination or the assignment to HSBC in September 2005, and not some subsequent breach. Therefore, the statute of limitations began to run either on June 10, 2005 (the date the Debtors executed the Note and Mortgage) or September 14, 2005, the date of the assignment. The Court concludes that the statute of limitations expired by September 14, 2011 fully a month prior to the Debtors' bankruptcy petition.

The Debtors' breach of contract and tortious interference claims are time-barred and should be dismissed. The Court recommends that the district court enter a final order dismissing them.

VI.     CONCLUSION

For the foregoing reasons, the Debtors' claims are baseless, and this adversary proceeding should be dismissed. The Debtors' objection to HSBC's proof of claim is overruled, and the proof of claim is allowed as filed. The Debtors' contention that HSBC lacks standing or party in interest status to seek relief from the automatic stay is rejected. The Debtors' motion to disqualify Gray & Associates is denied. The Court sustains HSBC's objection to confirmation of the Debtors' plan. The Debtors must file a modified feasible plan within 30 days. If the Debtors fail to file a modified feasible plan within this deadline, the Court will grant HSBC's motion for relief from stay.

32

With respect to the claims made in this adversary proceeding, the Court has authority to enter a final order on the allowance of the proof of claim, lien avoidance and stay relief standing issues. The Court will enter separate orders in this adversary proceeding and in the Debtors' bankruptcy case disposing of the pending motions and objections filed in the main case.

Since the defendants have not consented to this Court's entry of a final order on the non-core proceedings, the Court recommends that the district court enter a final order dismissing the Debtors' RICO, FDCPA, abuse of process, fraud, tortious interference and breach of contract claims. This decision constitutes proposed findings of fact and conclusions of law as to those issues. The parties are advised that Bankruptcy Rule 9033 requires objections to the proposed findings and conclusions to be filed with the Bankruptcy Court within 14 days of service of this decision. Any party may respond to the other parties' objections within 14 days after service of the objections.

Dated: February 22, 2013

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge

33